UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CARL S. FULMORE, | ) |
| FRANCES N. FULMORE, | ) |
| ALAN R. AKERS, | ) |
| PATRICE BAMIDELE-ACQUAYE, | ) |
| DAVID A. TAYLOR, and | ) |
| MARIA A. BAVEN, | ) |
| | ) CASE NO. 1:03-cv-0797-DFH-VSS |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| HOME DEPOT, U.S.A., INC., | ) |
| | ) |
| Defendant. | ) |

ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON CARL S. FULMORE'S CLAIMS

Carl S. Fulmore and five co-plaintiffs have filed this action against their employer and former employer, Home Depot, U.S.A., Inc. Mr. Fulmore alleges that Home Depot violated his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981 by reducing his work hours because of his race, subjecting him to a racially hostile work environment, and retaliating against him for reporting race discrimination. Home Depot has filed a motion for summary judgment on each of the claims asserted by Mr. Fulmore. For the reasons explained below, Home Depot's motion for summary judgment is denied with respect to Mr. Fulmore's discrimination claim and granted with respect to his hostile environment and retaliation claims.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment should be granted only where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Only genuine disputes over material facts can prevent a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Id.*

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255; *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). "[B]ecause summary judgment is not a paper trial, the district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.*

This case combined the claims of six African American plaintiffs who all worked at the same Home Depot store on the east side of Indianapolis.  All claim to be victims of race discrimination and retaliation.  None have offered any direct evidence of racial animus or retaliatory motives on the part of Home Depot itself.  All six of the plaintiffs therefore rely on the familiar indirect method of proof adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Home Depot filed separate motions for summary judgment as to each plaintiff.  Plaintiffs filed separate briefs in response but relied on one evidentiary appendix.

The court is today issuing six separate and lengthy decisions, one on the motion concerning each plaintiff.  Although there is some repetition with respect to the applicable law, each plaintiff's experiences were different and deserve separate attention.  To some extent, each plaintiff has attempted to rely on the experiences or claims of the other plaintiffs to support his or her claims.  Before such support deserves any weight, however, the court must evaluate the evidence on each of those claims.  That evaluation shows that many of the claims are not supported by enough evidence to survive summary judgment.  Summary judgment need not be denied merely because the parties have submitted large stacks of evidence.  When much of that evidence consists of rumor, hearsay, and vague generalities, its sheer volume does not require a trial.  Upon careful analysis, however, the mass of evidence includes some specific supporting evidence that presents triable issues of fact on some of the plaintiffs' claims.  Also, one problem that has arisen with respect to several of the motions is that Home

Depot tried to rely on evidence that it had not previously provided to plaintiffs as required under Rule 26(a) of the Federal Rules of Civil Procedure.  Under Rule 37(c), the court may not permit use of such evidence in support of the motions unless the failure to disclose was either justifiable or harmless.

### Disputed and Undisputed Facts

The following account of relevant facts is not necessarily accurate, but reflects application of summary judgment standards to the extensive record before the court.

Mr. Fulmore, who is African American, began his employment with Home Depot in January 2000 as a part-time sales associate in its Waukegan, Illinois store.  C. Fulmore Dep. at 47-49, 56-59.  While Mr. Fulmore worked part-time at the Waukegan store, he worked full-time for the United States Army for approximately 45 to 50 hours per week as a senior sales trainer in a recruiting office.  *Id.* at 25, 30.

In early 2002, after the Army transferred Mr. Fulmore to Indianapolis, Home Depot approved his request to transfer his part-time employment to a newly built Home Depot store on Post Road in Indianapolis.  Mr. Fulmore began working part-time in the flooring department at the Post Road Home Depot when it opened in February 2002.  C. Fulmore Dep. at 76-80; Meadows Dep. at 84.  The flooring department was part of the "decor zone" in the store, which also included the

paint and wall coverings departments. Associates in each of the three departments worked the same schedule and were expected to provide service to the other two departments when necessary. Russell Aff. ¶ 5. For approximately the first year after Mr. Fulmore began working at Home Depot in Indianapolis, he also worked at his full-time job with the Army.

From July through November 2002, Home Depot hired or transferred in additional associates to work in the decor zone departments. *Id.* ¶ 8. Mr. Fulmore believes that his area did not need new associates and that Home Depot hired new associates in order to "take hours away" from him. C. Fulmore Aff. ¶ 91.

Mr. Fulmore testified that he began to complain to Home Depot of race discrimination around August or September 2002. C. Fulmore Dep. at 222, 234. Mr. Fulmore complained in September 2002 that Home Depot was cutting back the work hours of African American associates while some of the Caucasian associates were complaining that they were being assigned too many work hours. *Id.* at 235. Specifically, Mr. Fulmore claims that Caucasian employees Eric Littrell and Rick Batchelder were assigned to work more hours than Mr. Fulmore, despite being hired after he was. C. Fulmore Aff. ¶¶ 161-62.

Mr. Fulmore has also testified that he reported racial discrimination and harassment to Home Depot management from September 2002 through November 2002. Specifically, he complained that Littrell left Mr. Fulmore working alone in

the flooring department to join two Caucasian associates in another department. He also testified that on another occasion a Caucasian associate failed to do his own assigned work, that the work was left undone for Mr. Fulmore's shift, and that Mr. Fulmore was instructed to do the work despite his complaints.  *Id.* ¶¶ 19-22.

Mr. Fulmore also testified that he complained that African American and Caucasian associates were provided unequal access to personal phone calls.  C. Fulmore Dep. at 234-36.  Specifically, Mr. Fulmore claims that when he called Home Depot to speak with his wife Frances (who worked as a cashier at the same store and who is also a plaintiff), the phone operator either denied his request, transferred the call to a wrong number, or transferred his call to her supervisor. C. Fulmore Aff. ¶¶ 47,49.

Mr. Fulmore testified that in October 2002 a disgruntled customer approached him, yelled at him from about one inch from his face, and raised his fists.  Mr. Fulmore testified that this customer called him a "nigger" and told him to "go ahead and act [your] color."  Mr. Fulmore called 911 and reported the incident to sheriff's deputies who responded to the call and waited in the store until the customer left.  *Id.* ¶¶ 27-37; C. Fulmore Dep. at 203.

