UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CARL S. FULMORE, | ) | |
| FRANCES N. FULMORE, | ) | |
| ALAN R. AKERS, | ) | |
| PATRICE BAMIDELE-ACQUAYE, | ) | |
| DAVID A. TAYLOR, and | ) | |
| MARIA A. BAVEN, | ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO. 1:03-cv-0797-DFH-VSS |
| | ) | |
| v. | ) | |
| | ) | |
| HOME DEPOT, U.S.A., INC., | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT
AGAINST PLAINTIFF FRANCES N. FULMORE

Frances N. Fulmore and her co-plaintiffs have filed this action against
defendant Home Depot, U.S.A., Inc.  Mrs. Fulmore alleges that Home Depot
discriminated against her based on race and retaliated against her for reporting
race discrimination in violation of Title VII of the Civil Rights Act of 1964,
42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981.  Home Depot has filed a motion
for summary judgment on each of the claims asserted by Mrs. Fulmore.  For the
reasons explained below, Home Depot's motion for summary judgment is granted
in part and denied in part.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment should be granted only where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Only genuine disputes over material facts can prevent a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Id.*

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255; *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). "[B]ecause summary judgment is not a paper trial, the district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.*

*Disputed and Undisputed Facts*

The following account is not necessarily accurate, but reflects application of summary judgment standards to the extensive record before the court.

Mrs. Fulmore is African American.  In June 2002, she applied for a position as a full-time cashier at Home Depot's Post Road store in Indianapolis.  Mrs. Fulmore stated on her application that she was available to work "anytime" but did not indicate that she was available to work weekends or evenings.  She was hired part-time and began working for Home Depot on July 22, 2005.  F. Fulmore Dep. at 19-20, Ex. 2.  Mrs. Fulmore claims that though she was hired as a part-time worker, she often worked forty hours per week, and Store Manager Jamie Meadows and Human Resources Manager Jeff Russell told her that she would be placed in a full-time position as soon as possible.  F. Fulmore Aff. ¶¶ 7, 8.

In September 2002, Michelle Kline, then the Front End Supervisor at Home Depot, completed a Performance and Development Summary stating that Mrs. Fulmore exhibited "great customer service skills," communicated effectively, behaved professionally, and showed integrity.  F. Fulmore Aff. Att. 2.

Also in September 2002, Home Depot posted a notice in the associates' break room notifying workers of available positions as head cashier and full-time cashier.  F. Fulmore Dep. at 139; Russell Aff. ¶ 5, Ex. 1.  Both listings stated that the "Associate must be able to work flexible hours with open availability."  Russell

Aff. ¶ 5, Ex. 1.  The posting included lines at the bottom where associates could sign to express interest in a listed position.  The parties disagree as to whether the sheet included a statement that an associate had to be registered in the Home Depot "Job Preference Process" ("JPP") in order to be considered for the positions. Mrs. Fulmore maintains that the posting did not refer to registration in JPP as a requirement for consideration.  F. Fulmore Aff. ¶¶ 12-16.  Mrs. Fulmore signed the posting but did not register her interest in JPP.  Mrs. Fulmore testified that Russell told her she would be interviewed for the head cashier position, but that she was never granted an interview.  F. Fulmore Aff. ¶¶ 18-19.  Russell claims that only those who registered their interest in the head cashier position through JPP were interviewed, that he informed Mrs. Fulmore of this requirement, and that she was not interviewed because she did not register.  Russell Dep. at 119-20, 132; Russell Aff. ¶ 5.  For purposes of summary judgment, the court must accept Mrs. Fulmore's version of this dispute.

The JPP system allows employees to view open position positions and to express interest in them.  Employees can access the system by a kiosk in the break room at the store using a personal identification number.  Bamidele-Acquaye Dep. at 23-24; Russell Aff. ¶ 3.  Training documents from Mrs. Fulmore's Home Depot orientation show that she completed training on the JPP system.  F. Fulmore Dep. Ex. 3.  Mrs. Fulmore testified that she received an Associate Orientation Guide ("the Guide").  F. Fulmore Dep. at 35-36.  The Guide states that associates wishing to apply for a posted position must (1) be in a current position

for at least six months; (2) have a three or higher rating on the two previous reviews; (3) meet the requirements as posted; and (4) complete a Job Posting Response form.  F. Fulmore Dep. Ex. 4 at HD 1362.  The Guide defines the term "JPP" as the Job Preference Process.  *Id.* at HD 1383.

Jeffrey Russell, Human Resources Manager for Home Depot, claims that Home Depot employees must register interest in open jobs through the JPP in order to be considered for such jobs.  Russell Aff. ¶ 3.  Other Home Depot employees (co-plaintiffs) also testified that after orientation, they understood that in order to be considered for a promotion, an employee had to register his or her interest in the JPP.  Bamidele-Acquaye Dep. at 25; Akers Dep. at 66.

Mrs. Fulmore claims that she complained to Lintzenich, Meadows, and Russell of racial discrimination in October 2002 because the store had hired Caucasian persons for head cashier positions while Mrs. Fulmore had not yet been promoted.  F. Fulmore Aff. ¶ 28.  Mrs. Fulmore reported that she complained that she felt that her husband, who was also an employee of Home Depot, was also being discriminated against.  *Id.* ¶ 30.

In November 2002, Home Depot hired a new employee, Kelly Clarke, to prepare a computerized schedule for all hourly associates.  Before the scheduling position was created, department supervisors scheduled employee hours.  Russell Aff. ¶ 12; Bamidele-Acquaye Dep. at 39-40.  The computer program that prepared

the schedules projected the store's staffing needs based on a forecast of sales volume, core hours for peak service, and employee availability.  Russell Aff. ¶ 12. Mrs. Fulmore testified that after Clarke was hired, Home Depot began creating schedules by using a computer generated schedule and then making manual changes to it.  F. Fulmore Dep. at 87.  Meadows provided the sales forecast for the store.  Meadows Dep. at 153.  He testified that part-time workers' schedules were affected by two factors:  the hours available for them at the store and the worker's availability.  *Id.* at 150, 152.

When she was hired in July 2002, Mrs. Fulmore stated that she was available to work Monday through Saturday from 6 a.m. until 6 p.m.  F. Fulmore Dep. at 86.  In December 2002, Mrs. Fulmore turned in an availability list stating that she was available from 6 a.m. until 4:30 p.m. Monday, Wednesday, Thursday, and Friday, and from 6 a.m. until 3 p.m. on Tuesdays.  F. Fulmore Dep. Ex. 9. In April 2003, Mrs. Fulmore turned in another availability list stating that she could work between 6 a.m. and 3 p.m. Monday, Wednesday, and Friday, and until 4 p.m. on Tuesday and Thursday.  She testified that she restricted her hours in order to be assigned hours that she wanted.  F. Fulmore Dep. at 91.  Additionally, Mrs. Fulmore submitted an affidavit stating that she told Home Depot that she would be available for any days that they could schedule her.  F. Fulmore Aff. ¶ 112.  Mrs. Fulmore commonly worked between 32 and 40 hours per week in September and October 2002.  *Id.* ¶ 27.

Patrice Bamidele-Acquaye, another Home Depot employee and plaintiff, testified that full-time Home Depot associates were required to work a flexible schedule, including evening hours and weekends. Bamidele-Acquaye Dep. at 37. Russell claims that the full-time cashier and head cashier positions required an employee to be available both days and evenings seven days per week. Russell Aff. ¶ 4. Mrs. Fulmore testified that full-time employees had to be available seven days per week but not all hours of the day. F. Fulmore Dep. at 78.

