UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CARL S. FULMORE, | ) |
| FRANCES N. FULMORE, | ) |
| ALAN R. AKERS, | ) |
| PATRICE BAMIDELE-ACQUAYE, | ) |
| DAVID A. TAYLOR, and | ) |
| MARIA A. BAVEN, | ) |
| | ) CASE NO. 1:03-cv-0797-DFH-VSS |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| HOME DEPOT, U.S.A., INC., | ) |
| | ) |
| Defendant. | ) |

ENTRY ON DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT
AGAINST PLAINTIFF PATRICE BAMIDELE-ACQUAYE

Patrice Bamidele-Acquaye brought this action against her employer Home
Depot, U.S.A., Inc. alleging that it discriminated against her based on race and
retaliated against her for reporting discrimination, both in violation of Title VII of
the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981.
Bamidele-Acquaye claims that Home Depot discriminated against her by twice
denying her a promotion, and then retaliated against her by denying additional
promotions, requiring her to take on extra tasks, reducing her pay raise, criticizing
her, and giving her negative performance evaluations.  Home Depot denies
Bamidele-Acquaye's allegations and has moved for summary judgment on each
of her claims.  For the reasons set forth below, Home Depot's motion is granted.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment should be granted only where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Only genuine disputes over material facts can prevent a grant of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it might affect the outcome of the suit under the governing law.  *Id.*

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party.  See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255; *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999).  "[B]ecause summary judgment is not a paper trial, the district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe."  *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  The court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial."  *Id.*

Accordingly, the factual statements in this decision are not necessarily accurate but reflect the evidence in light of the summary judgment standard.

*Discussion*

I.    *Evidentiary Concerns:  Co-Worker Complaints of Race Discrimination*

Bamidele-Acquaye has submitted to the court her own affidavit testimony replete with assertions that Home Depot discriminated against several other African American employees because of race.   Several of Bamidele-Acquaye's arguments on her own claims rely in part on these assertions.  The bulk of this testimony amounts to claims that African American employees Carl Haslett, Carl Fulmore, Frances Fulmore, Maria Baven, David Taylor, Alan Akers, and others complained to Bamidele-Acquaye of race discrimination at Home Depot.   See Bamidele-Acquaye Aff. ¶¶ 19-22, 27-29.  Based on Bamidele-Acquaye's argument, it is apparent to the court that these statements have been offered to prove the truth of the matters asserted – that Home Depot discriminated against other African American employees.  For that purpose, the statements are inadmissible hearsay and must be disregarded.  See Fed. R. Evid. 801, 802.

Several other statements in Bamidele-Acquaye's affidavit must also be disregarded as conclusory and lacking in a basis for personal knowledge.  Rule 56(e) of the Federal Rules of Civil Procedure requires that affidavits offered in support of or opposition to a motion for summary judgment be "made on personal

knowledge," that they "set forth facts that would be admissible in evidence," and that they "show affirmatively that the affiant is competent to testify to the matters stated therein." Although personal knowledge can include inferences and opinions of the affiant, such inferences must nonetheless be substantiated by specific facts. *Drake v. Minnesota Mining & Manufacturing Co.*, 134 F.3d 878, 887 (7th Cir. 1998). In *Drake*, the Seventh Circuit found no abuse of discretion where the district court had excluded portions of an affidavit similar to those at issue. The court cited one statement typical of those excluded: "Every time I, or any other African American employee went to Dean Coleman with a problem involving another employee, who was white, Dean Coleman would never conduct an investigation or take any action against that white employee." *Drake*, 134 F.3d at 887. Such statements, the court explained, were "exactly the type of conclusory allegations that should be disregarded on summary judgment." *Id.* "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Id.*, citing *Hadley v. Du Page County*, 715 F.2d 1238, 1243 (7th Cir. 1983).

Several of Bamidele-Acquaye's statements regarding either complaints made to her or her own observation of general unequal treatment of African American and Caucasian employees amount to the kind of conclusory allegations lacking in a basis for personal knowledge that fail to comply with the evidentiary demands

of Rule 56(e).  The court therefore disregards Bamidele-Acquaye's assertions in paragraphs 18, 20, 23, 24, 27, 28, 29, 58, and 71.

II.     *Disparate Treatment*

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Bamidele-Acquaye has also alleged discrimination in violation of 42 U.S.C. § 1981, which prohibits racial discrimination in the creation and enforcement of contracts.  The applicable legal standards on liability for race discrimination are the same under Title VII and § 1981.  *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004); *Williams v. Waste Management of Illinois*, 361 F.3d 1021, 1028 (7th Cir. 2004).

Home Depot hired Bamidele-Acquaye as a head cashier in January 2002 at its newly built store on Post Road in Indianapolis after she interviewed for the position with store manager Jamie Meadows.  Bamidele-Acquaye Dep. at 15-18. The head cashier position included supervising associates, training associates, verifying the tills, and other responsibilities.  *Id.* at 17, 32-33, Exs. 6.  When the store opened in February 2002, Ally Alexander was the front end supervisor ("FES") and was Bamidele-Acquaye's immediate supervisor.

When Alexander transferred to another Home Depot store in June 2002, store manager Meadows and the store's human resources manager, Jeffrey Russell interviewed applicants for the FES position. Bamidele-Acquaye claims to have performed FES duties in the "couple of weeks" after Alexander left and before Home Depot hired another FES. Bamidele-Acquaye Aff. ¶ 5. Meadows and Russell interviewed four applicants: (1) head cashier Michelle Kline; (2) head cashier Christina Arney; (3) external candidate Rebecca Green; and (4) Bamidele-Acquaye. Kline, a Caucasian female, was promoted to the FES position in July 2002. Bamidele-Acquaye Dep. at 101-02, 109-10; Russell Aff. ¶¶ 4, 5. Home Depot claims that it promoted Kline because she was the most qualified applicant. Bamidele-Acquaye disputes this assertion, claiming that she was at least as qualified as Kline, and that Kline never wanted the position as FES.