Mr. Fulmore testified that he reported the incident to the manager on duty. He testified that he wrote a statement regarding the incident at the request of

store manager Jamie Meadows and human resources manager Jeffrey Russell approximately a month after the incident.  C. Fulmore Dep. at 205; C. Fulmore Aff. ¶ 38.  The parties dispute whether Mr. Fulmore acted inappropriately by engaging in a verbal confrontation with the customer before the customer made the racist comments and approached Mr. Fulmore.  Russell later wrote in an internal memorandum that Mr. Fulmore was not terminated following this incident because "the customer was, to a certain degree, instigating the confrontation as well."  C. Fulmore Aff. Att. 23.  Mr. Fulmore testified that he never received any reprimand because of the incident.  C. Fulmore Dep. at 205-07.

In November 2002, the Post Road store created a new position for an employee to prepare a computerized schedule for all hourly associates.  Before the scheduling position was created, department supervisors scheduled employee hours.  The computer program that prepared schedules projected the store's staffing needs based a forecast of sales volume, core hours for peak service, and employee availability.  Russell Aff. ¶ 4.  Meadows provided the sales forecast for the store.  *Id*; Meadows Dep. at 153.  The parties disagree as to whether manual changes, altering the actual hours employees were assigned to work, were made to the computer-generated schedules.  Meadows testified that part-time workers' schedules were affected by two factors:  the hours available for them at the store and the worker's availability.  Meadows Dep. at 150, 152.  He also testified that Mr. Fulmore was never guaranteed a particular number of hours.  *Id.* at 153.

Russell testified that peak hours at the store were Monday through Friday from 10 a.m. to 6 p.m. and Saturdays and Sundays from 8 a.m. to 8 p.m.  Russell Aff. ¶ 4.

The parties agree that Mr. Fulmore's work hours decreased in November 2002.  Mr. Fulmore claims that in November 2002 Home Depot cut the hours that he was assigned to work from 25 hours per week to 8 hours per week.  C. Fulmore Aff. ¶ 58.  Mr. Russell testified that Mr. Fulmore worked an average of 20.28 hours per week from September 2, 2002 through November 3, 2002.  He testified that Mr. Fulmore worked an average of 11.44 hours per week from November 4, 2002 through December 29, 2003, and an average of 16.23 hours from December 30, 2003 through March 9, 2003.  Russell Aff. ¶ 13.  From May through December 2002, Mr. Fulmore was absent from work five times, late to work four times, and left early once.  C. Fulmore Dep. Ex. 34.

Mr. Fulmore also testified that before he complained to management Home Depot about race discrimination, the store managers were willing to schedule him to work when he was not working for the Army.  After he reported the discrimination, he claims, he was scheduled to work fewer hours and was scheduled to work at times that he had told Home Depot he would be working for the Army.  C. Fulmore Aff. ¶¶ 60, 106.

For scheduling purposes, Mr. Fulmore commonly provided Home Depot with a calendar showing his availability for a given month.  During fall 2002 and winter 2003, Mr. Fulmore was normally available to work weeknights from 6 or 7 p.m. until 10 or 11 p.m. and on Saturdays from 7 a.m. until 4 p.m.  Russell Aff. ¶ 5. Mr. Fulmore did not agree to work on Sundays.  C. Fulmore Dep. at 121; Russell Aff. ¶ 6.  On April 14, 2003, Mr. Fulmore informed Home Depot that he was available to work only on Tuesday and Wednesday evenings from 6 p.m. until 11 p.m.  C. Fulmore Dep. at 113, Ex. 25.

Meadows and Russell testified that Home Depot normally experiences a drop in sales volume during the fall and winter months.  Mr. Fulmore testified that the low volume season occurred in January and February.  See Meadows Dep. 153; C. Fulmore Aff. ¶ 89; see also Russell Aff. ¶ 9.  Meadows and Russell testified that part-time associate hours are reduced during the store's low volume sales months. Meadows Dep. 153; Russell Aff. ¶ 9.

On December 17, 2002 Mr. Fulmore complained to receiving supervisor Kenn King that Caucasian associates were being assigned to work more hours than African American associates like himself.  The parties dispute whether King agreed.  See C. Fulmore Dep. Ex. 50 at HD0750-51.  Mr. Fulmore testified that King told him "that he saw whites could get away with anything," that an African American employee was being put in charge of the freight team to ease racial

tensions, and that Caucasian employee Shawn Utterback missed shifts and ate lunch "on the clock" without repercussions. C. Fulmore Aff. ¶¶ 68-71.

On December 23, 2002, Mr. Fulmore filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Home Depot discriminated against him based on his race and retaliated against him for reporting discrimination.  C. Fulmore Dep. 231; C. Fulmore Aff. Att. 24.  Mr. Fulmore stated in his charge that his hours had been reduced and that Home Depot had begun to schedule him when he knew he had Army responsibilities. Mr. Fulmore stated that he complained to Home Depot management of discrimination, and that to his knowledge, nothing was done.  C. Fulmore Aff. Att. 24.

Mr. Fulmore testified that after he complained to the EEOC that his hours had been reduced, the number of his hours increased slightly in January and February 2003, but were reduced back to 8 hours per week again in March 2003. C. Fulmore Aff. ¶¶ 87-88.

A Home Depot performance evaluation of Mr. Fulmore's work in January 2003 rated him as a "Performer," the category below the "Achiever" and "Outstanding" categories on the Home Depot rating scale.  The evaluation stated that Mr. Fulmore was "an asset" and rated his strengths as product knowledge and customer service.  C. Fulmore Dep. 173-74,  Ex. 39.  The second page of the

evaluation form shows that under the "Acts with Integrity" category (Item #8), a check mark is placed in the box rating Mr. Fulmore as an "Achiever" and there is a scratch mark in the "Improvement Required" box. In the "Demonstrates Inclusion" category ("Item #10"), the form shows a check mark in the box rating Mr. Fulmore as a "Performer" and another scratch mark in the "Improvement Required" box. *Id.* Mr. Fulmore testified that when he met to discuss this evaluation with his supervisor Greg Dohrn, the evaluation showed check marks denoting that Mr. Fulmore needed improvement in the categories under items #8 and #10. Mr. Fulmore testified that Dohrn told him that he had not given Mr. Fulmore the lower ratings, and Dohrn changed the lower ratings to higher ratings. Mr. Fulmore received a pay increase on January 6, 2003. C. Fulmore Dep. at 176-80, Ex. 40.