Home Depot ultimately hired two new applicants to fill the cashier and head cashier positions, Christie Haemmerle and William Wendell-Toy, both Caucasian. Wendell-Toy had two years of experience as a head cashier and two months experience as a customer service supervisor. Haemmerle had nine years of experience as a supervisor with another home improvement store. Meadows Dep. at 228; Russell Aff. ¶¶ 6, 7, Exs. 2, 3.[1]

---

[1]Plaintiff objects to Exhibit 2 to Russell's affidavit, Haemmerle's job application, arguing that Rule 37(c) of the Federal Rules of Civil Procedure bars its use because it was not properly disclosed in accordance with Rule 26(a). Rule 37(c) provides in relevant part that a party who, without substantial justification fails to disclose information required by Rule 26(a) is not permitted to use such evidence at trial or on a motion unless the failure is harmless. Rule 26(a)(1)(B) requires a party to provide to another party, with or without a formal discovery request, a copy or description of all documents and data compilations in the party's possession that it may use to support its claims or defenses, unless such information would be used solely for impeachment. Home Depot's argument that it did not receive a request for such information is beside the point. Rule 26(a) requires disclosure even without such a request. The court need not determine whether Home Depot had another substantial justification for failing to disclose the application, however. The use of testimony from Meadows regarding Haemmerle's "significant experience" at Central Hardware renders admission of the application harmless for the purposes of summary judgment.

Mrs. Fulmore also testified that during her two years of employment with Home Depot, she missed no more than five days of work but left work early several times for medical reasons.  F. Fulmore Dep. at 96.  Home Depot's records show that from December 19, 2002 through December 17, 2003, Mrs. Fulmore was absent from work at least nine times, late to work at least five times, and left work early at least eight times.   F. Fulmore Dep. 96-97, Ex. 13.   Mrs. Fulmore questioned the accuracy of some of the records.  See F. Fulmore Dep. at 96-98. From January through September 2003, Mrs. Fulmore requested at least 19 days off of work.  F. Fulmore Dep. Ex. 14.  She testified that she could not recall a time when a request for time off was denied.  F. Fulmore Dep. at 101.

Mrs. Fulmore testified that she sustained an injury to her pelvis in June 2002 before she went to work at Home Depot.  Mrs. Fulmore explained that the injury "at times" causes her pelvis to dislocate.  *Id.* at 117.  This injury, Mrs. Fulmore testified, prevented her from standing for long periods of time, which required her to use a stool while working at Home Depot.  *Id*; F. Fulmore Aff. ¶ 52. On December 16, 2002, Joe Lintzenich, Assistant Store Manager for Home Depot, informed Mrs. Fulmore that she needed to provide a doctor's statement in order to continue to use the stool.  F. Fulmore Dep. at 127, 129.  Lintzenich testified that he once received a complaint that a customer could not find an available cashier and that he could not see that Mrs. Fulmore was working behind her register because she was sitting on a stool, so he spoke with Mrs. Fulmore about using the stool.  Lintzenich Dep. at 59.  Mrs. Fulmore testified that she told

Lintzenich that she had a doctor's note on file with Home Depot, but that he reported to her there was no such note.  F. Fulmore Dep. at 127; see also Russell Aff. Ex. 4.  Mrs. Fulmore was permitted to use a stool until she obtained another doctor's statement.  F. Fulmore Dep. at 131.

Mrs. Fulmore claims that she observed several instances of a double standard in the treatment of Caucasian and African American employees at Home Depot.  She claims that African American employees were required to pay for coffee in the break room while Caucasian employees were permitted to obtain free coffee provided for customers.  F. Fulmore Aff. ¶¶ 51, 90.  Mrs. Fulmore also claims that Caucasian employees Kelley Wessel and William Wendell-Toy were not disciplined for leaving the store during their working hours without telling anyone, but that when she asked to leave to obtain a doctor's statement, she was threatened with dismissal.  *Id.* ¶ 56.

Mrs. Fulmore claims that she was not permitted to read her Bible at her work station while Caucasian cashiers were permitted to read comic books and to do homework while at their stations.  *Id.* ¶ 65; F. Fulmore Dep. at 151-52. Bamidele-Acquaye testified that she observed several employees, both African American and Caucasian, reading books, product knowledge materials, or doing homework at their work stations.  Bamidele-Acquaye Dep. at 36.

Mrs. Fulmore claims that on or around December 17, 2002, she received several emergency phone calls regarding the need to take her son to the hospital, including a call from her husband, which was re-routed to Lintzenich.  F. Fulmore Dep. at 163; F. Fulmore Aff. ¶¶ 41-48.  She testified that though several individuals sought to reach her about her son's illness, she was not notified of the calls until Lintzenich told her that she should check her messages during her break period.  Later that day, Mrs. Fulmore was called to a meeting with Meadows and Lintzenich, who told her that Jackie Batt, an employee who was answering the calls, reported that Mrs. Fulmore had received several phone calls that day and other days as well.  F. Fulmore Dep. at 163-65.  Mrs. Fulmore claims that at this time, there was no written policy on receiving personal phone calls at work.  F. Fulmore Aff. ¶¶ 46, 47.

Lintzenich posted a memorandum to associates at Home Depot on December 17, 2002 stating that personal phone calls were causing disruption to the store's operations.  He required that all personal phone calls be directed through the manager on duty, a department head, or the head cashier on duty for the front end associates.  F. Fulmore Dep. Ex. 23.  Lintzenich also testified that he spoke with Mrs. Fulmore on one occasion in which he observed her talking on both her cellular phone and the store phone at the same time.  Lintzenich Dep. at 66.

Mrs. Fulmore claims that she complained to Lintzenich that she was denied access to her phone calls because of her race, and that calls were not denied to Caucasian cashiers.  F. Fulmore Aff. ¶ 45.  Mrs. Fulmore testified that she had seen both African American and Caucasian workers receive personal phone calls at their work stations, and that she believed she was denied phone calls in retaliation for reporting discrimination to the EEOC, and because Batt, with whom Mrs. Fulmore did not get along well, sometimes answered calls at the phone center.  F. Fulmore Dep. at 197-98; F. Fulmore Aff. ¶ 41.  Mrs. Fulmore claims that even after the memorandum was posted, Caucasian cashiers were permitted personal phone calls, while her phone calls were diverted to Lintzenich.  F. Fulmore Aff. ¶ 49.[2]

Home Depot's Harassment/Discrimination Policy, included in the Guide that Mrs. Fulmore received provides in pertinent part:

> If you are being harassed or exposed to conduct you find offensive, *ask the person to stop immediately*.  You should also contact a member of management.  If you are not comfortable discussing the problem with your manager, or if you believe that your concern is not being appropriately resolved, contact your Human Resources Manager.

> The Company cannot address a problem until it learns of the problem, so it is important that you come forward to report any harassing or disrespectful behavior.

---

[2]Mrs. Fulmore also submitted unsworn written statements, signed only "Witness," that she claims were written by two Home Depot employees who were afraid to give their names.  Among other evidentiary problems, these documents do not qualify as affidavits and are inadmissible hearsay.  Accordingly, the court disregards paragraph 58 and Attachments 8 and 9 to Ms. Fulmore's affidavit.