In fall 2002, Kline transferred to another Home Depot store in Greenfield, Indiana. Bamidele-Acquaye Dep. at 90; Meadows Dep. at 207, 218. Bamidele-Acquaye claims that she took on all of Kline's duties after she left the FES position and was the "acting FES" for approximately two months. Bamidele-Acquaye Aff. ¶¶ 15-17. Home Depot claims that each of the store's Head Cashiers took on some of the FES responsibilities under the supervision of operations manager Joseph Lintzenich. The parties agree that Bamidele-Acquaye prepared the work schedules for all of the cashiers and lot associates working in the front end. Russell Dep. at 152; Russell Aff. ¶ 6.

Meadows and Russell interviewed three applicants for Kline's FES position: (1) part-time head cashier Almitra Hensley; (2) Karen Polsley, who had transferred from another Home Depot store to the Post Road Home Depot when it opened; and (3) Bamidele-Acquaye. Bamidele-Acquaye Dep. at 119. Russell testified that during the interview period, he received multiple complaints from other cashiers at the store, including Kelly Wessell and Allison Jones, claiming that Bamidele-Acquaye was "not treating people well" in the front end and had threatened to "get rid of certain people" if she were promoted to the FES position. Jones and other cashiers threatened to quit if Bamidele-Acquaye was promoted to the FES position. Russell Dep. at 158; Russell Aff. ¶ 7, Ex. 4; Jones Aff. ¶ 3, Ex. 1. During Bamidele-Acquaye's interview for the FES position, Meadows informed her that other cashiers had complained that she made such comments and that they had threatened to quit if she was selected as FES. Bamidele-Acquaye Dep. at 120, 146-47; Bamidele-Acquaye Aff. ¶ 36.

Bamidele-Acquaye denied making such statements to Wessell, Jones, or any other associate. Bamidele-Acquaye Aff. ¶¶ 37, 40, 44. She claims that the allegations regarding her statements were fabricated by either Jones or Russell. In December 2002, Home Depot promoted Hensley to the FES position. Russell Aff. ¶ 8; Bamidele-Acquaye Aff. ¶ 47.

Bamidele-Acquaye claims that Home Depot discriminated against her by twice refusing to promote her because of her race in violation of Title VII and

§ 1981.  A plaintiff in an employment discrimination case may survive a motion for summary judgment by presenting either direct or indirect evidence that the employer acted with discriminatory intent.  *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005).  Bamidele-Acquaye has not offered any direct evidence that Home Depot discriminated against her because of her race, and she proceeds under the familiar indirect burden-shifting framework adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

To survive summary judgment on her promotion claims using the indirect method, Bamidele-Acquaye must come forward with evidence that would allow a reasonable jury to find on each claim that:  (1) she is a member of a protected class; (2) she applied for and was qualified for the promotion; (3) she was rejected for the position sought; and (4) the position was granted to an individual outside of the protected class who was either similarly qualified or less qualified than Bamidele-Acquaye.  *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003)*; Jordan v. City of Gary*, 396 F.3d 825, 833 (7th Cir. 2005) (sex and age discrimination claims).  If Bamidele-Acquaye meets this burden, the defendant may rebut her prima facie case by articulating a legitimate, non-discriminatory reason for the employment action.  Bamidele-Acquaye must then present evidence that could allow a reasonable jury to find that the stated reason was not a true reason, but a pretext, which may permit in turn an inference of unlawful intent.  *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 545 (7th Cir. 2002); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507-08, 511 (1993).  Home Depot

argues that Bamidele-Acquaye has failed to demonstrate either (1) that she was similarly or more qualified than those who were hired in the positions she sought, or (2) that Home Depot's reasons for promoting others were pretextual.

### A.    *Similarly or Less Qualified Employees*

In the context of a failure to promote claim, Bamidele-Acquaye carries the burden of demonstrating a genuine issue of material fact as to whether she was "similarly situated" to those who were granted the FES promotions in that she was either similarly or more qualified than they were. *Jordan*, 396 F.3d at 833; *Grayson*, 317 F.3d at 748.

### 1.    *July 2002 FES Promotion*

Bamidele-Acquaye has failed to raise a genuine issue of material fact as to whether she was as qualified or more qualified than Kline. Kline and Bamidele-Acquaye had comparable experience. Both women began working for Home Depot in head cashier positions in January 2002. Each had experience as a supervisor. Kline had three and a half years experience as a store manager at a Domino's Pizza. Russell Aff. ¶ 5, Ex. 1. Bamidele-Acquaye had two years experience as a crew leader and two years experience as an assistant manager at Hardees, as well as two years experience as a part-time team leader, similar to a head cashier, at Target during high school. Bamidele-Acquaye Dep. at 102-03, 178; Bamidele-Acquaye Aff. ¶ 2, 3. Home Depot's efforts to distinguish the two women based on

their prior work experience is unconvincing because both had prior leadership experience of varying levels for several years.

The two women cannot be considered similarly qualified, however, because Kline received a higher performance rating than Bamidele-Acquaye. Both employees were given performance reviews completed by Alexander in April 2002. Each received a rating as an "Achiever" or a "Performer" in all fourteen measured areas included in the evaluation forms. Kline received an overall rating, however, as an "Achiever" while Bamidele-Acquaye was rated a "Performer," a level below Kline's rating. Russell Aff. ¶ 5, Ex. 2; Bamidele-Acquaye Dep. at 60-61, Ex. 9. Bamidele-Acquaye testified that she agreed with this review, Bamidele-Acquaye Dep. at 61, and she has not alleged that her lower rating was the result of any discriminatory motive. When faced with the difference between the two employees' performance evaluation ratings, which were completed by the same supervisor while the two held the same position, a reasonable jury could not find that the two employees were directly comparable in all relevant aspects. There is no conflict in this evidence, and even drawing all reasonable inferences in Bamidele-Acquaye's favor, the court must conclude that Kline was more qualified than Bamidele-Acquaye based on her superior performance rating. Because Kline's comparable performance evaluation rendered her more qualified for the FES position, Bamidele-Acquaye has failed to meet her burden under the fourth element of the prima facie case as to her claim based on the July 2002 denial of promotion to the FES position.