Mr. Fulmore gave Home Depot schedules of the time he was available to work in March and April 2003. Though his schedule varied a great deal, the schedules show that he was normally available to work most Saturdays, occasionally on weekdays, and two to three nights per week after 3 p.m. C. Fulmore Aff. Atts. 26 & 27. Mr. Fulmore testified that he listed his availability as those days on which Home Depot managers told him they wanted him to work, and that he asked to be scheduled on other days as well. C. Fulmore Aff. ¶¶ 99-101. Mr. Fulmore then notified Home Depot on April 14, 2003 that he was available to work only on Tuesday and Wednesday evenings after 6 p.m., a total of ten hours per week. C. Fulmore Dep. at 113, Ex. 25. Mr. Fulmore testified,

without giving even any approximate time, that he "changed his availability to whenever Home Depot told [him] that they could schedule [him], but Home Depot kept giving [him] reduced hours.  C. Fulmore Aff. ¶ 102.

Mr. Fulmore began a position working full-time for Meijer on June 2, 2003. C. Fulmore Dep. at 38.  On July 23, 2003, Mr. Fulmore informed Home Depot that his work availability would change to one full day per week, Monday through Thursday.  *Id.* at 114-15, Ex. 27.  Mr. Fulmore claims that he changed his availability in this way because Home Depot informed him that it would only schedule him to work "a full day."  C. Fulmore Aff. ¶ 104.

In October 2003, Mr. Fulmore received another performance evaluation from Home Depot.  The evaluation rated Mr. Fulmore as a "Performer" overall, stated that he was "confrontational," and assigned Mr. Fulmore a rating of "Needs Improvement" in four of the measured areas.  *Id.* ¶ 110-11, Att. 29.  Mr. Fulmore testified that he believed his supervisor "was unable to fully explain why [his] performance was rated the way it was."  C. Fulmore Aff. ¶ 112.

Mr. Fulmore also testified that he applied for the position of Hardware Department Supervisor in December 2003, but was not selected for the position. *Id.* ¶ 124.

Mr. Fulmore testified that when he changed his availability at Home Depot to daytime hours in December 2003, Home Depot began to schedule him for more than 20 hours per week. *Id.* ¶ 108. In 2003, Mr. Fulmore was late to work five times and absent five times. C. Fulmore Dep. Ex. 36; Russell Aff. ¶ 7. Mr. Fulmore traveled for his job with the Army between January 6 and 11, 2003, and had an approved absence from Home Depot on January 7, 2003. C. Fulmore Dep. at 164, Exs. 36-37.

Mr. Fulmore received another pay increase on January 28, 2004. C. Fulmore Dep. at 201, Ex. 47. On that same day, Mr. Fulmore received a performance review. It listed him as either a "Performer" or an "Achiever" in each measured category and stated that he needed to "continue to work on maintaining professional composure when handling conflict . . . ." The evaluation also stated that Mr. Fulmore was ready to be a department supervisor. C. Fulmore Aff. Att. 33.

Mr. Fulmore also claims that African American employee Brad Walton did not complain of race discrimination at Home Depot and was assigned to work more hours than he was. C. Fulmore Aff. ¶ 164.

Additional facts are included were relevant below, keeping in mind the standard on summary judgment.

*Discussion*

I.    *Disparate Treatment*

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).   Mr. Fulmore has also alleged discrimination in violation of 42 U.S.C. § 1981, which prohibits racial discrimination in the creation and enforcement of contracts.  The applicable legal standards on liability for race discrimination are the same under Title VII and § 1981.  *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004); *Williams v. Waste Management of Illinois*, 361 F.3d 1021, 1028 (7th Cir. 2004).

A plaintiff may prove his claim for disparate treatment using either the direct or indirect methods of proof.   Mr. Fulmore has argued his claim of discrimination using the indirect method adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  For Mr. Fulmore to survive summary judgment on his claim of disparate treatment under the indirect method, he must come forward with evidence sufficient to allow a reasonable jury to find that:  (1) he is a member of a protected class; (2) he performed his job in accordance with Home Depot's reasonable expectations; (3) he suffered a materially adverse employment action; and (4) the defendant treated similarly situated employees outside of the protected

-14-

class more favorably.  *Bio v. Federal Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005); *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 861 (7th Cir. 2005).

If Mr. Fulmore meets this burden, the defendant may rebut his prima facie case by articulating a legitimate, non-discriminatory reason for the employment action.  Mr. Fulmore must then present evidence that could allow a reasonable jury to find that the stated reason was not a true reason, but a pretext, which may permit in turn an inference of unlawful intent.  *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 545 (7th Cir. 2002); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507-08, 511 (1993).  Because Mr. Fulmore, as the plaintiff, carries these burdens, his failure to demonstrate a genuine issue of fact as to any element of the prima facie case or as to pretext would warrant summary judgment in favor of Home Depot.

Home Depot claims that Mr. Fulmore cannot satisfy his prima facie case because (1) he was not subjected to any materially adverse employment action; and (2) he cannot point to any similarly situated person outside of the protected class who received more favorable treatment.

A.   *Mr. Fulmore's Prima Facie Case*

    1.   *Materially Adverse Employment Action*

For an employment decision to be actionable, it must have resulted in a material harm that alters the "terms, conditions, or privileges of [the plaintiff's] employment." 42 U.S.C. § 2000e-2(a)(1). Examples of materially adverse actions may include termination, a demotion accompanied by a reduction in pay, a less distinguished title, denial of a promotion, a substantial loss of benefits, or significantly diminished material responsibilities. Whether an employee has experienced an adverse employment action will depend on the facts of each individual situation. *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002); *Rhodes v. Illinois Dep't of Transportation*, 359 F.3d 498, 504 (7th Cir. 2004) (sex discrimination claim).