F. Fulmore Dep. Ex. 4 at HD 1334.  Mrs. Fulmore called an AlertLine number available for employee complaints in December 2002 to complain that Lintzenich was harassing her by making demands of her that he did not make of other employees.  F. Fulmore Dep. at 249; Russell Aff. ¶ 10, Ex. 4.  Mrs. Fulmore reported that Lintzenich refused to allow her to have a drink at her station, but other cashiers had drinks at their stations and were not reprimanded.  She also reported that Lintzenich had enacted a rule that cashiers could receive only emergency calls during their working hours because she had received a number of personal phone calls on one particular day.  She also reported that on another recent day she had received several emergency calls regarding her child but was not informed of the calls until after her shift.  Russell Aff. ¶ 10, Ex. 4. Although Mrs. Fulmore claims that she reported race discrimination in her AlertLine complaint, the AlertLine report does not include any claims of race discrimination. *Id*; F. Fulmore Aff. ¶ 59.

On December 20, 2002 Mrs. Fulmore filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  F. Fulmore Dep. at 116, Ex. 17.  She testified that coworkers Patrice Bamidele-Acquaye, David Taylor, Maria Baven, and Alan Akers also went to the EEOC with her to file charges of discrimination on that day.  F. Fulmore Aff. ¶ 61.

Mrs. Fulmore also testified that in spring 2003 she overheard Polsley call her a "black bitch."  She testified that she mentioned the incident during a

meeting with Russell, and did not respond to Polsley, but let the comment "slide off [her] back." F. Fulmore Dep. at 59. Mrs. Fulmore also testified that Wendell-Toy was harassing her, "cussing all the time," and that he threw a chair at her during an April 2003 meeting but that Home Depot did not take actions against him. She also testified that after she reported this harassment, Wendell-Toy made false statements against her. F. Fulmore Aff. ¶¶ 70-72.

Mrs. Fulmore testified that she was assigned to work fewer hours after November 2002 when Kelly Clarke began scheduling associate hours . F. Fulmore Dep. at 158-59. She claims that after she complained of race discrimination, her hours were reduced from between 32 and 40 hours per week to 15 hours per week. F. Fulmore Aff. ¶ 34. She also testified that she was assigned to work even fewer hours after December 20, 2002 when she made her phone complaint to the AlertLine and filed her complaint with the EEOC. F. Fulmore Dep. at 159; F. Fulmore Aff. ¶ 62.

Meadows testified that during December, January, and February, the store's part-time associates were assigned fewer work hours because that was the lowest sales period of the year. Meadows Dep. at 153.[3]

---

[3]Plaintiff also objects to Exhibit 5 to Russell's affidavit, a demonstrative chart demonstrating the hours worked by several employees from fall 2002 through spring 2003, arguing that it should not be admitted on Home Depot's motion under Rule 37(c) of the Federal Rules of Civil Procedure because it was not properly disclosed in accordance with Rule 26(a). Rule 26(a) requires disclosure even without such a request. The evidence was not submitted for the purpose of
(continued...)

Mrs. Fulmore also complains of store management's reaction to harassing and discriminatory conduct by customers. She claims that in early 2003 a customer sought to use a credit card in a manner she believed to be against Home Depot's policy. She refused to complete the purchase. Mrs. Fulmore testified that the customer called her a "nigger" in response, and that when she complained to Lintzenich, he took the credit card and charged the customer's purchase. She also claims that she complained to Lintzenich that he should have asked the customer to leave or otherwise responded to such behavior. F. Fulmore Aff. ¶¶ 66-69. Mrs. Fulmore claims that another customer also used the same slur with her on a separate occasion, and that she complained to Lintzenich. *Id.* ¶¶ 87-88.

Mrs. Fulmore also testified that after November 2002 she developed a nervous condition that caused her to have hives, itching, and headaches, and that in September 2003, Jackie Batt left a copy of a book entitled "The Nervous Witch" on Mrs. Fulmore's work station on Batt's last day of work. *Id.* ¶¶ 75-76.

Mrs. Fulmore testified that in December 2003 she completed a part-time associate availability form requesting that she would work 3 8-hour shifts per week, rather than smaller shifts, until a permanent position was open for her.

---

[3](...continued)
impeachment. Home Depot has not offered any other justification for its omission, however, and the evidence, with respect to the issues of both the prima facie case and pretext, is not harmless. The court must disregard Exhibit 5 at this stage.

She testified that she also informed Home Depot at that time that she would work more hours if they were available and that she was still seeking a full-time position. *Id.* ¶¶ 82-83.

Mrs. Fulmore also testified that between 2003 and 2004 she was transferred to a position in the special services department after sustaining an injury that required her to sit down, and that she was asked to answer phones while working in this position, which Mrs. Fulmore claims amounts to being asked to perform two jobs at the same time. Mrs. Fulmore claims that no other Caucasian employees were asked to take on this double duty. *Id.* ¶¶ 79, 84-85. She claims that she was transferred to this position without having to register for it through JPP. *Id.* ¶ 86.

Mrs. Fulmore has testified that she complained to Russell and Meadows about discrimination against her and other African American employees at Home Depot. She also that Home Depot criticized her for complaining of her treatment. *Id.* ¶¶ 38-40, 62-64.

Mrs. Fulmore also testified as to what she believed to be discrimination by Home Depot against other African American employees of the store. She testified that Home Depot terminated Alan Akers and reduced the assigned work hours of Maria Baven. She testified that Home Depot terminated David Taylor "because of information disclosed in the litigation" of this case. She testified that supervisor

Terry Decker ordered Carl Haslett to enter the trash compactor to clear trash left there by Caucasian employees and that no Home Depot employee was supposed to enter the compactor.  She testified that when she complained to Decker, he told her that "he was the manager on duty and when he told someone to do something, they had to do it." *Id.* ¶¶ 31-33.  Mrs. Fulmore testified in her affidavit that after Haslett and coworker Allen McKinney complained of race discrimination, they were terminated "for not having banners when moving lumber from the front of the store to an aisle, but banners were not required for such a move." *Id.* ¶¶ 121-22.

Mrs. Fulmore claims that in July 2004 she was transferred to a full-time position in the vault after asking for the transfer, despite not having registered her interest in the position through JPP.  Mrs. Fulmore claims that one day while she was working in the vault, another employee, Cynthia Johnson, came into the vault against Home Depot rules.  Mrs. Fulmore testified that Johnson reported to her that Lintzenich and Home Depot Resource Manager Nelson Frye asked Johnson to retrieve a purchase card from the vault.  Mrs. Fulmore claims that she told Johnson that Bamidele-Acquaye had the purchase card and was making a purchase in another store.  Mrs. Fulmore testified that Johnson then went into the safe and was looking at the money.  Mrs. Fulmore testified that she told Johnson to leave the vault.  She claims that Johnson was unhappy with her.  Mrs. Fulmore testified that Johnson then pushed her and that Lintzenich and Human Resources Manager, Nelson Frye overheard the incident and terminated Mrs.

-16-

Fulmore for refusing to walk away from Johnson. She claims that Home Depot management purposely sent Johnson into the vault to create a problem so that they would have an excuse for terminating Mrs. Fulmore. *Id.* ¶¶ 93-109, 113.

During her two years of employment with Home Depot, Mrs. Fulmore did not receive any written disciplinary action. She received favorable performance evaluations, was granted pay raises, and was awarded merit badges for her work. F. Fulmore Dep. at 115, 103-07, Exs. 15 & 16; F. Fulmore Aff. ¶¶ 80-81, 91. She claims that she continually asserted her interest in full-time employment. *Id.* ¶ 81. Additional facts are noted where relevant below, keeping in mind the standard of review on summary judgment.