2.    *December 2002 FES Promotion*

Home Depot also argues that Bamidele-Acquaye has failed to demonstrate that she was similarly or more qualified than Hensley, thereby failing to meet the prima facie case on her disparate treatment claim relating to the December 2002 FES promotion.   Home Depot hired Hensley as a cashier in May 2002, and promoted her to a position as a head cashier in August 2002.  Bamidele-Acquaye Aff. ¶¶ 51, 56, 57.   Hensley and Bamidele-Acquaye received comparable performance evaluations.  Hensley received an overall rating of an "Performer" in her July 2002 evaluation of her work as a cashier, completed by Michelle Kline. Russell Aff. ¶ 8, Ex. 7.  Bamidele-Acquaye received the same overall rating in her April 2002 evaluation of her work as a head cashier, completed by Ally Alexander. Bamidele-Acquaye Aff. Att. 1.   Hensley's evaluation comments stated that she respected customers and co-workers, got along well with them, and was friendly to them.  Russell Aff. ¶ 8, Ex. 7.  Bamidele-Acquaye's evaluation stated that she set a positive example for others, was an effective leader, and was friendly to customers and co-workers.  Bamidele-Acquaye Aff. Att. 1.

Because Hensley had fifteen months of experience as a head cashier at Lowe's, a Home Depot competitor, the women also had comparable experience, both having held supervisory positions in the past.  Bamidele-Acquaye Aff. ¶¶ 2-3; Meadows Dep. at 214-15.  Bamidele-Acquaye had more experience as a head cashier at Home Depot than Hensley, who did not become a head cashier until August 2002.  Bamidele- Acquaye Aff. ¶¶ 51, 56, 57.  Bamidele-Acquaye was also

a full-time employee at the time of the December 2002 promotion, whereas Hensley was a part-time employee.  Both women had been voted Cashier of the Month at some point before the promotion decision.  Russell Aff. ¶ 8, Ex. 6; Bamidele-Acquaye Aff. ¶ 55, Att. 3.  Hensley had also received an additional positive associate action notice in June 2002 for going above and beyond her duties.  Russell Aff. ¶ 8, Ex. 5.  Bamidele-Acquaye has raised a genuine issue of material fact as to whether she performed the duties of an FES in the period between Kline's departure and Hensley's promotion.  Bamidele-Acquaye Aff. ¶¶ 15-17.  Based on this evidence alone, a jury could find that Bamidele-Acquaye was at least similarly qualified to Hensley.

This comparison is made more complicated, however, by the evidence that in November and December 2002, while Bamidele-Acquaye was filling in for Kline by performing at least some of the FES tasks, multiple employees complained to Russell and Meadows about Bamidele-Acquaye.  They claimed that Bamidele-Acquaye had stated that, if promoted to the FES position, she would "get rid of" associates that she did not like.  Some of those who complained threatened to resign if Bamidele-Acquaye was promoted to the position.  During her December 2003 interview for the FES promotion, Meadows and Russell informed Bamidele-Acquaye of such complaints and asked her if she had made such comments.  Bamidele-Acquaye denied making such comments.

Though Bamidele-Acquaye denies having made the comments about which her co-workers complained, she does not dispute that Meadows and Russell *received* such comments around the time of the December 2003 promotion decision. Because the complaints relate directly to Bamidele-Acquaye's fitness for the FES position, the court finds that the complaints would be enough to render Bamidele-Acquaye less qualified than Hensley. Although Russell and Meadows did not testify specifically that they found Bamidele-Acquaye to be less qualified than Hensley because of the complaints alone, they testified that Hensley was chosen because she possessed superior skills at managing people. See Meadows Dep. at 214-15; Russell Dep. at 158, 163. The kinds of complaints lodged against Bamidele-Acquaye certainly pertain to her ability to manage and work with others. Russell and Meadows specifically asked Bamidele-Acquaye about such complaints during her interview for the December 2002 FES promotion. Based on this evidence, no reasonable jury could find that Russell and Meadows did not consider the complaints in their promotion decision. Bamidele-Acquaye has therefore not raised a genuine issue of material fact as to whether she was similarly or more qualified than Hensley.

Because Bamidele-Acquaye has failed to offer evidence sufficient to convince a reasonable jury that she was similarly or more qualified than either Kline or Hensley, her disparate treatment claim based on the July and December 2002 FES promotions cannot survive Home Depot's motion for summary judgment. *Greer v. Board of Education*, 267 F.3d 723, 728 (7th Cir. 2001); *Traylor v. Brown*,

295 F.3d 783, 790 (7th Cir. 2002) (affirming summary judgment in favor of defendant on Title VII race discrimination claim where plaintiff failed to demonstrate a materially adverse employment action because plaintiff's "failure to establish one element of her *prima facie case*, even if she has established all of the others, is enough to support a grant of summary judgment in favor of her employer"); *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692-93 (7th Cir. 2005) (affirming district court grant of summary judgment where plaintiff failed to demonstrate the fourth element of the prima facie case)*; see also Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680-81 (7th Cir. 2002) (affirming district court grant of summary judgment on claim for sex discrimination under Title VII where plaintiff failed to meet her burden on the fourth element of the prima facie case).

### B.   *Pretext*

If a plaintiff can establish a prima facie case of discrimination, a "rebuttable presumption of discrimination" arises, shifting the burden "to the employer to articulate a legitimate, nondiscriminatory reason" for its actions.  *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).  If the employer meets this burden, the presumption disappears.  *Id.*  The burden then shifts back to the plaintiff to offer evidence sufficient to permit a reasonable jury to find that these reasons were not just wrong but deliberately false.  *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 545 (7th Cir. 2002); see also *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000) (stating that "pretext means

a dishonest explanation, a lie rather than an oddity or error" in a national origin
discrimination case). The plaintiff can meet this burden by showing that the
defendant was most likely motivated by a discriminatory reason or that its
explanation is not worthy of credence because it was either (1) factually baseless;
(2) not the true reason for the action; or (3) insufficient to justify the action.
*Johnson*, 91 F.3d at 931; *O'Neal v. City of New Albany*, 293 F.3d 998, 1005 (7th
Cir. 2002).