Mr. Fulmore has raised a genuine issue of material fact as to whether he was subjected to a materially adverse employment action when his work hours were reduced. The Seventh Circuit has observed that a materially adverse action generally occurs where an employee's compensation, fringe benefits, or other financial terms of employment are reduced, *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004), or where the employer significantly diminishes the employee's material responsibilities. *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1999). Applying the reasoning in *O'Neal* and *Crady*, the reduction of an employee's assigned work hours, which reduces the

employee's compensation and responsibilities, can amount to a materially adverse action.  Accord, *Albright v. City of Philadelphia*, 399 F. Supp. 2d 575, 587-88 & n.20 (E.D. Pa. 2005) (reduction in plaintiff's assigned overtime hours, where such a reduction amounted to a significant reduction in compensation, could satisfy the third element of the prima facie case of Title VII race and sex discrimination claims); *Gamez v. Country Cottage Care & Rehabilitation*, 377 F. Supp. 2d 1103, 1124-25 (D.N.M. 2005) (finding that "a reduction of hours from twenty-eight to twenty-four per week is an adverse employment action" in age discrimination case).  Even by Home Depot's calculations, Mr. Fulmore's hours were reduced from approximately 20 hours per week to 11 hours per week during the winter of 2002.

Mr. Fulmore's claim that the allegedly  "false" performance reviews amount to materially adverse employment actions, however, is contrary to well-settled law. While negative performance evaluations may under some circumstances provide evidence of discrimination, such evaluations are not, alone, actionable adverse employment actions.  *Beamon*, 411 F.3d at 862; *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 532 (7th Cir. 2003).

B.    *Similarly Situated Employees*

The fourth element of the prima facie case places on Mr. Fulmore the burden of raising a genuine issue of fact as to whether he was treated less favorably than a similarly situated employee outside the protected class.

*Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939-40 (7th Cir. 2003); *Greer v. Board of Education*, 267 F.3d 723, 728 (7th Cir. 2001).   Similarly situated employees need not be completely identical to Mr. Fulmore, but must be "directly comparable to him in all relevant aspects." *Herron*, 388 F.3d at 300-01.   In determining whether two employees are similarly situated, the court must consider all of the relevant factors, which depend on the context of the case. *Id.*, citing *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (applying this rule to a Title VII sex discrimination claim).

Mr. Fulmore testified that Caucasian co-workers Littrell and Batchelder were assigned to work more hours than he was.   Home Depot argues that Batchelder and Littrell are not comparable for this purpose because they had greater availability.   Both Batchelder and Littrell were part-time associates who, like Fulmore, worked in the decor zone of the store.   Batchelder was available to begin his evening shifts between 4:30 and 5 p.m.   Batchelder also worked some Saturdays and consistently worked on Sundays.   Littrell was available to begin his evening shifts at 4 p.m. and also consistently worked Saturdays and Sundays. Russell Aff. ¶ 11.

Home Depot has offered evidence tending to show that Mr. Fulmore had limited availability.   From his employment with Home Depot in February 2002 until early 2003, Mr. Fulmore's availability typically included weeknights from 6 or 7 p.m. until 10 or 11 p.m., and Saturdays.   Mr. Fulmore gave Home Depot

schedules of his time in March and April 2003 showing that he was available to work most Saturdays, occasionally full week days, and approximately three nights per week after 3 p.m.  Mr. Fulmore then notified Home Depot on April 14, 2003 that he was available to work only Tuesday and Wednesday evenings after 6 p.m., a total of ten hours per week.  C. Fulmore Dep. at 113, Ex. 25.  Mr. Fulmore informed Home Depot in July 2003 that his work availability would change to one full day per week, Monday through Thursday.  After Mr. Fulmore changed his availability to daytime hours in December 2003, Home Depot began to schedule him for more than 20 hours per week.

While this evidence shows that Mr. Fulmore's availability was limited, Mr. Fulmore testified that he listed his availability in accordance with the times that Home Depot management told him that he could be scheduled.  He also testified that he "asked the managers to schedule [him] on other days, but they would not do so."  C. Fulmore Aff. ¶¶ 99-103.  Mr. Fulmore also testified that he told Home Depot's managers that he would make himself available whenever Home Depot could give him hours.  *Id.* ¶ 105.

Based on this evidence, the court finds a genuine issue of material fact as to whether Mr. Fulmore was similarly situated and treated less favorably than Batchelder and Littrell.  The parties do not dispute that both comparator employees were, like Mr. Fulmore, part-time workers in the decor zone.  It is also undisputed that both employees worked more hours than Mr. Fulmore.

Considering the evidence of Mr. Fulmore's changing availability, including evidence that he was available earlier than Batchelder and Littrell during some periods and his testimony that he changed his availability based on the times that Home Depot's management told him that he could be scheduled, the court cannot say, at least as a matter of law, that Fulmore had less availability than Batchelder and Littrell, and therefore was not similarly situated to them.  See C. Fulmore Aff. ¶¶ 99-105.[1]


      B.    *Pretext*

If a plaintiff can establish a prima facie case of discrimination, a "rebuttable presumption of discrimination" arises, shifting the burden "to the employer to articulate a legitimate, nondiscriminatory reason" for its actions.  *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).  If the employer meets this burden, the presumption disappears.  To avoid summary judgment, plaintiff must then present evidence that could enable a trier of fact to find that the reason put forth was deliberately false.  *Peters*, 307 F.3d at 545; *Celotex*, 477 U.S. at 322-23 (summary judgment is warranted against a party who fails to raise an issue of fact as to an essential element of the party's case and on which the party will bear the burden at trial).  The plaintiff can meet this burden by showing that the stated

---

[1]Mr. Fulmore also testified that he applied for a promotion in the hardware department in 2003 but was denied the promotion.  Mr. Fulmore has not advanced any argument, however, that he based either his discrimination or retaliation claims on this denial, so the court does not consider it further.

reason was either (1) factually baseless; (2) not the true reason for the action; or (3) insufficient to justify the action. *Johnson*, 91 F.3d at 931.

Home Depot has presented two reasons for reducing Mr. Fulmore's hours: (1) a seasonal dip in sales that caused the reduction of hours for all of the store's part-time associates; and (2) Mr. Fulmore's low availability and absences.

The evidence demonstrates a genuine issue of material fact as to whether Mr. Fulmore's hours were reduced in response to the seasonal lull in business. Although Meadows and Russell testified that the store's part-time employees experienced a reduction in hours during the late fall and winter months, Mr. Fulmore's testimony regarding his own hours demonstrates a different pattern. Mr. Fulmore has testified that his assigned hours were reduced in November 2002, were increased somewhat in January and February 2003, and reduced again in March 2003. Home Depot's evidence demonstrates that Mr. Fulmore worked an average of 20.28 hours per week from September 2, 2002 through November 3, 2002. Mr. Fulmore worked an average of 11.44 hours per week from November 4, 2002 through December 29, 2003, and an average of 16.23 hours from December 30, 2003 through March 9, 2003.