## Discussion

### I.  *Disparate Treatment*

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Mrs. Fulmore has also alleged discrimination in violation of 42 U.S.C. § 1981, which prohibits racial discrimination in the creation and enforcement of contracts. The applicable legal standards on liability for race discrimination are the same under Title VII and § 1981. *Herron v. DaimlerChrysler*

*Corp.*, 388 F.3d 293, 299 (7th Cir. 2004); *Williams v. Waste Management of Illinois*, 361 F.3d 1021, 1028 (7th Cir. 2004).  Mrs. Fulmore does not offer direct evidence of race discrimination but relies on the indirect burden-shifting method of proof adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

To defeat summary judgment by using the indirect method of proof, the plaintiff first must come forward with evidence that would allow a reasonable jury to find the elements of a prima facie case of discrimination.  If the plaintiff meets this burden, the defendant may rebut the plaintiff's prima facie case by articulating a legitimate, non-discriminatory reason for the employment action. The plaintiff must then present evidence that could allow a reasonable jury to find that the stated reason was not a true reason, but a pretext, which may permit in turn an inference of unlawful intent.  *Bio v. Federal Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507-08, 511 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (summary judgment is warranted against a party who fails to offer evidence sufficient to establish an essential element of the party's case and on which the party will bear the burden at trial).

A.    *Promotion*

Mrs. Fulmore claims that Home Depot discriminated against her by failing to promote her to a full-time cashier or head cashier position in September 2002 because of her race in violation of Title VII and § 1981.  To survive summary

judgment on this claim, Mrs. Fulmore must come forward with evidence that would allow a reasonable jury to find that: (1) she is a member of a protected class; (2) she applied for and was qualified for the position; (3) she was rejected for the position sought; and (4) the position was granted to an individual outside of the protected class who is either similarly qualified or less qualified than Mrs. Fulmore. *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003)*; Jordan v. City of Gary*, 396 F.3d 825, 833 (7th Cir. 2005) (age discrimination claim). Home Depot does not dispute that Mrs. Fulmore meets the first and third elements: she was a member of a protected class and was not selected for either promotion. However, Home Depot argues that Mrs. Fulmore is unable to raise a genuine issue of material fact as to whether she applied or was qualified for the positions, or as to whether she was similarly or more qualified than those hired.

### 1.    *Application for the Positions*

The parties agree that Mrs. Fulmore spoke about her interest to Russell and wrote her name on a sign-up sheet posted to advertise the opening, but that she did not register her interest in JPP. Home Depot argues that because Mrs. Fulmore declined to register her interest in the JPP system, she did not apply for the positions. The evidence presents a genuine issue of fact as to whether Mrs. Fulmore applied for the positions.

Home Depot has submitted evidence supporting its assertion that an employee did not "apply" for a position unless she registered for it in JPP.

Testimony from Russell, Bamidele-Acquaye, and Akers supports the assertion that employees had to register with the system to be considered. There is also evidence that Mrs. Fulmore was trained on JPP during orientation and received a Guide with information on applying for promotions and the JPP.

While the evidence of Mrs. Fulmore's training demonstrates that she had learned about JPP, it does little to support the assertion that JPP registration was a required part of the application process at Home Depot. Home Depot has not made any assertions about the content of the JPP orientation video. Home Depot has cited its Guide but has not directed the court to any language within stating that JPP was a required part of an application for promotion. The court's own reading of the Guide shows that an associate, to apply for a position, was required to have been in her position for a certain period of time, to have a certain performance rating, to meet the requirements posted for the job, and to complete a Job Posting Response form. The Guide does not explain what a Job Posting Response form is, and while Mrs. Fulmore did not fill out a separate form, the parties do not dispute that she signed a sign-up list provided on the posting for those interested in the position. The Guide's explanation of the requirements for application does not mention JPP.

In light of this language, the requirements actually listed on the job posting take on greater importance. The parties offer conflicting evidence on whether the sign-up posting listing the positions actually listed registration with JPP as a

requirement.  Also, Mrs. Fulmore's testimony that Russell informed her that he was planning to interview her for the position, as well as her testimony that she was later promoted to a full-time vault position without registering her interest through JPP, adds to this dispute between the parties.  Accordingly, the evidence before the court does not demonstrate as a matter of law that Mrs. Fulmore failed to apply for the positions.

### 2.   *Qualifications for the Positions*

Home Depot has not argued on its motion for summary judgment that Mrs. Fulmore did not have the skills required for a full-time cashier or head cashier position.  Home Depot argues that she was not qualified for the positions because her work availability was insufficient.  The parties do not dispute that the posting advertising the head cashier position stated that the position required flexible hours and open availability.  The exact meaning of these phrases has not been established beyond reasonable dispute.

Bamidele-Acquaye testified that full time Home Depot associates were required to work a flexible schedule, including evening hours and weekends. Bamidele-Acquaye Dep. at 37.  Russell testified that the head cashier position required an employee to be available days and evenings seven days per week. Russell Aff. ¶ 4.  Mrs. Fulmore testified that a full-time associate had to be available seven days per week but not all hours of the day, and that she knew of some head cashiers who worked only daytime shifts.  F. Fulmore Dep. at 78.

When she was hired in July 2002, Mrs. Fulmore stated that she was available to work Monday through Saturday from 6 a.m. until 6 p.m.  F. Fulmore Dep. at 86.  Additionally, Mrs. Fulmore submitted an affidavit stating that she informed Home Depot that she would be available for any days that they could schedule her.  F. Fulmore Aff. ¶ 112; see also F. Fulmore Dep. Ex. 2 (job application stating that Mrs. Fulmore was available to work "anytime").  Additionally, the availability information on Haemmerle's job application, stating that she was available "anytime," but leaving blank spaces regarding weekends or evenings, is identical to the application that Mrs. Fulmore submitted.  Russell Aff. Ex. 2.

The parties have presented conflicting evidence as to (1) the amount of availability required for the positions for which Mrs. Fulmore expressed interest, and (2) whether Mrs. Fulmore had communicated to Home Depot that she was available to work for the required amounts of time.  Resolution of these issues by the court would require it to engage in the kind of credibility determination and weighing of the evidence that is improper on a motion for summary judgment.

3.    *Similarly Situated*

Home Depot also claims that Mrs. Fulmore cannot meet the fourth element of the prima facie case because she is unable to show that she was as qualified or more qualified than the Caucasian applicants, Wendell-Toy and Haemmerle, who were hired for the positions she sought.  In determining whether two or more

employees are similarly situated, the court looks to the employees' relevant characteristics, which often include their education, experience, performance, qualifications, and conduct.  *Herron*, 388 F.3d at 300; *Zaccagnini v. Charles Levy Circulating Co.*,338 F.3d 672, 676 (7th Cir. 2003) (age discrimination case).

Mrs. Fulmore's Home Depot job application shows that she had approximately eight months of experience as an assistant manager at McDonald's and five months of experience as a manager at a place called Zutopia.  F. Fulmore Dep. Ex. 2.  Mrs. Fulmore was not situated similarly to Haemmerle, who had significant experience as a supervisor with another home improvement store.