1.    *July 2002 FES Promotion*

Bamidele-Acquaye has failed to raise a question as to whether Home Depot's
reasons for giving Kline the job in July 2002 are pretextual.  Russell testified that
Meadows selected Kline for the position over Bamidele-Acquaye because Kline was
more qualified, emphasizing Kline's management experience, her superior
understanding of the store's front end operations, and her strong record of
performance at Home Depot.  Russell Dep. at 154-55.

In support of her argument that Home Depot's reasons for promoting Kline
over Bamidele-Acquaye was a pretext for discrimination, Bamidele-Acquaye
advances evidence she believes to be relevant to the July 2002 promotion:  (1)
evidence that she was as qualified as Kline; (2) her testimony that Kline informed
her that before the promotion decision, Kline told Home Depot managers that she
did not want the FES position because the pay was too low and that the managers
offered Kline greater pay for the position; and (3) evidence from other Home Depot

employees who believe that they were victims of racial discrimination by their employer.

For the reasons given above, Bamidele-Acquaye has failed to demonstrate a genuine issue of material fact as to whether she was as qualified as Kline.  The statements from other Home Depot employees, also as discussed earlier, amount only to conclusory hearsay and also cannot support her pretext argument.

That leaves plaintiff's affidavit testimony regarding Kline's pre-promotion statements to Home Depot management about the position.  Bamidele-Acquaye testified in her affidavit that Kline told her after she had been promoted to the FES position that before the promotion, Kline reported to Russell and Meadows that Kline did not want the position because the pay was too low, and that Russell and Meadows ultimately offered her more pay for the position.  Bamidele-Acquaye Aff. ¶¶ 7 & 8.  Bamidele-Acquaye also testified in her affidavit that Kline, after accepting the FES promotion, again spoke with Russell and Meadows, told them that she did not want the position anymore, and recommended that they give the position to Bamidele-Acquaye, and that they did not respond.  *Id.* ¶¶ 9-10.

For several reasons, this evidence fails to raise a genuine issue of material fact as to whether Home Depot's proffered reason for choosing Kline over Bamidele-Acquaye, her superior qualifications, was a pretext for race discrimination.

Most important, the above statements amount to inadmissible hearsay. Bamidele-Acquaye argues that because Kline was her supervisor at Home Depot, any of her statements should be admissible, apparently under a theory that such statements can be attributed to Home Depot under Rule 801(d)(2)(D) of the Federal Rules of Evidence. This provision, however, requires that the statements of a defendant's agent, to be attributed to the defendant, must concern a matter within the scope of the declarant's (Kline's) employment. Bamidele-Acquaye has not shown that such statements concerned any matter within the scope of Kline's position as Bamidele-Acquaye's supervisor. The statements do not amount to instructions, orders, training, feedback, updates about the company, information about the promotion or transfer process, or any other conceivable information that one would imagine Kline was employed to communicate, or which was within her job responsibilities. See *Halloway v. Milwaukee County*, 180 F.3d 820, 825 (7th Cir. 1999); *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999) ("There is a critical difference between making a statement while one is an employee and having the actual or implied authority to make such a statement on behalf of your employer. The test is whether the statement *concerns* a matter within the scope of the agency or employment."). Because the statements that Bamidele-Acquaye attributes to Kline did not concern a matter within the scope of Kline's employment, and because Bamidele-Acquaye has advanced no other theory for why such statements should be admitted, the court must disregard these statements as inadmissible hearsay.

Even if such statements were admissible, they are do not raise a genuine issue of material fact as to whether Home Depot's stated reason for choosing Kline, her superior qualifications, was pretextual.  The parties do not dispute that Kline applied and interviewed for the position.  Home Depot presented evidence that Kline was chosen because she was the most qualified applicant.  Evidence that Kline "did not want" the position at its posted pay rate does not render Home Depot's claim that she was chosen because of her qualifications factually baseless. Nor does such evidence cast doubt on whether the qualification differences were the real reason for the promotion decision, or otherwise support Bamidele-Acquaye's pretext argument.  Home Depot is entitled to summary judgment on the July 2002 promotion decision.

2.   *December 2002 FES Promotion*

Bamidele-Acquaye has also failed to raise a genuine issue of fact as to whether the reason given by Home Depot for its December 2002 FES promotion decision, Hensley's superior qualifications, was a pretext for race discrimination. As explained with respect to Bamidele-Acquaye's arguments regarding the fourth element of her prima facie case, the evidence demonstrates that Bamidele-Acquaye, as a consequence of multiple co-worker complaints about her comments leading up to the December 2002 FES promotion, was less qualified than Hensley for the position.  Bamidele-Acquaye's argument that Russell fabricated or initiated the complaints, or that the complaints against her were "obviously false," is not supported by any evidence in the record.

Additionally, Bamidele-Acquaye argues that favorable performance evaluations from April 2002 and January 2003 demonstrate that Home Depot's reasoning is untruthful.  See Bamidele-Acquaye Aff. Atts. 1, 3.  The evaluations are insufficient in this capacity.  Even accepting as true the positive statements made about Bamidele-Acquaye in the evaluations, the evaluations do not demonstrate that she was as qualified or more qualified than Hensley, which is the only issue before the court in determining whether Home Depot's reasons were pretextual.

It is well-established that the court does not sit as a "super personnel department" reexamining the wisdom of an entity's business decisions.  Rather, the court's pretext analysis looks only to whether the employer gave an honest explanation for its actions, even if its reasoning was not wise or sound.  *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 984 (7th Cir. 1999).  Because Bamidele-Acquaye has not offered any evidence sufficient to allow a reasonable jury to find either pretext or a prima facie case of disparate treatment based on the denial of the FES promotions, these claims must fail as a matter of law.

III.    *Retaliation*

Bamidele-Acquaye also alleges that Home Depot retaliated against her for reporting race discrimination in violation of Title VII and § 1981.  A plaintiff may prove her claim of retaliation using either the direct or indirect methods of proof.  The direct method requires the plaintiff to show that she engaged in a protected

activity and suffered a materially adverse employment action as a result. *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002).