There is also an issue of fact as to whether Mr. Fulmore's own schedule, absences, and lateness caused the reduction in his hours. Home Depot's evidence is that Mr. Fulmore consistently refused to work weekends, that his part-time

availability forms reflect very low or unpredictable availability, at least during some periods, and that his absences and lateness negatively affected his work hours.  Home Depot has also introduced evidence that Mr. Fulmore was often not available during the store's peak hours and that, by his own testimony, his hours increased when he made himself available to work daytime hours in 2003.  Mr. Fulmore has testified, however, that he informed Home Depot that he would make himself available anytime that Home Depot could schedule him and that he listed his availability to conform to the times that Home Depot's managers told him he could be scheduled.  Additionally, the evidence shows that Mr. Fulmore's absences in 2002 were comparable to his absences in 2003.

Viewing this conflicting evidence in a light most reasonably favorable to Mr. Fulmore, the court finds that he has raised a genuine issue of material fact as to whether Home Depot's proffered reasons for the reduction in his work hours has a basis in fact.  In so doing, the court does not determine whether Mr. Fulmore will be likely to prove his discrimination claim by a preponderance of the evidence. At this stage in the litigation between the parties, the court must give Mr. Fulmore the benefit of all conflicts in the evidence and must resolve all reasonable inferences in his favor.  *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999).  Because Mr. Fulmore has raised a genuine issue of fact as to whether Home Depot reduced his hours because of his race, Home Depot's motion for summary judgment on this claim must be denied.

III.    *Retaliation*

Mr. Fulmore also claims that Home Depot reduced his assigned work hours in retaliation for reporting race discrimination in violation of both Title VII and § 1981. A plaintiff may prove his claim of retaliation using either the direct or indirect methods of proof. If he chooses the direct method, he must raise a genuine issue of material fact as to whether he engaged in the protected activity of reporting discrimination and suffered an adverse action as a result. *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002). Mr. Fulmore has not provided direct evidence of retaliation.

He may also prove his claim using the indirect method. To demonstrate a prima facie case of retaliation under the indirect method, the plaintiff must demonstrate that (1) he engaged in a protected activity; (2) he was performing his job in accordance with his employer's reasonable expectations; (3) he suffered a materially adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in the protected activity. *Beamon*, 411 F.3d at 861-62; see also *Stone*, 281 F.3d at 644. If the plaintiff establishes this prima facie case, the burden shifts to the defendant to advance a legitimate non-retaliatory reason for the adverse employment action. Once the defendant has done so, the burden shifts back to the plaintiff to show that the defendant's given reason is a pretext for retaliation. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). If the plaintiff fails to raise a genuine issue of

fact as to any element of the prima facie case, or as to whether the defendant's reason is pretextual, his retaliation claim cannot survive summary judgment. *Id.*

A.     *Materially Adverse Employment Actions*

The standard for whether an adverse employment action is "material," and therefore actionable is somewhat broader for retaliation claims than for disparate treatment claims. See 42 U.S.C. §§ 2000e-2(a), 2000e-3(a). "[I]n the retaliation context, an employer's action will be actionable under § 2000e-3(a) if it would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Whittaker v. Northern Illinois Univ.*, 424 F.3d 640, 648 (7th Cir. 2005), quoting *Washington v. Illinois Dep't of Revenue*, 420 F.3d 658 (7th Cir. 2005). An employment action that causes a reduction in the plaintiff's compensation generally meets this standard. *Firestine v. Parkview Health System, Inc.*, 388 F.3d 229, 235 (7th Cir. 2004) (transfer to another position where it reduces the plaintiff's compensation amounts to a materially adverse action); *Hilt-Dyson*, 282 F.3d at 465-66; cf. *Washington*, 420 F.3d at 662 ("By and large, reassignment that does not affect pay or promotion opportunities lacks this potential to dissuade and thus is not actionable.").

Mr. Fulmore claims that Home Depot retaliated against him for reporting race discrimination by (1) reducing the hours he was scheduled to work; and (2) giving him "negative" performance evaluations. For the same reasons articulated above in the court's analysis of Mr. Fulmore's disparate treatment claims, Mr.

Fulmore has raised a genuine issue of fact as to whether he was subjected to the materially adverse employment action of a reduction in his work hours.  The court need not reach the question of whether a negative performance evaluation is actionable under the broader standard for this element in a retaliation claim, however, because Mr. Fulmore has failed to satisfy the fourth element of his prima facie case of retaliation, as is explained below.

B.    *Similarly Situated Individuals*

As a plaintiff opposing summary judgment Mr. Fulmore carries the burden of raising a genuine issue of fact as to whether he was treated less favorably than a similarly situated individual who did not engage in a protected activity.  *Stone*, 281 F.3d at 644 (plaintiff carries burden of demonstrating the prima facie case); *Beamon*, 411 F.3d at 861-63.  Employees are similarly situated for the purposes of a retaliation claim only if they are "directly comparable in all material aspects." *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 561 (7th Cir. 2004), quoting *Ajayi v. Aramark Business Services, Inc.*,336 F.3d 520, 531-32 (7th Cir. 2003); *Rogers v. City of Chicago*, 320 F.3d 748, 755 (7th Cir. 2003).

Mr. Fulmore fails in his argument to mention any similarly situated individuals.  He testified in his affidavit that he was assigned to work fewer hours than Brad Walton, an African American employee who was transferred to Mr. Fulmore's department in October 2002 and who did not complain of race discrimination. C. Fulmore Aff. ¶¶ 163-64. Mr. Fulmore carries the burden under

the fourth element to offer evidence that he and Mr. Walton were similar in "all relevant aspects." *Rogers*, 320 F.3d at 755. Mr. Fulmore testified that Mr. Walton worked in his department, but he does not offer any evidence as to Mr. Walton's status as either a part-time or full-time employee, his availability, the length of time he worked in the area, or any other relevant information. Home Depot argues in its reply brief that Walton is not similarly situated to Mr. Fulmore because he is a full-time employee with open availability. Home Depot further claims that full-time employees have priority over part-time employees for work hours. See Russell Supp. Aff. ¶ 10. Nowhere in his twenty-five page surreply brief does Mr. Fulmore refute Home Depot's assertion regarding Mr. Walton's status or availability. The court deems this omission a concession. Full-time employees are generally not similarly situated to part-time employees. *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1155 (7th Cir. 1997); *Brown v. Super K-Mart*, 1999 WL 417338, *4 (N.D. Ill. June 16, 1999). Because Mr. Fulmore has failed to show that he is similarly situated to Mr. Walton, or to any other Home Depot employee who did not report discrimination, he has not raised a genuine issue of material fact as to whether Home Depot retaliated against him by assigning him to work fewer hours.