The court cannot say, however, that Mrs. Fulmore was not situated similarly to Wendell-Toy, who had two years experience as a head cashier and two months of experience as a customer service supervisor at other businesses.  Though Mrs. Fulmore appears to have less experience in managerial positions than Wendell-Toy, the court cannot say that this difference renders Mrs. Fulmore and Wendell-Toy not similarly situated as a matter of law, especially in light of the fact that in September 2002, Mrs. Fulmore had experience and familiarity with Home Depot. Though comparison employees must be similar to the plaintiff in all relevant respects, they need not be identical to the plaintiff.  *Greer v. Board of Education*, 267 F.3d 723, 728 (7th Cir. 2001); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000) (age discrimination claim).  Mrs. Fulmore has raised a genuine

issue of material fact as to whether a position that she sought was filled by a similarly or less qualified person outside the protected class, Wendell-Toy.[4]

### 4.   *Pretext*

If a plaintiff can establish a prima facie case of discrimination, a "rebuttable presumption of discrimination" arises, shifting the burden "to the employer to articulate a legitimate, nondiscriminatory reason" for its actions. *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).  If the employer meets this burden, the presumption disappears.  To avoid summary judgment, plaintiff must then present evidence that could enable a trier of fact to find that the reason put forth was deliberately false.  *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 545 (7th Cir. 2002).  The plaintiff can meet this burden by showing that the stated reason was either (1) factually baseless; (2) not the true reason for the action; or (3) insufficient to justify the action.  *Johnson*, 91 F.3d at 931.

Home Depot's only reasons for not promoting Mrs. Fulmore to the head cashier and full-time cashier positions include her failure to register with JPP, availability, and experience as compared to Wendell-Toy and Haemmerle.  As

---

[4]Home Depot also claims that Mrs. Fulmore was not as qualified as Haemmerle and Wendell-Toy because she was unavailable on evenings and weekends.  Because, as previously discussed, Mrs. Fulmore has raised a genuine issue of material fact as to whether night and weekend availability was a requirement of the job and as to whether she informed Home Depot that she was available on nights and weekends, summary judgment is not warranted on this issue.

previously discussed, Mrs. Fulmore has raised a genuine issue as to whether these conditions had a basis in fact. The issue presented here is not whether Mrs. Fulmore is likely to prevail on her claim. At this stage in the litigation between the parties, the court must give Mrs. Fulmore the benefit of the conflicts in the evidence and must resolve all reasonable inferences in her favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). Accordingly, Home Depot's motion for summary judgment with respect to Mrs. Fulmore's claim based on the September 2002 promotion is denied.

### B.   *Reduction in Hours*

Mrs. Fulmore also argues that Home Depot discriminated against her based on her race by reducing the number of hours she was assigned to work. As with Mrs. Fulmore's promotion claim, she may survive summary judgment only by presenting evidence that could convince a reasonable jury that (1) she is a member of a protected class; (2) she performed her job in accordance with her employer's legitimate expectations; (3) she suffered a materially adverse employment action; and (4) the defendant treated similarly situated employees outside of her class more favorably. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 861 (7th Cir. 2005); *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005) ("reverse race discrimination" claim). If the plaintiff establishes this prima facie case, the burden shifts to the defendant to offer a legitimate non-discriminatory reason for its actions, which then requires the plaintiff to show that the reason is pretextual in order to prevail. *Johnson,*

91 F.3d at 931; *Peters*, 307 F.3d at 545. Home Depot argues that Mrs. Fulmore cannot establish that she was subjected to an adverse employment action, that she was treated less favorably than a similarly situated Caucasian employee, or that Home Depot's asserted reason for the reduction in hours, the seasonal lull in business, was pretextual.

1.    *Mrs. Fulmore's Prima Facie Case*

(a)    *Adverse Employment Action*

For an employment decision to be actionable, it must have resulted in a material harm that alters the "terms, conditions, or privileges of [the plaintiff's] employment." 42 U.S.C. § 2000e-2(a)(1).  Examples of materially adverse actions may include termination, a demotion accompanied by a reduction in pay, a less distinguished title, denial of a promotion, a substantial loss of benefits, or significantly diminished material responsibilities.  Whether or not an employee has experienced an adverse employment action will depend on the facts of each individual situation.  *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002); *Rhodes v. Illinois Dep't of Transportation*, 359 F.3d 498, 504 (7th Cir. 2004) (sex discrimination claim).  Under the circumstances, a significant reduction in an employee's work hours could alter the terms and conditions of employment so much as to amount to an adverse action.

Mrs. Fulmore claims that her hours were cut from between 32 and 40 hours per week to fifteen hours per week after she first complained of discrimination, and that they were further reduced after her December 20, 2002 EEOC and AlertLine complaints.  In December 2002, Mrs. Fulmore submitted to Home Depot an availability form that reduced the hours she was available to work by 21 hours per week.  Home Depot has also presented evidence that Mrs. Fulmore decreased her own work hours during 2003 by missing work, leaving early, or requesting time off.  Viewing the admissible evidence in the light most favorable to Mrs. Fulmore, the court finds that she has raised a genuine issue of fact as to whether she experienced the adverse employment action of a significant reduction in her assigned work hours.

(b)     *Similarly Situated*

Mrs. Fulmore carries the burden of demonstrating evidence that she was treated less favorably than another employee who is "similarly situated" to her in all relevant respects.  *Herron*, 388 F.3d at 299-301; *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003)*; Greer*, 267 F.3d at 728.  Mrs. Fulmore has made claims relating to the reduction in the hours that she worked but has failed to introduce evidence that could satisfy the fourth element.

She does not argue that Karen Polsley was similarly situated to her or that Polsley was treated more favorably, but simply restates the defendant's argument

regarding Polsley:  "The defendant argues that Polsley is not similarly situated because she was hired as a full-time cashier."  F. Fulmore Response Br. at 25.

She also states that Kelly Wessel had a sick mother, did not want to work, and eventually quit.  Even accepting Mrs. Fulmore's assertions regarding Wessel, this information fails to demonstrate that Wessel was treated more or less favorably, or that she was similarly situated to Mrs. Fulmore.

Mrs. Fulmore also states that Mandy Monroney "was given very high hours to begin with, including some 40 [hour] weeks."  *Id.* at 26.  She cites only Maria Baven's affidavit statement that Monroney was "later given a full-time position."  Baven Aff. ¶ 66.  Mrs. Fulmore's unsupported argument regarding Monroney does not demonstrate that Monroney was either similarly situated or treated more favorably than Mrs. Fulmore, who also claims to have initially worked some 40-hour weeks, and who was also eventually moved into a full-time position.  Because Mrs. Fulmore has failed to present evidence sufficient to convince a reasonable jury that she has met her prima facie case of race discrimination based on a reduction of hours, this claim cannot survive summary judgment.  *Greer*, 267 F.3d at 728; *Traylor*, 295 F.3d at 790 (plaintiff's "failure to establish one element of her *prima facie case*, even if she has established all of the others, is enough to support a grant of summary judgment in favor of her employer"); *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692-94 (7th Cir. 2005)*;* see also *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680-81 (7th Cir. 2002)

(affirming district court grant of summary judgment on claim for sex discrimination under Title VII where plaintiff failed to meet her burden on the fourth element of the prima facie case).

    2.    *Pretext*

Even if Mrs. Fulmore could establish the fourth element of her prima facie case, Home Depot has advanced a legitimate non-discriminatory reason for the action that Mrs. Fulmore has failed to rebut.  Home Depot asserts that its sales drop during the winter months, causing a reduction in hours for its part-time workers.  Meadows Dep. at 153, 155; Russell Dep. at 49-50.  Once the employer has provided a legitimate non-discriminatory reason for its actions, the burden then shifts to the plaintiff to show that its reason is merely pretext.  Mrs. Fulmore may establish pretext with evidence that Home Depot was more likely than not motivated by a discriminatory reason or that its explanation is not worthy of credence because it was factually baseless, did not actually motivate the defendant, or was insufficient to motivate the adverse employment action.  See *O'Neal v. City of New Albany*, 293 F.3d 998, 1005 (7th Cir. 2002).  Mrs. Fulmore has not presented any evidence to refute Home Depot's stated reason for decreasing part-time employee hours.  She has not pointed to any part-time workers whose hours were not reduced, has not presented any evidence that Home Depot's sales remained consistent throughout the winter months, and has not submitted other evidence that casts doubt on Home Depot's reasoning.