Bamidele-Acquaye does not advance direct evidence of retaliation. She proceeds under the indirect burden-shifting method of proof articulated in *Stone*. To survive a motion for summary judgment on a retaliation claim under the indirect method, Bamidele-Acquaye must present evidence that would allow a reasonable jury to find that (1) she engaged in a protected activity; (2) she performed her job in accordance with Home Depot's reasonable expectations; (3) she suffered a materially adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in the protected activity. *Stone*, 281 F.3d at 644; see also *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 861-62 (7th Cir. 2005); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (summary judgment is warranted against a party who fails to offer evidence sufficient to establish an essential element of the party's case and on which the party will bear the burden at trial). If a plaintiff establishes this prima facie case, the burden shifts to the defendant to advance a legitimate non-discriminatory reason for the adverse employment action. Once the defendant has done so, the burden shifts back to the plaintiff to show that the defendant's given reason is a pretext for retaliation. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). If the plaintiff fails to raise a genuine issue of fact as to any element of the prima facie case, or as to whether the defendant's reason is

pretextual, her retaliation claim cannot survive summary judgment. *Id.*; see also *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 560 (7th Cir. 2004).

On December 20, 2002, Bamidele-Acquaye filed a charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC"). Her charge stated that Home Depot denied her a promotion in July and again in December 2002. The charge further states that Home Depot had filled the positions she sought with less qualified Caucasian individuals and that she believed she was not promoted because of her race. Bamidele-Acquaye Dep. at 98, Ex. 15; Bamidele-Acquaye Aff. ¶ 65.

In January 2003, Bamidele-Acquaye received another performance evaluation. She was rated an "Achiever" overall, and was rated as an "Achiever" or a "Performer" in all fourteen development areas. The evaluation stated that Bamidele-Acquaye was an outstanding asset to the front end area, that she kept the front end running smoothly, and that she set a good example for others to follow. Bamidele-Acquaye Aff. ¶ 62, Att. 3. The evaluation stated that Bamidele-Acquaye's key development needs included needing to expand her knowledge of the special service desk and the vault/computer room in order to enhance her working knowledge of Home Depot. The evaluation also stated that Bamidele-Acquaye was ready to transfer "anytime" to a position in the vault/computer room, the special services area, or an FES position. *Id.* Home Depot raised Bamidele-Acquaye's pay by $0.45 per hour in January 2003. Bamidele- Acquaye Aff. ¶ 106.

On January 26, 2003, FES Hensley circulated a memorandum to the head cashiers at the Post Road Home Depot.  See Bamidele-Acquaye Dep. Exs. 13 & 14. The memorandum included a list entitled "New Responsibilities" that listed the head cashiers' names and detailed the tasks for which each was responsible.  The following direction was given to new head cashier Christie Haemmerle:

> Christie – POS, no mark, and NOF
>
> These are to be filed in the second drawer.  If you need assistance with the reports ask Patrice questions but as of Feb 1 it will be your responsibility.

Bamidele-Acquaye Dep. at 129, Exs. 13 & 14.  Bamidele-Acquaye refused to sign the memorandum and complained to Lintzenich that she "wasn't going to train head cashiers."  Bamidele-Acquaye Dep. at 82, 92.  In her affidavit, Bamidele-Acquaye testified that, in addition to complaining that she was not going to train head cashiers, she also complained that requiring her to do so amounted to discrimination and retaliation.  Bamidele-Acquaye Aff. ¶ 69.

In July 2003, assistant manager Leamon Waltman,[1] who was African American, completed another performance evaluation for Bamidele-Acquaye.  The evaluation rated her as a "Performer" overall, rated her as a "Performer" in twelve of the fourteen development areas, and assigned her a rating of "Improvement Required" in the areas of communicating effectively and promoting teamwork.

---

[1] This individual's name is spelled in various ways throughout the parties' briefs.  This is the spelling provided by the parties within the arguments on Bamidele-Acquaye's claims.

Under the category of "Potential Next Position" in the evaluation, Waltman had written "Department Supervisor" and listed the timing as "Short Term." *Id.* ¶ 73, Att. 8. Bamidele-Acquaye testified that Waltman had not supervised her. Bamidele-Acquaye Aff. ¶ 77. She testified that she refused to sign the evaluation, but that someone else had written her name on the signature line. Bamidele-Acquaye Aff. ¶ 82, Att. 8. Bamidele-Acquaye testified that she believed that the "Improvement Required" ratings would prevent her from obtaining a promotion. Bamidele-Acquaye Aff. ¶ 81.

Bamidele-Acquaye testified in her December 2003 deposition that, following her December 2002 EEOC charge, Home Depot had not disciplined her, denied her a promotion, demoted her, or decreased her pay. Bamidele-Acquaye Dep. at 142-43.

Home Depot raised Bamidele-Acquaye's pay by $ 0.30 per hour in January 2004. She testified that this was a smaller raise than she believed she should have received. Bamidele-Acquaye Aff. ¶ 107.

Bamidele-Acquaye apparently also claims that she was denied additional promotions to the position of FES in 2004, though her testimony on this point is rather cryptic. In her affidavit, she testified that after her July 2003 review, she "did not apply again for any position," but that she "did not have to apply again" because she had already registered her interest in positions as a vault/computer

-23-

room worker, FES, or scheduler through the company's Job Preference Process ("JPP"). *Id.* ¶ 83. Because she had registered her interest through the JPP, she testified, she believed she did not need to "sign a paper to apply for a promotion," though she also believed that she would not be promoted after her July 2003 evaluation. *Id.* ¶ 85.

After Hensley left the FES position, Home Depot transferred Janeen Logan, an African American woman who had not complained of discrimination, to the position during summer 2004. Bamidele-Acquaye testified that Logan was the supervisor of the flooring department but did not have experience performing the duties of an FES. *Id.* ¶¶ 89-92. During summer 2004, Home Depot transferred Bamidele-Acquaye to a position working in the vault. *Id.* ¶ 95. Home Depot placed Greg Dohrn, hardware department supervisor, in the FES position in October 2004. *Id.* ¶ 93.

Home Depot denies that it retaliated against Bamidele-Acquaye for reporting race discrimination and claims that she has failed to show that she was subjected to any materially adverse employment action or that she was treated less favorably than a similarly situated individual who did not engage in a protected activity.