Finally, Mr. Fulmore failed to offer any evidence that a similarly situated employee who did not complain of discrimination received more favorable evaluations than he did. See *Beamon*, 411 F.3d at 862 (plaintiff failed to show that negative performance evaluation was evidence of discrimination where he

made no attempt to compare his performance reviews to those of any other employee).

In his argument on his retaliation claim, Mr. Fulmore argues that he is not required to present evidence that he was treated less favorably than a similarly situated individuals.  See C. Fulmore Response Br. at 33.  Mr. Fulmore argues that the fact that his hours were reduced and that he received "negative" or "false" performance reviews after he complained shows that  Home Depot was targeting him because of his complaints, rendering evidence of dissimilar treatment unnecessary.  Mr. Fulmore's argument is misplaced.  The "mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue."  *Stone*, 281 F.3d at 640.  The timing of this case provides no exception to the Seventh Circuit's observation in *Stone*.  Contrary to Mr. Fulmore's arguments, no reasonable jury could find that Home Depot retaliated against Mr. Fulmore based only on the timing of his complaints, scheduled work hours, and performance evaluations.

Because Mr. Fulmore has failed to meet the fourth element of his prima facie case of retaliation, there exists no genuine issue of material fact warranting a trial on this claim.  "Under the indirect method of proof, failure to satisfy any one element of the prima facie case is fatal to an employee's retaliation claim." *Hudson*, 375 F.3d at 560; see also *Jones v. Union Pacific Railway Co.*, 302 F.3d

735, 741 (7th Cir. 2002) (establishment of the prima facie case of discrimination is a "condition precedent" to pretext analysis).  Accordingly, the court does not reach the parties' arguments regarding pretext.  Home Depot's motion for summary judgment must be granted on Mr. Fulmore's retaliation claim.

IV.   *Hostile Environment*

Mr. Fulmore also claims that Home Depot subjected him to a hostile work environment of race discrimination in violation of Title VII and § 1981 by (1) failing to take corrective action after the customer incident in October 2002; (2) treating other African American employees differently from Caucasian employees, including by "talking down to them, yelling at them, and disciplining them differently"; (3) giving Mr. Fulmore negative performance evaluations; (4) refusing to promote Mr. Fulmore; and (5) refusing to permit Mr. Fulmore's wife access to Mr. Fulmore's personal phone calls while she was working.  C. Fulmore Response Br. at 30-31.[2]

---

[2]Mr. Fulmore also claims that Home Depot failed to take proper corrective action against a customer who used a racial epithet against his wife, and that this action contributes or supports his hostile environment claim.  The court need not address whether a defendant can be held liable to a plaintiff for the acts of a customer against another employee outside of the plaintiff's presence.  In the separate decision today addressing summary judgment on Mrs. Fulmore's claim, the court finds that the undisputed facts show that the incidents regarding customer harassment of Mrs. Fulmore, though deplorable, cannot be attributed to Home Depot on her hostile environment claim.

To survive summary judgment on his hostile work environment claim against Home Depot, Mr. Fulmore must come forward with evidence that would allow a reasonable jury to find that:  (a) he was subject to unwelcome harassment; (b) the harassment was based on his race; (c) the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment and to create a subjectively and objectively hostile or abusive working environment; and (d) there is a basis for employer liability.   *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 475-76 (7th Cir. 2004); *Mason v. Southern Illinois Univ.*, 233 F.3d 1036, 1043 (7th Cir. 2000).

The court is mindful that it must take into account the totality of the circumstances in determining whether Mr. Fulmore's claim withstands summary judgment.  *Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1046 (7th Cir. 2002) (reversing summary judgment); *Henderson v. Irving Materials, Inc.*, 329 F. Supp. 2d 1002, 1008 (S.D. Ind. 2004) (denying summary judgment).  The court need not include in that determination evidence and allegations that are not relevant to such a claim, however.

A.     *Mrs. Fulmore's Access to Personal Phone Calls*

Among the multiple claims of wrongdoing on which Mr. Fulmore bases his hostile environment claim, he argues that on several occasions he called Home Depot to speak to his wife, who also worked at the same Home Depot store, and that his calls were rerouted or transferred incorrectly, denying him access.  The

court assumes this was upsetting to Mr. Fulmore. The proper focus, however, in hostile environment analysis is on whether the alleged harassment altered the terms and conditions of Mr. Fulmore's employment. See 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice . . . to discriminate against any individual with respect to *his* compensation, terms, conditions, or privileges of employment") (emphasis added); *Hrobowski*, 358 F.3d at 475. Any refusal of the defendant to allow Mr. Fulmore to make calls to his wife while *she* was working does not support a claim that Home Depot subjected Mr. Fulmore to harassment that altered the terms and conditions of *his* employment.

### B.   *Harassment of Co-Workers*

#### 1.   *Co-Worker Testimony*

Mr. Fulmore has also submitted evidence in support of his hostile environment claim in the form of affidavits from other Home Depot employees alleging that they too experienced discrimination at work. Mr. Fulmore cites the affidavit of co-plaintiff David Taylor, who claims that he experienced racial discrimination at Home Depot because a head cashier yelled at and "talked down to" him, a manager was rude to him when he refused to leave his break in order to help a customer, two other managers told him that they were going to "do stuff to make [him] quit," and when he complained that none of these actions were taken against Caucasian employees, no corrective action was taken. Taylor Aff. ¶¶ 12-32. Mr. Fulmore also cites statements from the affidavit of Maria Baven

asserting that Meadows talked to her "like someone would talk to a child" and yelled at her, but was cheerful when talking to Caucasian employees, and that another supervisor talked to African American employees in a "mean way" while he talked to Caucasian employees in a "friendly way."  Baven Aff. ¶¶ 8-12.