Mrs. Fulmore argues with little explanation that her claims regarding permission to use a stool, receiving personal telephone calls, and reading at work stations support the inference of pretext with respect to the reduction in her work hours. Such evidence does not undermine the factual basis of Home Depot's asserted and unchallenged legitimate non-discriminatory reason for the reduction in Mrs. Fulmore's work hours: a seasonal decline in business. Accordingly, because Mrs. Fulmore has failed to raise a genuine issue of material fact as to whether Home Depot discriminated against her by reducing her work hours because of her race, this claim fails as a matter of law. *Ballance*, 424 F.3d at 620-21 (affirming summary judgment for employer where plaintiff established prima facie case of reverse racial discrimination but failed to establish pretext); *Wade v. Lerner New York, Inc.*, 243 F.3d 319, 323 (7th Cir. 2001) (affirming summary judgment for employer in age discrimination case where plaintiff had established her prima facie case but failed to show pretext).

C.   *Termination*

Mrs. Fulmore's brief also seems to suggest that she may also be advancing a claim for disparate treatment based on the termination of her employment. While the termination of one's employment would certainly amount to a materially adverse employment action, Mrs. Fulmore advanced neither evidence nor argument pointing to either similarly situated individuals or pretext based on a claim for termination. Accordingly, to the extent that this claim was advanced by Mrs. Fulmore, she has failed to present evidence sufficient to raise a genuine issue

-30-

of material fact as to whether she was terminated because of her race.  Such a claim cannot survive summary judgment.

II.    *Hostile Environment*

Mrs. Fulmore also claims that she was subjected to a hostile environment of race discrimination in violation of Title VII and § 1981.  To survive summary judgment on her hostile work environment claim against Home Depot, Mrs. Fulmore must come forward with evidence that would allow a reasonable jury to find that:  (a) she was subject to unwelcome harassment; (b) the harassment was based on her race; (c) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and to create a hostile or abusive working environment; and (d) there is a basis for employer liability.  *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 271 (7th Cir. 2004); *Henderson v. Irving Materials, Inc.*, 329 F. Supp. 2d 1002, 1008 (S.D. Ind. 2004).

The Seventh Circuit has often made clear that hostile work environment claims do not require proof of tangible psychological injury, but instead require proof that goes beyond evidence of an uncomfortable or "merely offensive" work environment.  See, *e.g.*, *Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1046 (7th Cir. 2002).  A work environment is actionable if the harassment is so severe or pervasive that it alters the conditions of the plaintiff's employment and creates an abusive working environment.  *Id.* at 1045-46; *Silk v. City of Chicago*, 194 F.3d

788, 804 (7th Cir. 1999) (applying this rule to a hostile environment claim for disability discrimination).

A.    *Evidence from Other Employees*

The court must first address affidavits from other Home Depot employees alleging that they also experienced discrimination at Home Depot as support for Mrs. Fulmore's hostile environment claim. Mrs. Fulmore cites her co-plaintiff and husband Carl Fulmore's affidavit statement that on one occasion a Caucasian worker did not complete his work during a shift but instead left the work for Mr. Fulmore to do. C. Fulmore Aff. ¶ 21. She also cites Mr. Fulmore's affidavit testimony that when he complained to supervisor Kenn King about race discrimination in assignment of work hours, King complained that "white associates could get away with anything." Mr. Fulmore also testified that King told him that management had recently made an African American employee a supervisor on the store's freight team to ease racial tension in the store. *Id.* ¶ 68-75. King wrote a statement stating that when Mr. Fulmore complained to him of race discrimination, King told Mr. Fulmore he "did not believe anyone was being discriminated against." C. Fulmore Aff. Att. 23.

Mrs. Fulmore also cites the affidavit of David Taylor, who claims that he experienced racial discrimination at Home Depot because a manager was rude to him when he refused to leave his break to help a customer, two other managers told him that they were going to "do stuff to make [him] quit," and when he

complained that none of these actions were taken against Caucasian employees, no corrective action was taken.  Taylor Aff. ¶¶ 12-32.

Mrs. Fulmore also cites statements from the affidavit of Maria Baven asserting that Meadows talked to her "like someone would talk to a child" and yelled at her, but was cheerful when talking to Caucasian employees, and that Lintzenich talked to African American employees in a "mean way" while he talked to Caucasian employees in a "friendly way."  Baven Aff. ¶¶ 8-12.

Mrs. Fulmore has also offered testimony from Carl Haslett stating that on one occasion Jeff Russell yelled at him, using profanity, and that Haslett complained to other Home Depot managers that Russell did not speak to Caucasian employees in such a manner.  Haslett testified that Russell "tried to write [him] up," but that after learning that Haslett had complained, Russell apologized to Haslett.  Haslett Aff. ¶¶ 55-60.

Finally, Mrs. Fulmore cites the affidavit of Assistant Store Manager Michael Easterling.  In addition to several conclusory and irrelevant statements regarding discrimination at Home Depot that do not provide any basis for Easterling's knowledge, Easterling's affidavit states that Russell told him that there were lawsuits against the store because "blacks were treated differently than whites." Easterling Aff. ¶ 13.   Easterling's affidavit also states that the Caucasian managers of the store referred to African American employees as "I's," meaning

that they needed improvement, but did not refer to Caucasian employees this way. The affidavit also states that when Easterling complained to Store Manager Willie Robertson about discrimination against African American employees, Robertson said that they were lazy, did not want to work, and that he would get rid of every one of them if they did not change. *Id.* ¶¶ 18, 22. He also claimed that Lintzenich, Robertson, and Russell made comments in the back room about how they could get African American employees out of the store, but did not make the same comments about Caucasian employees. *Id.* ¶ 29.

Evidence regarding harassment of, or racial discrimination against, other employees could be relevant to Mrs. Fulmore's hostile environment discrimination claim if she was present for such acts, if they were directed at her, or if she knew of such acts at or near the times they occurred. See *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1144-45 (7th Cir. 1997) (evidence of sex discrimination against others had "some relevance" to plaintiff's hostile environment claim where such acts occurred in plaintiff's presence, but was "obviously" not as relevant as evidence directed at the plaintiff); *Mason*, 233 F.3d at 1046 ("for alleged incidents of racism to be relevant to showing the severity or pervasiveness of the plaintiff's hostile work environment, the plaintiff must know of them"); *Ngeunjuntr v. Metropolitan Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998) (racially harassing comments made outside defendant's presence do not show a hostile environment); *Johnson v. City of Fort Wayne*, 91 F.3d 922, 938 & n.8 (7th Cir. 1996) (affidavit evidence regarding racially harassing comments either out of plaintiff's presence

or directed to other employees not sufficient to demonstrate hostile work environment); *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 794 (8th Cir. 2004) (same).  Even assuming that the above assertions are admissible and actually amounted to evidence of discrimination, which in some cases is unlikely, the statements of her co-workers do not establish that Mrs. Fulmore was present for any of these events, that any of the allegedly discriminatory acts were directed at her, or that she even knew of them at or around the time they occurred.  Even if such statements could be considered relevant to Mrs. Fulmore's claim, they would be of far less relevance than evidence of harassment directed at Mrs. Fulmore, or that occurred in her presence.[5]

B.     *Customer Acts*

Home Depot claims that Mrs. Fulmore's allegations regarding two times that customers called her a "nigger" must be disregarded, arguing that racial epithets are merely offensive and do not create a hostile environment.  Def. Reply Br. at 37, citing *McPhaul v. Board of Commissioners of Madison County*, 226 F.3d 558, 567

---

[5]Mrs. Fulmore has testified that Home Depot took adverse against several employees after they reported race discrimination.  See F. Fulmore Aff. ¶¶ 118-122.  Mrs. Fulmore has not argued that her hostile environment claim rests on these claims.  See F. Fulmore Br. at 27.   To the extent that this evidence demonstrates that Mrs. Fulmore knew of acts against other employees, her testimony does not show that these actions were taken in retaliation for reporting discrimination, and are of minimal relevance to the issues on Mrs. Fulmore's hostile environment claim.  *McPhaul v. Board of Comm'rs of Madison County*, 226 F.3d 558, 567 (7th Cir. 2000) (impact of harassment directed at other employees not sufficient to show plaintiff was subjected to a hostile work environment).