A.    *Materially Adverse Employment Action*

Bamidele-Acquaye claims that Home Depot retaliated against her for reporting race discrimination by (1) denying her two promotions to the FES

position in 2004; (2) giving her a negative performance evaluation; (3) requiring her to train other employees on front end tasks beyond her job description; (4) lowering her January 2004 pay raise; and (5) criticizing her.  The standard for whether an adverse employment action is "material" and therefore actionable is somewhat broader for retaliation claims than for discrimination claims.  See 42 U.S.C. §§ 2000e-2(a), 2000e-3(a).  "[I]n the retaliation context, an employer's action will be actionable under § 2000e-3(a) if it would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Whittaker v. Northern Illinois Univ.*, 424 F.3d 640, 648 (7th Cir. 2005), quoting *Washington v. Illinois Dep't of Revenue*, 420 F.3d 658 (7th Cir. 2005).

### 1.    *"Negative" July 2003 Evaluation*

Bamidele-Acquaye's July 2003 performance evaluation, completed by Waltman, rated her as a "Performer" overall, assigned her a rating as a "Performer" in twelve of the fourteen development areas, and assigned her a rating of "Improvement Required" in two areas.  Bamidele-Acquaye Aff. ¶ 73, Att. 8.  Bamidele-Acquaye argues that this performance evaluation was falsely negative and that Home Depot management intentionally required Waltman, who was not her supervisor, to complete this evaluation in retaliation for her EEOC charge.

A negative performance evaluation, alone, does not amount to a materially adverse employment action.  See *Beamon*, 411 F.3d at 862; *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996) (sex discrimination claim).  Negative

evaluations may constitute materially adverse employment actions in combination with additional evidence of adverse actions, or where such evaluations led to other materially adverse actions.  *Smart*, 89 F.3d at 442-43 (noting that a materially adverse employment action has been found when a plaintiff's job responsibilities were reduced because of her evaluations, or where plaintiff presents evidence that the employer purposely overworked her and gave her false negative evaluations in order to create a pretext for her termination), citing *Vergara v. Bentsen*, 868 F. Supp. 581 (S.D.N.Y. 1994), and *Mead v. U.S. Fidelity & Guaranty Co.*, 442 F. Supp. 114 (D. Minn. 1977).

Bamidele-Acquaye acknowledges that the July 2003 evaluation cannot be considered a materially adverse employment action if taken alone.  She argues, however, that "[t]he July 4, 2003 bad review . . . caused her not to be considered for any promotion."  She claims that the combination of the review and any subsequent refusal to promote her amount to a materially adverse employment action.  Pl. Response Br. at 30-31; see also Bamidele-Acquaye Aff. ¶ 81.  This claim is unsupported, as Bamidele-Acquaye points to no negative consequence resulting from or even related to her July 2003 evaluation.  Even assuming that the evaluation was in fact negative, Bamidele-Acquaye's argument that the "Improvement Required" ratings in her July 2003 evaluation "would stop any promotion" provides only speculation and conjecture, which falls short of her burden in establishing her prima facie case sufficient to survive summary

judgment.  See *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001).

Bamidele-Acquaye's argument that the performance evaluation kept her from being promoted is also weakened by the comments in the evaluation itself, which stated that Bamidele-Acquaye would be ready for a promotion to a position as a "Department Supervisor" within a short period of time.  Bamidele-Acquaye Aff. ¶ Att. 8.  The argument is also contradicted by the fact that Home Depot transferred Bamidele-Acquaye during summer 2004 to the vault/computer room position that she requested through the JPP system.  Bamidele-Acquaye has failed to raise a genuine issue of material fact as to whether she suffered a materially adverse employment action because of her July 2003 evaluation.  Accordingly, any claim that she was retaliated against based upon this evaluation cannot survive.

2.    *Denial of 2004 FES Promotions*

Bamidele-Acquaye alleged in her complaint that Home Depot would not consider her for a promotion after she filed her charge with the EEOC.  See Pl. Cplt. ¶ 42.  The denial of a promotion is a material adverse employment action traditionally recognized under Title VII and § 1981.  See *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 300 n.1 (7th Cir. 2004), citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).  The issue, however, is whether Bamidele-Acquaye has raised a genuine issue of material fact as to whether she actually suffered this employment action.  Bamidele-Acquaye testified in December 2003

-27-

that she had not applied for or been denied any promotions since her December 2002 EEOC charge.  Bamidele-Acquaye Dep. at 1, 142-43.

Bamidele-Acquaye, however, argues that she was denied promotions to the FES position when the position twice became available in 2004, though her testimony on this point is rather contradictory.  She testified that after her July 2003 review, she "did not apply again for any position," but that she "did not have to apply again," because she had already registered her interest in positions as a vault/computer room worker, a FES, or a scheduler through the JPP.  Bamidele-Acquaye Aff. ¶ 83.

During the summer of 2004, Home Depot transferred Bamidele-Acquaye to a position working in the vault with co-worker and co-plaintiff Frances Fulmore. *Id.* ¶ 95.  After Hensley left the FES position, Home Depot transferred Janeen Logan to the position, also during the summer of 2004.  *Id.* ¶¶ 89-92.  Home Depot placed Greg Dohrn, who had been the supervisor of the hardware department, in the FES position in October 2004 when another opening became available.  *Id.* ¶ 93.

The evidence in the record pertaining to the 2004 FES promotions is sparse at best.  The issue of whether Bamidele-Acquaye was "denied" the FES promotions is made more complicated by the fact that she was transferred to one of her desired positions, a position as an associate in the vault/computer room, during

the summer of 2004.  Bamidele-Acquaye has not offered evidence as to whether she was transferred to the vault position either before or after Logan was made the newest FES.  Home Depot does not dispute that Bamidele-Acquaye registered for such positions in the JPP, however, and that the positions were ultimately given to others.  Construing the evidence in the light most favorable to Bamidele-Acquaye, as the court must do on Home Depot's motion for summary judgment, the court finds that she has raised a genuine issue of material fact as to whether she was denied such promotions.