Finally, Mr. Fulmore cites the affidavit of Assistant Store Manager Michael Easterling.  Easterling's affidavit states that when he complained to Store Manager Willie Robertson about discrimination against African American employees, Robertson said that they were lazy, did not want to work, and that he would get rid of every one of them if they did not change.  Easterling Aff. ¶ 22.  He also testified: "The comments of Mr. Robertson, Mr. Lintzenich, and Mr. Russell in the back room about African-American employees were about how to get them out of the store, whereas there are incompetent white associates in the store that they did not make comments about how to get them out of the store."  *Id.* ¶ 29. Easterling's affidavit states that Robertson used a vicious tone with African American assistant managers but did not do so with white assistant managers. *Id.* ¶ 26.  Easterling's affidavit does not provide any information as to when the comments or behaviors he observed took place, but it states that he did not begin his position with Home Depot until January 2004 and was placed in the assistant manager position at the Post Road Home Depot in March 2004.  *Id.* ¶¶ 7, 8.[3]

---

[3]Citing Rule 37(c)(1) of the Federal Rules of Civil Procedure, the defendant has argued that Easterling's affidavit should be stricken because the plaintiff failed to disclose Easterling's name as a witness in a supplement to his Rule 26 disclosures.  The court finds no reason to strike Easterling's affidavit.  Mr.
(continued...)

Without reaching the question of whether several of these statements are admissible, which is especially unlikely regarding the most conclusory among them, the assertions regarding harassment of other employees do not support Mr. Fulmore's hostile environment claim.  Evidence regarding harassment of, or racial discrimination against, other employees could be relevant to Mr. Fulmore's hostile environment discrimination claim provided that Mr.  Fulmore knew of such acts at or near the times they occurred.  See *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1144-45 (7th Cir. 1997) (evidence of sex discrimination against others had "some relevance" to plaintiff's hostile environment claim where such acts occurred in plaintiff's presence, but was "obviously" not as relevant as evidence directed at the plaintiff); *Mason*, 233 F.3d  at 1046 ("for alleged incidents of racism to be relevant to showing the severity or pervasiveness of the plaintiff's hostile work environment, the plaintiff must know of them"); *Ngeunjuntr v. Metropolitan Life Ins. Co.*,146 F.3d 464, 467 (7th Cir. 1998) (racially harassing comments made outside defendant's presence do not show a hostile environment); *Johnson v. City of Fort Wayne*, 91 F.3d 922, 938 & n.8 (7th Cir. 1996) (affidavit evidence regarding racially harassing comments either out of plaintiff's presence or directed to other employees not sufficient to demonstrate hostile work environment); *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 794 (8th Cir. 2004).

---

[3](...continued)
Fulmore was under no duty to disclose Easterling's name because his status as an individual likely to have discoverable information was otherwise made known to defendants through the deposition testimony of parties and other witnesses. See Fed. R. Civ. P. 26(e)(1).  In light of these circumstances, and the fact that Home Depot failed to ask for leave to depose Easterling after Mr. Fulmore filed the affidavit, Home Depot's request that Easterling's affidavit be stricken is denied.

With the exception of the incident with Mr. Haslett, Mr. Fulmore has not provided any evidence that he was present or even aware of the harassment at or around the time it took place.  Without any evidence that Mr. Fulmore was exposed to or at least aware of such discrimination, this evidence shows no subjectively hostile environment, and therefore does not support Mr. Fulmore's hostile environment claim.

2.      *Mr. Fulmore's Testimony*

Mr. Fulmore makes several allegations of harassment based on the experiences of other employees.  He complains that Home Depot management promoted his wife to a full-time position, but then sent another employee into the vault who Mr. Fulmore believes should not have been there, and then terminated Mrs. Fulmore when she asked the intruding employee to leave the vault.  C. Fulmore Aff. ¶ 144.  He testified that co-worker and co-plaintiff Alan Akers was fired after he complained about discrimination.  *Id.* ¶ 145.  He testified that he saw Carl Haslett exiting the trash compactor covered in white dust, that Home Depot supervisor Terry Decker was "telling [Mr. Haslett] what to do," and that Caucasian employees were not asked to enter the trash compactor.  He also testified that Home Depot fired Carl Haslett after he complained of discrimination.  *Id.* ¶¶ 147-49.  Mr. Fulmore also testified that Home Depot wrongly promoted less qualified Caucasian cashier Almitra Hensley over co-plaintiff Patrice Bamidele-Acquaye.  *Id.* ¶ 150.  In separate decisions dealing with the claims of Mrs. Fulmore, Mr. Akers, and Ms. Bamidele-Acquaye, the court has found that the

undisputed evidence shows no violation by Home Depot in those incidents. Haslett has not sued, and the evidence about the trash compactor incident falls far short of amounting to evidence of a racially hostile environment.

C.   *Customer Harassment*

Mr. Fulmore argues that Home Depot subjected him to a racially hostile work environment by failing to take corrective action in response to the October 2002 incident in which a customer approached him, waved his fists at Mr. Fulmore, called him a "nigger" and made other racist statements.  Home Depot is mistaken when it argues that such an incident could not be sufficiently severe to create a hostile environment at least under other circumstances, such as if the verbal slur had come from management.  "While there is no 'magic number' of slurs that indicate a hostile work environment," the use of "an unambiguously racial epithet falls on the 'more severe' end of the spectrum," *Cerros*, 288 F.3d at 1047, and use of the word "nigger" can be extremely disturbing to the listener. *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 477 (7th Cir. 2004).

However severe the customer's conduct, the incident does not support Mr. Fulmore's hostile environment claim because the customer's conduct cannot be attributed to Home Depot.  The EEOC regulation regarding sexual harassment states that an employer may be responsible for harassment by a nonemployee where the employer knows (or should have known) of the conduct and fails to take immediate and appropriate corrective action, depending on the control and other

legal responsibility the employer may have over the non-employee.  A footnote to this regulation states that its principles apply to racial harassment as well. 29 C.F.R. § 1604.11(a) n.1 & (e).