(7th Cir. 2000).  This argument is far too broad.  "While there is no 'magic number' of slurs that indicate a hostile work environment," the use of "an unambiguously racial epithet falls on the 'more severe' end of the spectrum."  *Cerros*, 288 F.3d at 1047, quoting *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 674-75 (7th Cir. 1993).  The use of the word "nigger" can be extremely disturbing to the listener.  *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 477 (7th Cir. 2004).  In addition to the frequency of the use of racial epithets, the Seventh Circuit looks to whether they were directed at the plaintiff and whether the epithets were stated by a supervisor or co-worker.  *Dandy*, 388 F.3d at 271-72.  Where the evidence demonstrates the repeated use of racial epithets directed at the plaintiff, the court cannot say that such evidence could not support a hostile environment claim as a matter of law.  Cf. *Henderson v. Irving Materials, Inc.*, 329 F. Supp. 2d at 1009-10 (denying summary judgment on racially hostile environment claim).

The comments here, however, were uttered not by Home Depot employees but by customers.  In the first incident, a customer called Mrs. Fulmore a "nigger" because she would not allow him to use a credit card in a manner not permitted by Home Depot policy.  Mrs. Fulmore testified that Lintzenich took the customer's credit card and checked the customer out without taking any action against the customer.  In the second incident, Mrs. Fulmore claims that she reported the incident, but does not state when, or what action or inaction followed by Lintzenich.

The EEOC's regulations regarding sexual harassment state that an employer may be responsible for the sexual harassment by a non-employee where the employer knows (or should have known) of the conduct and fails to take immediate and appropriate corrective action, depending on the control and other legal responsibility the employer may have over the non-employee.  A footnote to this regulation states that its principles apply to racial harassment as well. 29 C.F.R. § 1604.11(a) n.1 & (e).  Several courts have held that discriminatory harassment by a customer or patron can be evidence of a hostile environment claim where the employer ratified or condoned the conduct by failing to investigate and remedy it after learning of the conduct.  *Galdamez v. Potter*, 415 F.3d 1015, 1022 (9th Cir. 2005); *Rosenbloom v. Senior Resource, Inc.*, 974 F. Supp. 738, 743-44 (D. Minn. 1997); see also *EEOC v. Federal Express Corp.*, 1995 WL 569446, *3 (W.D. Wash. August 8, 1995) (sex discrimination claim); *Turnbull v. Topeka State Hospital*, 255 F.3d 1238, 1244 (10th Cir. 2001) (sex discrimination claim).  In determining whether the employer's remedial actions were appropriate, the Tenth Circuit has looked to whether the response was reasonable under the circumstances, considering the promptness and effectiveness of any action, and ultimately asked whether the actions were reasonably calculated to end the harassment.  *Turnbull*, 255 F.3d at 1245.  Another court has held that where the employer has no affiliation or control over third parties, it cannot be held liable for their discriminatory acts.  *Williams v. Astra USA, Inc.*, 68 F. Supp. 2d 29, 35 (D. Mass. 1999).

The court is persuaded by the EEOC guidelines and decisions of other courts that an employer may be held liable for customer harassment of an employee where the employer either ratifies the conduct or where the employer has the power to remedy the conduct and chooses not to do so.  In this case, however, Mrs. Fulmore has not presented evidence of such action by Home Depot.  She has alleged no ratification of her treatment by Home Depot.  She was not instructed to assist a customer after being harassed, and she does not claim that Home Depot managers were even informed of the second incident while the customer was still in the store.  In the first incident, Lintzenich's decision to attend to the customer himself was reasonably calculated to end the harassment of Mrs. Fulmore by that customer.  While the racial harassment of employees by customers is deplorable and not to be tolerated, neither this court nor any other has imposed upon employers the obligation to reprimand or otherwise punish customers over whom they have no control for harassing behavior when the employee is no longer being subjected to the harassment.  Accordingly, the racial hostility expressed by customers toward Mrs. Fulmore cannot be attributed to Home Depot and cannot be the basis for her hostile environment claim.

C.    *Remaining Allegations: Actions by Supervisors and Co-Workers*

Mrs. Fulmore presented evidence relevant to her hostile environment claim. She claims that African American employees were required to pay for coffee at work while Caucasian employees were allowed to have free coffee provided for customers.  She claims that she was not permitted to have a drink or to read her

Bible at her work station while Caucasian cashiers were allowed such privileges. She claims that she overheard Polsley call her a "black bitch." She also claims that head cashier Wendell-Toy harassed her by "cussing all the time" and threw a chair at her, but that Home Depot took no corrective action when she complained. She also claims that she was denied access to personal phone calls while Caucasian employees were permitted to receive such calls at work. Mrs. Fulmore claims that she developed a nervous condition as a result of her treatment.

Mrs. Fulmore has raised a genuine issue of material fact as to whether such actions were unwelcome and whether, taken together, they were directed at her "because of race." To ascertain whether an environment is objectively hostile or abusive, the court must consider all the circumstances, including the frequency and severity of the discriminatory conduct; whether the conduct is physically threatening or humiliating, or whether it is a mere offensive utterance; and whether that conduct unreasonably interferes with an employee's work performance. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993); *Cerros*, 288 F.3d at 1046. Mrs. Fulmore can survive summary judgment by raising a genuine issue of material fact as to whether she was subjected to discriminatory harassment or conduct that was *either* so severe *or* so pervasive that it altered the "terms and conditions" of her employment. *Cerros*, 288 F.3d at 1045.

The court finds that Mrs. Fulmore has raised a genuine issue of fact as to whether she was subjected to an environment that was objectively hostile. The threatening behavior by Wendell-Toy, who as head cashier could be treated as a supervisor, weighs heavily in the court's analysis on this score, especially with Mrs. Fulmore's testimony that Home Depot took no action when she complained of such treatment. This evidence, combined with evidence of Polsley's comment and persistent unequal treatment could lead a reasonable jury to find that she was subjected to a racially hostile environment.

Additionally, Mrs. Fulmore has demonstrated a genuine issue of material fact as to whether there is a basis for holding Home Depot liable for any hostile environment to which she may have been subjected. "The employer is essentially strictly liable if the employee's supervisor created the hostile work environment." *Mason*, 233 F.3d at 1043. Where the harasser is a co-worker, the plaintiff must show that the employer was negligent in either discovering or remedying the harassment. *Id.*; *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 320 (7th Cir. 1992) (sexual harassment claim). As a head cashier, Wendell-Toy was Mrs. Fulmore's supervisor. Additionally, Mrs. Fulmore's allegations about unequal treatment with respect to coffee, phone calls, and other privileges appear to be based on enforcement of policies by supervisors and managers. Although it is not clear whether Polsley was Mrs. Fulmore's supervisor or a co-worker, Mrs. Fulmore testified that she reported Polsley's comment to Russell.