### 3.   *January 2004 Pay Raise*

Bamidele-Acquaye also argues that Home Depot subjected her to a materially adverse employment action by either reducing her pay raise or giving her a pay raise that was lower than she deserved in January 2004.  The only evidence of this claim can be found in Bamidele-Acquaye's affidavit statements that she was given a $0.45 per hour pay raise in January 2003 and only a $0.30 per hour pay raise in January 2004.  See Bamidele-Acquaye Aff. ¶¶ 106-07.  Bamidele-Acquaye's argument that this amounts to a reduction in pay is misplaced.  She has offered no evidence that her pay was reduced.

Bamidele-Acquaye might be able to demonstrate that she suffered a materially adverse employment action if she had received a pay raise lower than other similarly situated employees outside her protected class.  See, *e.g.*, *Hildebrandt v. Illinois Dep't of Natural Resources*, 347 F.3d 1014, 1030-31 (7th Cir.

2003) (reversing district court grant of summary judgment in favor of employer in Title VII sex discrimination claim where employee demonstrated that she was given a smaller pay raise than comparable male employees).  She has failed to offer any such evidence, however.  The denial of a raise can be an adverse action where the raise was "an expected element of the employee's salary" and the denial "cuts the salary in real terms."  *Griffin v. Potter*, 356 F. 3d 824, 830 (7th Cir. 2004).  Baven has not provided any other evidence that might suggest that she had some right to a greater pay raise.  Accordingly, no reasonable jury could find based only on these two statements that Bamidele-Acquaye suffered a materially adverse action of either a reduction in pay or a denial of an earned pay raise.

### 4.    *Training Head Cashiers*

Bamidele-Acquaye argues that Home Depot subjected her to material adverse employment actions by requiring her to train head cashiers without either promoting her to a trainer or FES position or otherwise compensating her.  See Pl. Cplt. ¶ 41 ("In January 2003, Home Depot stated that Head Cashiers could be trained by Ms. Bamidele-Acquaye, instead of being trained by Home Depot trainers, but Home Depot did not promote her.").  Bamidele-Acquaye has made two assertions relevant to this claim.  First, she testified that Hensley asked Bamidele-Acquaye to train her on front end paperwork because she did not understand it.  Bamidele-Acquaye Aff. ¶ 67.  Second, she testified in her affidavit that she was required to train other head cashiers, which she claims was outside her job description.  *Id.* ¶ 68.  The only evidence that Bamidele-Acquaye advances

to support the assertion that she was required to train other head cashiers, Hensley's January 2003 memorandum, instructs one head cashier to direct questions about certain paperwork to Bamidele-Acquaye for approximately one week. See Bamidele-Acquaye Dep. 129, Exs. 13 & 14. Bamidele-Acquaye refused to sign the memorandum and complained to Lintzenich that she "wasn't going to train head cashiers." Bamidele-Acquaye Dep. at 82, 92. She also testified she complained that requiring her to do so amounted to discrimination and retaliation. Bamidele-Acquaye Aff. ¶ 69.

Bamidele-Acquaye's job description classified her as a "Head Cashier Associate." The job description for the position includes among the responsibilities listed training "other Front End Associates." Bamidele-Acquaye Dep. Ex. 6. Based on this language, any assertion that training other head cashiers was not within her normal duties is inaccurate.

Even assuming that training other head cashiers was outside Bamidele-Acquaye's job description, however, any request by Home Depot that Bamidele-Acquaye answer another head cashier's questions about certain paperwork for a short period of time simply does not rise to the level of a material adverse employment action. Additionally, Bamidele-Acquaye has not produced any evidence that she was actually required to answer other head cashiers' questions, or that she trained either Hensley or Haemmerle in completing front end paperwork. The only evidence before the court is that Bamidele-Acquaye refused

to comply with the portion of the Hensley memorandum that she found unfair. Accordingly, Bamidele-Acquaye has failed to demonstrate that she was subjected to a material adverse employment action by being required to train other employees.

5.   *Criticism*

Bamidele-Acquaye alleged in her complaint that Home Depot retaliated against her by criticizing her for complaining of discrimination.  Pl. Cplt. ¶ 42. When asked about this claim during her deposition, Bamidele-Acquaye testified as to two incidents when she believed that either Meadows or Lintzenich stated that she was "disrupting the front end."  The first incident involved co-worker Shannon Frederick.  Bamidele-Acquaye testified that Russell and Meadows forced Frederick to write a statement about Bamidele-Acquaye.  Assuming this is true, Bamidele-Acquaye testified that this incident took place before she filed her December 2002 EEOC charge.  The action cannot be considered a materially adverse employment action in retaliation for the charge.  See Bamidele-Acquaye Dep. at 131-33, 136-37.

When asked again about criticism in retaliation for her complaint, Bamidele-Acquaye testified that she had a conversation with Lintzenich in January 2003 when she complained to him about two memoranda that were written by Hensley and issued to the head cashiers.  She testified that, as she was speaking with Lintzenich, Meadows approached the two and wanted to know what

they were talking about, and that Bamidele-Acquaye then walked away.  She testified that a week or two following this incident, she received a copy of a Home Depot's response to the EEOC stating that she had been considered for an FES position but that she had disrupted the front end of the store.  Bamidele-Acquaye testified that there had been no FES openings between January 2003 and her December 2003 testimony.  Bamidele-Acquaye Dep. at 139-42.

Not everything that makes a plaintiff unhappy amounts to an adverse action.  *Bell v. EPA*, 232 F.3d 546, 555 (7th Cir. 2000).  Reprimands or criticism may be considered materially adverse employment actions where such statements are shown to lead to job-related consequences.  *Whittaker v. Northern Illinois Univ.*, 424 F.3d 640, 648 (7th Cir. 2005).  The Seventh Circuit has also commented that employer criticism of an employee may be considered a materially adverse employment action in the retaliation context where such criticism is severe or pervasive.  *Griffin*, 356 F.3d at 829-30 (holding that supervisor's repeated post-complaint comments at staff meetings over a two month period that plaintiff was a "bad influence at the office" and that she "thought she knew everything" did not amount to a materially adverse employment action).  Bamidele-Acquaye has shown no consequence as a result of such criticism.  Also, one comment that Bamidele-Acquaye was disrupting the front end of the store does not rise to the level of severe or pervasive criticism articulated in *Griffin*.  Because Bamidele-Acquaye has failed to offer evidence that would raise a genuine issue of material fact as to whether any criticism that she received from Home Depot management

was either accompanied by a related job consequence or was severe or pervasive, such criticism does not amount to a materially adverse employment action.