Several courts have held that discriminatory harassment by a customer or patron can be evidence of a hostile environment claim where the employer ratified or condoned the conduct by failing to investigate and remedy it after learning of the conduct.   *Galdamez v. Potter*, 415 F.3d 1015, 1022 (9th Cir. 2005); *Rosenbloom v. Senior Resource, Inc.*, 974 F. Supp. 738, 743-44 (D. Minn. 1997); see also *EEOC v. Federal Express Corp.*, 1995 WL 569446, *3 (W.D. Wash. August 8, 1995) (sex discrimination claim); *Turnbull v. Topeka State Hospital*, 255 F.3d 1238, 1244 (10th Cir. 2001) (sex discrimination claim).  In determining whether the employer's remedial actions were appropriate, the Tenth Circuit has looked to whether the response was reasonable under the circumstances, considering the promptness and effectiveness of any action, and ultimately asked whether the actions were reasonably calculated to end the harassment.  *Turnbull*, 255 F.3d at 1245.  Another court has held that where the employer has no affiliation or control over third parties, it cannot be held liable for their discriminatory acts.  *Williams v. Astra USA, Inc.*, 68 F. Supp. 2d 29, 35 (D. Mass. 1999).

This court agrees that under circumstances in which an employer ratifies or otherwise condones a customer's racist conduct, such as by requiring an

employee to continue serving such a customer despite continued harassment, there can be a basis for employer liability. In the present circumstances, however, Mr. Fulmore presents no such evidence. When Mr. Fulmore turned to walk away from the customer, the customer ran up behind him waving his fists, called him a "nigger" and told him to "go ahead and act [your] color." Mr. Fulmore then called 911. The police came to the store and remained there until the customer left. By his own account, Mr. Fulmore did not speak with either Russell or Meadows about the incident until approximately a month later when they asked him to write out a statement about the incident in case the customer returned to the store.

Based on this evidence, no reasonable jury could find that Home Depot ratified the customer's conduct, ignored complaints of abusive customer treatment, or otherwise forced Mr. Fulmore to endure discrimination by customers. Mr. Fulmore complains that Home Depot failed to take corrective action in response to the customer's action, but where Home Depot had no control over the customer (as opposed to an employee) and where the harassing behavior had ceased, Mr. Fulmore has failed to raise an issue as to whether Home Depot had either the ability or the duty to do anything further. While the racial harassment of employees by customers is deplorable and not to be tolerated, neither this court nor any other has imposed upon employers the obligation to reprimand or otherwise punish customers over whom they have no control for harassing behavior when the employee is no longer being subjected to the

harassment.  Accordingly, the customer harassment of Mr. Fulmore cannot be attributed to Home Depot, and cannot be the basis for his hostile environment claim.[4]

D.    *Remaining Allegations*

The Seventh Circuit has often made clear that hostile work environment claims do not require proof of tangible psychological injury but still require proof that goes beyond evidence of an uncomfortable or "merely offensive" work environment.  See, *e.g.*, *Cerros*, 288 F.3d at 1046.  A work environment is actionable if the harassment is so severe or pervasive that it alters the conditions of the plaintiff's employment and creates an abusive working environment.  *Id.* at 1045-46.

The factual allegations that form the substance of Mr. Fulmore's hostile work environment claim do not raise a genuine issue of material fact warranting trial.  The relevant and otherwise admissible evidence upon which Mr. Fulmore bases his hostile environment claim includes:  (1) his claims that he was given falsely negative evaluations; (2) his claim that he observed Carl Haslett exit the trash compactor after being told by a Caucasian supervisor to enter the structure,

_____

[4]Mr. Fulmore argues that Home Depot should somehow be held responsible for the customer's conduct because management "considered terminating" him after the incident.  This claim is irrelevant.  Mr. Fulmore's own deposition testimony was that he did not receive even a reprimand for the incident.  Assertions as to what Home Depot management "considered" do nothing to support allegations of a subjectively and objectively hostile work environment.

despite company rules against such conduct; (3) his claims that on two occasions Caucasian employees either left him working on his own or failed to complete work that was then left for him; (4) evidence that he applied for a promotion that was not granted to him; and (5) his claims regarding Home Depot's actions pertaining to other employees.

Mr. Fulmore has failed to demonstrate that these actions rose to the level of creating a hostile work environment. To ascertain whether an environment is objectively hostile or abusive, the court must consider all the circumstances, including the frequency and severity of the discriminatory conduct; whether the conduct is physically threatening or humiliating, or whether it is a mere offensive utterance; and whether that conduct unreasonably interferes with an employee's work performance. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993); *Cerros*, 288 F.3d at 1046. The claim can survive summary judgment if there is a genuine issue of material fact as to whether Mr. Fulmore was subjected to discriminatory harassment or conduct that was either so severe *or* so pervasive that it altered the "terms and conditions" of his employment. *Cerros*, 288 F.3d at 1045.

Even construing the facts in the light most favorable to Mr. Fulmore, his evidence could not convince a reasonable jury that he was subjected to the kind of severe or pervasive treatment altering the terms and conditions of his employment that is required to show a racially hostile environment. The result is that his hostile environment claim cannot survive summary judgment. Cf.

*Henderson*, 329 F. Supp. 2d at 1009-17 (evidence that defendant's employees called plaintiff a "f****ing nigger," threatened to drag him behind a pickup truck, told racist jokes, cut the buttons off his work shirt, spread grease on his truck, placed dead mice inside his truck, drove close to him as if to hit him, and that one co-worker told the plaintiff he was a member of the KKK precluded summary judgment in favor of defendant); *Cerros*, 288 F.3d at 1046 (vacating district court's grant of summary judgment on plaintiff's racially hostile environment claim where plaintiff was subject to direct, repeated, and highly offensive epithets by employees and supervisors, his car tires were slashed, racist epithets and slogans were painted on bathroom walls, and employees openly touted the KKK and White Power.).

### Conclusion

For the reasons explained above, Home Depot's motion for summary judgment is granted as to Mr. Fulmore's retaliation and hostile environment claims. Home Depot's motion is denied as to Mr. Fulmore's race discrimination claim based on the reduction of working hours.

So ordered.

Date: March 30, 2006

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Richard L. Darst
COHEN GARELICK & GLAZIER
rdarst@fed-law.com

Brian L. McDermott
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
brian.mcdermott@odnss.com

Louis Bennet Eble
VERCRUYSSE MURRAY & CALZONE, P.C.
leble@vmclaw.com

Gregory V. Murray
VERCRUYSSE MURRAY & CALZONE, P.C.
gmurray@vmclaw.com

Kenneth B. Siepman
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
kenneth.siepman@odnss.com