In determining that Mrs. Fulmore has raised a genuine issue of material fact as to whether she was subjected to a racially hostile environment, the court does not determine whether Mrs. Fulmore will be likely to prevail on her claims. This issue will be for a jury to decide.

III.   *Retaliation*

Mrs. Fulmore also alleges that Home Depot retaliated against her for reporting race discrimination in violation of Title VII and § 1981. To survive a motion for summary judgment on a retaliation claim, Mrs. Fulmore must present enough evidence to convince a reasonable jury that (1) she engaged in a protected activity; (2) she performed her job in accordance with Home Depot's reasonable expectations; (3) she suffered a materially adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in the protected activity. *Beamon*, 411 F.3d at 861-62 ; see also *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002). Home Depot argues that Mrs. Fulmore has failed to meet the third and fourth elements of her prima facie case.

A.   *Prima Facie Case*

1.   *Adverse Actions*

Mrs. Fulmore has claimed that Home Depot retaliated against her by reducing her hours after she complained of discrimination in November and

December 2002, by restricting her phone calls, and ultimately by terminating her employment. The standard for whether an adverse employment action is "material" and therefore actionable is somewhat broader for retaliation claims than for disparate treatment claims. See 42 U.S.C. §§ 2000e-2(a), 2000e-3(a). "[I]n the retaliation context, an employer's action will be actionable under § 2000e-3(a) if it would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Whittaker v. Northern Illinois Univ.*, 424 F.3d 640, 648 (7th Cir. 2005), quoting *Washington v. Illinois Dep't of Revenue*, 420 F.3d 658 (7th Cir. 2005). An employment action that causes a reduction in the plaintiff's compensation generally meets this standard. *Firestine v. Parkview Health System, Inc.*, 388 F.3d 229, 235 (7th Cir. 2004) (transfer to another position where it reduces the plaintiff's compensation amounts to a materially adverse action); *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465-66 (7th Cir. 2002); cf. *Washington*, 420 F.3d at 662 ("By and large, reassignment that does not affect pay or promotion opportunities lacks this potential to dissuade and thus is not actionable."). The court has found, however, no adverse action where an employee was required to drive a truck without heat, was given a changed truck driving route, and was once marked absent against company policy. *Rhodes*, 359 F.3d at 504-05.

Mrs. Fulmore has raised a genuine issue of material fact as to whether she was subjected to the adverse employment actions of a reduction in hours and

termination, but has not shown that any denial of personal calls during her shift was material enough to satisfy the second element of her prima facie case.

The denial of personal calls during working hours does not reach the level of materiality required to show an adverse action under the Seventh Circuit's holding in *Washington*.  Mrs. Fulmore has not claimed that she was never told about personal or emergency calls that she received at work.  She argues only that she was not allowed direct or immediate access to the callers when the calls came in.  She has also alleged that her calls were diverted in accordance with the policy dictated by Lintzenich's December 17, 2002 memorandum, which was issued before either her AlertLine or EEOC complaints.  While it is undisputed that Mrs. Fulmore was displeased about not being able to receive personal calls at work, "[n]ot everything that makes an employee unhappy qualifies as an adverse action." *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996); see also *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (holding that lengthening employee's commute, refusing her a parking pass for four days, assigning her work that she perceived to be outside her responsibilities, and refusing to approve her requests for leave were insufficiently material to be considered "adverse employment actions").  Because Mrs. Fulmore has not shown that the denial of her personal calls signified a change in the conditions her employment, this denial does not amount to a materially "adverse action" supporting her claim for retaliation.

2.     *Similarly Situated Employees*

Mrs. Fulmore has also failed to present any evidence that she was treated less favorably than a similarly situated employee who did not engage in a protected activity.  The plaintiff carries the burden of presenting evidence of a similarly situated and more favorably treated employee.  *Stone*, 281 F.3d at 644 (plaintiff carries burden of demonstrating the prima facie case); see also *Beamon*, 411 F.3d at 861-63.

Mrs. Fulmore has argued that she was not similarly situated to Caucasian employees whose work hours were reduced even more than hers.  Yet the effort to distinguish Mrs. Fulmore's case from those employees treated *less* favorably does not satisfy her burden to present evidence of similarly situated employees who were treated *more* favorably.  Mrs. Fulmore presents no evidence or argument regarding similarly situated employees outside her protected class who were treated more favorably with respect to either her reduction in hours or termination claims.  Blanket assertions about unequal treatment do not suffice for the purpose of the similarly-situated element of the prima facie case.  Accordingly, because Mrs. Fulmore has failed to raise an issue of fact on this element of her prima facie case, her retaliation claim cannot survive summary judgment.

B.     *Pretext*

Mrs. Fulmore has also failed to bring forward any evidence of pretext.  Her speculation as to whether Home Depot managers sent Johnson into the vault to initiate an altercation so that they could fire Mrs. Fulmore is not supported by any evidence.  Additionally, as discussed with respect to Mrs. Fulmore's discrimination claim, Mrs. Fulmore has failed to rebut Home Depot's proffered legitimate non-discriminatory reason for the reduction in her hours.

A party must present more than mere speculation or conjecture to defeat a summary judgment motion.  The issue is whether a reasonable jury might rule in favor of the non-moving party based on the evidence in the record.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001).  Because Mrs. Fulmore has not offered any evidence sufficient to allow a reasonable jury to find either pretext or a prima facie case of retaliation, this claim must fail as a matter of law.  *Hilt-Dyson*, 282 F.3d at 465 (7th Cir. 2002) (If the plaintiff fails to raise a genuine issue of fact as to any element of the prima facie case, or as to whether the defendant's reason is pretextual, her retaliation claim cannot survive summary judgment.).

IV.     *Abandoned Claim*

In her joint complaint, Mrs. Fulmore stated that her case was brought against Home Depot in part under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), though the complaint did not list an ADA claim under either Counts 1 or 2.  Home Depot's motion for summary judgment on Mrs. Fulmore's claims referred to any claim she may have for retaliation under the ADA.  In her response to Home Depot's motion for summary judgment, Mrs. Fulmore has abandoned any claim that she advanced against Home Depot for retaliation based on the ADA.  As a result, Home Depot's motion for summary judgment is granted as to this claim.

*Conclusion*

For the foregoing reasons, Home Depot's motion for summary judgment on Mrs. Fulmore's claims is denied as to her claims for discrimination based on non-promotion and hostile environment under Title VII and § 1981.  Home Depot's motion for summary judgment is granted as to Mrs. Fulmore's claims for discrimination based on a reduction in hours, termination, and retaliation under Title VII and § 1981 and for any claim Mrs. Fulmore might have advanced under the ADA.

So ordered.

Date:  March 30, 2006

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Richard L. Darst
COHEN GARELICK & GLAZIER
rdarst@fed-law.com

Brian L. McDermott
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
brian.mcdermott@odnss.com

Louis Bennet Eble
VERCRUYSSE MURRAY & CALZONE, P.C.
leble@vmclaw.com

Gregory V. Murray
VERCRUYSSE MURRAY & CALZONE, P.C.
gmurray@vmclaw.com

Kenneth B. Siepman
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
kenneth.siepman@odnss.com