B.   *Similarly Situated Individuals*

As a plaintiff opposing summary judgment, however, Bamidele-Acquaye carries the burden of raising a genuine issue of fact as to whether she was treated less favorably than a similarly situated individual who did not engage in a protected activity.   *Stone*, 281 F.3d at 644 (plaintiff carries burden of showing prima facie case); *Beamon*, 411 F.3d at 861-63; *Stone*, 281 F.3d at 644 (plaintiff carries burden of showing prima facie case).   As with claims of discrimination, employees are similarly situated for the purposes of a retaliation claim only if they are "directly comparable in all material aspects."   *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 561 (7th Cir. 2004), quoting *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 531-32 (7th Cir. 2003); *Rogers v. City of Chicago*, 320 F.3d 748, 755 (7th Cir. 2003).

Bamidele-Acquaye testified that Dorhn and Logan were promoted to FES supervisor positions in 2004.   She has failed to offer any evidence pertaining to whether either Dorhn or Logan reported any race discrimination, failing a basic requirement of the prima facie case under the indirect method. See *Jordan v. City of Gary*, 396 F.3d 825, 834 (7th Cir. 2005) (plaintiff asserting sex and age discrimination claims failed to demonstrate that she was treated less favorably

than someone outside of her protected class because the promotion she sought was filled by another woman over age 40).

Additionally, Bamidele-Acquaye has testified that she was transferred to a vault position, a position for which she applied, during the summer 2004, which is the same period during which Logan was transferred to the FES position and before Dorhn was transferred to the position. Bamidele-Acquaye's transfer to the vault position she sought renders any argument that she was treated less favorably than Dorhn and Logan weak at best.

Most important, Bamidele-Acquaye has failed to raise a genuine issue of fact as to whether she was similarly situated, or similarly qualified, to either Dohrn or Logan. Bamidele-Acquaye testified that both Dorhn and Logan had been department supervisors before their transfer to the FES positions. Home Depot points out that this renders their placement in the positions lateral transfers, not promotions, and Bamidele-Acauaye has not presented evidence to rebut this contention. In *Hoffman-Dombrowski v. Arlington International Racecourse, Inc.*, 254 F.3d 644 (7th Cir. 2001), the Seventh Circuit held in a sex discrimination case that the plaintiff could not raise a genuine issue of material fact as to the fourth element of her failure to promote claim because she was not similarly situated to the man who received the position because, as a higher ranking employee, his placement in the position was a lateral transfer and not a promotion. *Id.* at 651. For the same reasons, Bamidele-Acquaye cannot meet the

fourth element of her retaliation claim with respect to any 2004 FES promotions because she was not similarly situated to the lateral transfers, Dohrn and Logan.[2]

Bamidele-Acquaye has advanced neither evidence nor argument that she was treated less favorably than any other similarly situated employee who did not complain of discrimination.  She argues instead that she "is in a class of one," that "no other employee was treated so badly," and that "no white head cashier was treated this way."  Pl. Response Br. at 32.  In the absence of direct evidence of retaliation, however, Bamidele-Acquaye must offer more than such speculation or conjecture to withstand summary judgment scrutiny.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001).  Such conclusory and, in some cases, irrelevant claims do not satisfy her burden under the fourth element.  See *Rogers*, 320 F.3d at 755 (plaintiff's claim that no other officer in her district received similar treatment was not sufficient to show that any other officer was situated similarly); *Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 614-15 (7th Cir. 2001) (plaintiff failed to raise an issue of fact as to the fourth element in her sex discrimination claim where she offered only her own conclusory statements that male co-workers were treated differently).

---

[2]Bamidele-Acquaye did not mention either Logan or Dohrn in her argument on the fourth element of her retaliation claim.  Rather, she focused on arguing that she was not similarly situated to any employees outside of her class.

Because she does not point to a single comparator who was treated more favorably or was situated similarly to her, Bamidele-Acquaye cannot meet her burden of showing a prima facie case of retaliation and her claim cannot survive Home Depot's motion for summary judgment.  See *Hudson*, 375 F.3d 552, 560-61 (7th Cir. 2004) ("Under the indirect method of proof, failure to satisfy any one element of the prima facie case is fatal to an employee's retaliation claim."); *Rogers*, 320 F.3d at 755 (affirming summary judgment where plaintiff could not show any similarly situated individuals treated differently);  *Beamon*, 411 F.3d at 863 (same).   Accordingly, the court does not reach the parties' arguments regarding pretext on the retaliation claims.  See *Hilt-Dyson*, 465 (failure to satisfy one element of the prima facie case is fatal to plaintiff's claim); *Jones v. Union Pacific Railway Co.*, 302 F.3d 735, 741 (7th Cir. 2002) (establishment of the prima facie case of discrimination is a "condition precedent" to pretext analysis).

*Conclusion*

Bamidele-Acquaye has failed to demonstrate a genuine issue of material fact as to either her disparate treatment or her retaliation claims.  Accordingly, Home Depot's motion for summary judgment as to all of Bamidele-Acquaye's claims is granted.  No final judgment shall be entered at this time because some claims of other plaintiffs in the case remain pending.

So ordered.

Date: March 30, 2006

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Richard L. Darst
COHEN GARELICK & GLAZIER
rdarst@fed-law.com

Brian L. McDermott
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
brian.mcdermott@odnss.com

Louis Bennet Eble
VERCRUYSSE MURRAY & CALZONE, P.C.
leble@vmclaw.com

Gregory V. Murray
VERCRUYSSE MURRAY & CALZONE, P.C.
gmurray@vmclaw.com

Kenneth B. Siepman
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
kenneth.siepman@odnss.com