UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CARL S. FULMORE, | ) |
| FRANCES N. FULMORE, | ) |
| ALAN R. AKERS, | ) |
| PATRICE BAMIDELE-ACQUAYE, | ) |
| DAVID A. TAYLOR, and | ) |
| MARIA A. BAVEN, | ) |
| | ) |
| Plaintiffs, | )   CASE NO. 1:03-cv-0797-DFH-VSS |
| | ) |
| v. | ) |
| | ) |
| HOME DEPOT, U.S.A., INC., | ) |
| | ) |
| Defendant. | ) |

ENTRY ON DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT
AGAINST PLAINTIFF DAVID TAYLOR

Plaintiff David Taylor brought this action against his former employer Home

Depot, U.S.A., Inc. alleging that it discriminated against him and retaliated

against him for reporting discrimination, both in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981.  Taylor

claims that Home Depot discriminated against him and retaliated against him by

reducing his assigned work hours and by later terminating him.  Home Depot

denies Taylor's allegations and has filed a motion for summary judgment on each

of Taylor's claims.  For the reasons explained below, Home Depot's motion is

granted.  Taylor has not offered direct evidence of race discrimination or

retaliation.  And despite Taylor's massive submission of evidence, he has failed to

provide indirect proof of unlawful discrimination because he has no evidence that similarly situated persons were treated more favorably than he was.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment should be granted only where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Only genuine disputes over material facts can prevent a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Id.*

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255; *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). "[B]ecause summary judgment is not a paper trial, the district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920

(7th Cir. 1994). The court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.*

### Disputed and Undisputed Facts

The following account is not necessarily accurate, but reflects application of summary judgment standards to the extensive record before the court.

David Taylor applied for employment with Home Depot at its new store on Post Road in January 2002. Taylor indicated on his job application that he had not been convicted of either a felony or misdemeanor, excluding traffic offenses, within the last five years. He also answered "No" to the question of whether he had ever been discharged from his work. The application also included a section requiring an applicant to list his three "most recent employers, beginning with the current or most recent" employer. Taylor completed this section by writing that he had worked at Butler, ETC Temporary Services, and Dollar Inn. Taylor Dep. at 57, Ex. 15.

Taylor did not write on his application that he had worked at Wal-Mart, which was his employer between his positions with ETC Temporary Services and Butler. He testified that he did not list Wal-Mart because he "just probably forgot to put it on there." Taylor Dep. at 57. When shown a document produced by Wal-Mart stating that Taylor had been involuntarily terminated from the store for inability to perform his job, he testified in his deposition that he was not

terminated from Wal-Mart but had quit his position with the company voluntarily. The document is not signed by Taylor.  *Id.* at 29-30, Ex. 5.

Taylor began working at Home Depot's Post Road store as a member of the freight team on January 24, 2002.  His responsibilities included stocking store shelves with merchandise and assisting customers during store hours.  Taylor Dep. at 51, 58, 65-66, Ex. 15; Russell Aff. ¶ 7.

Taylor completed an orientation covering Home Depot policies, rules and regulations, safety training, and other aspects of employment at Home Depot. Taylor also received Home Depot's Associate Orientation Guide ("the Guide"). Taylor Dep. at 59-65, Exs. 16, 17, 18.  The Guide listed "conduct that may result in disciplinary action, up to and including termination" as including the following:

> Attendance
>
> — failing to report to work without calling in for two (three in California) consecutive days – associates must call their manager at least one hour before the shift if they are going to be absent or tardy
>
> — having unexcused absences (an absence without a satisfactory excuse)
>
> — having excessive absences or tardiness

Russell Aff. ¶ 5; Taylor Dep. Ex. 18 at HD 1347.

Taylor failed to either report to work or call in to report his absence, an offense called a "no call no show," on February 23, 2002.  He was also absent from

work on February 27, 2002, and called Home Depot to report his absence one half hour before his shift was scheduled to begin.  He received an Associate Action Notice completed by his supervisor John Webb documenting the incidents, stating:

> David was a no call no show on 2-23-02, and has also called in sick 2-27-02.  Due to the short time the store has been open this is unacceptable. More than one half hour notice on call ins is needed. . . . Any other [occurrences] could result in [disciplinary] action up to termination.

Taylor Dep. at 68, Ex. 20.  Taylor testified that he committed the attendance violations for which he was cited.  Taylor Dep. at 68.

Taylor complained to receiving supervisor Kenn King that he was "being written up for things that white employees were not written up for."  Taylor Aff. ¶ 7.  Taylor testified in his deposition that both Webb and another Caucasian employee committed the same violation but had not been "written up."  Taylor Dep. at 67-70.  He testified that King agreed that it was not fair that Taylor was cited for the "no call no show" violation because Webb and another Caucasian employee, Shawn Utterback, had also committed the same violation and "they were not written up."  Taylor Aff. ¶¶ 5, 8.  Taylor testified that he and King complained to store manager Jamie Meadows that "they didn't write the white guys up."  Taylor Dep. at 67-68; see also Taylor Aff. ¶¶ 9, 10.  Taylor testified that after complaining to Meadows "two or three times," Meadows "finally wrote them up."  Taylor Dep. at 68.  Home Depot later terminated Webb for attendance-related problems.  Russell Aff. ¶ 12; Taylor Aff. ¶ 11.  Taylor's co-worker and co-plaintiff

Carl Fulmore testified that King complained to him that "white associates could get away with anything" and that Utterback "constantly" arrived late for work, but when King would record the tardiness he would find it erased or lined though in the attendance logs.  C. Fulmore Aff. ¶ 70.

Taylor asked to be transferred to another position in spring 2002.  Taylor reported to Meadows that he could not work evening hours.  Taylor testified that Meadows informed him that the only position available for days was that of lot attendant.  Taylor Aff. ¶ 12.  Taylor accepted the position.  He testified that his responsibilities in the lot position included helping customers load cars and making sure the lot stayed clean.  He testified that he worked approximately 35 hours per week in this position, Mondays through Saturdays, and that he was not available to work on Sundays.   Taylor Dep. at 76-78.  Taylor testified that assistant store manager Matt Miller informed him that Miller would try to find a daytime position for him in the store's lawn and garden department within "a few months."  Taylor Aff. ¶ 13.

Miller completed Taylor's first performance evaluation on May 7, 2002.  Miller rated Taylor a "Performer" overall, and assigned him a rating of "Improvement Required" in six of the areas listed.  Miller also wrote the following comments:

> David has had a problem with his punctuality in the past when he was on the freight team.  He did not accomplish as much as we expected.  He has since been moved to the lot.  Dave has done a good job on the lot.  He keeps

all the carts off the lot and assist[s] customers with loading.  Dave needs to realize that as a Home Depot associate it is his responsibility to do any job in the store and help all customers with all their needs.  He does not get to [choose] which jobs he is willing to do.  He must do what the [Department Managers] and [assistant Managers] ask of him.

Taylor Dep. at 83-84, Ex. 26; Taylor Aff. ¶ 17.  Taylor agreed with the performance evaluation.  Taylor Dep. at 87.

On June 12, 2002, Taylor received a written associate action notice after an incident involving head cashier Allison Jones.  Taylor testified that he was speaking with a cashier when Jones, who is Caucasian, told Taylor that he should stop talking and instructed him to "get back outside."  *Id.* at 133, 136.  Taylor responded to Jones, saying "I'm 36 years old.  I can talk to who I want to talk to."  *Id.* 133-34.  Taylor testified in his affidavit that Jones was "talking down" to him and "hollering."  Taylor Aff. ¶ 19.

After the incident, Taylor was called to a meeting with Meadows, Russell, and assistant store manager Joseph Lintzenich.  Taylor testified that he complained to Russell, Meadows, and Lintzenich that he had not said anything wrong to Jones, and that she instructed him to "get outside" without even knowing what he and the cashier were talking about.  Taylor Dep. at 135-36.  He also testified that he informed Russell that he was 36 years old and that he "should not be talked to that way."  Taylor Aff. ¶ 21.  Russell and Taylor signed the associate action notice, which stated that Taylor had been involved in similar confrontations in the past.  The notice also stated that the three managers

informed Taylor during the meeting that his response to management was "unacceptable" and that further violations would result in termination. Taylor Dep. at 132-36, Ex. 34.[1]

On December 6, 2002, Taylor was taking his break in the employee break room at the back of the store when department supervisor Mike Wagner called the break room to request Taylor assist a customer at the front of the store. Taylor stated that he was taking his break and that Wagner should help the customer. Taylor hung up the phone and Wagner came to the break room to speak with Taylor. Taylor testified that Wagner pointed his finger in Taylor's face, yelled at him, and was rude to him. Taylor Dep. at 122-26; Taylor Aff. ¶¶ 22-24, 26. Taylor testified in his affidavit that Wagner also threatened to have Taylor fired for

--------

[1]In his affidavit, Taylor testified that he also complained to Russell that Jones "talked down to" African American employees. Taylor Aff. ¶ 20. In his deposition testimony, Taylor did not testify that he complained during the meeting with Russell, Lintzenich, and Meadows of any race discrimination by Jones. He testified that he complained during the meeting that Jones didn't even know what he was speaking with the cashier about, and that he had not said anything wrong to Jones. When asked if he remembered anything else he said during the meeting, Taylor testified "No." Taylor Dep. at 135. It is well-settled that a party may not be permitted to undermine the aims of Rule 56 of the Federal Rules of Civil Procedure by creating "sham" issues of fact with later-submitted affidavits contradicting prior deposition testimony. *Ineichen v. Ameritech, Inc.*, 410 F.3d 956, 963 (7th Cir. 2005). "Where [a] deposition and [an] affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken . . . ." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67-68 (7th Cir. 1995), quoted in *Adusumilli v. City of Chicago*, 164 F.3d 353, 360 (7th Cir. 1998). Taylor has failed to offer any explanation for this clear discrepancy between his affidavit and his deposition testimony. Accordingly, the court disregards paragraph 20 of Taylor's affidavit.

insubordination.  Taylor Aff. ¶ 26.  Wagner's account of the events characterized Taylor as argumentative.  Taylor Dep. Ex. 32.

Taylor complained to Russell.  Taylor Aff. ¶ 22.  Taylor was not satisfied with Russell's response, and he called a toll-free phone number posted in the break room to complain.  Taylor Dep. at 122-26, Ex. 33; Taylor Aff. ¶¶ 28, 29.  The report completed by the company administering the phone line states that Taylor complained that Wagner's actions were inappropriate and unethical.  Taylor Dep. Ex. 33.  In his affidavit, Taylor claims that when he called the hotline, he complained that Wagner "did not talk to white people that way."  Taylor Aff. ¶ 29. Russell testified that he counseled Wagner for his part in the incident.  Russell Aff. ¶ 8, Ex. 1.

On December 20, 2002, Taylor filed a charge of race discrimination against Home Depot with the EEOC.  Taylor's charge stated that he believed he was treated less favorably than Caucasian co-workers and explained the basis of his charge:

> This includes, but is not limited to, my being written up on at least two occasions for alleged violations that White employees were not written up for.  The first was for a no-call no-show, when there were at least three White employees who were also no-calls, no-shows, and were not written up.  The second is for "talking back" to the Head Cashier, Alice Jones, when there are White employees who "talk back" to her on a regular basis, and she does not write them up.  I also have corroboration that Managers, Robert (LNU), and Terry Decker, both [White], made the statement that, "we are going to do enough stuff to make David quit."  Mike Wagner, has also harassed me.  He knew that I was on break for at least five more [minutes], he called the break room and told me to come out front.  I told him I still

had about five minutes left on my break.  He immediately came back to the break room, yelling and screaming at me, with his finger pointing directly in my face in front of several of my co-workers.  He does not do that to his White employees.

Taylor Dep. Ex. 38; Taylor Aff. ¶ 35, Att. 5.  Akers testified that co-plaintiffs Frances Fulmore, Patrice Bamidele-Acquaye, Alan Akers, and Maria Baven also filed charges of discrimination the same day that Taylor filed his charge.  Taylor Aff. ¶ 36.

Taylor testified that after he complained of race discrimination, Home Depot reduced the number of his assigned work hours from "about 35 hours a week" to "about 15 hours a week," and claimed that "on some weeks" he was assigned to work only 10 or 11 hours.  *Id.* ¶ 38.  Russell testified that between September 2, 2002 and November 24, 2002, Taylor worked between 29.5 and 35.5 hours per week, for an average of 32.42 hours per week.  Between November 25, 2002 and January 5, 2003, Taylor worked an average of 21.32 hours per week.  Russell testified that Taylor worked an average of 20.45 hours per week from January 6, 2003 through June 1, 2003.  Russell Aff. ¶ 14; see also Taylor Aff. ¶ 59.  Russell also testified that between January 6, 2003 and June 1, 2003, Taylor was assigned more work hours on average than four part-time lot attendants who did not file EEOC charges.  Russell testified that the only part-time lot attendant who worked more hours than Taylor was Ryan Orczechowicz, who only worked as a lot attendant for six weeks, from April 21, 2003 through June 1, 2003, that Orczechowicz worked an average of 26.46 hours per week during these six weeks,

and that Taylor worked an average of 24.29 hours per week during this period. Russell Aff. ¶ 14.  Taylor testified that Orzechowicz worked 40 hours per week. Taylor Aff. ¶ 61.

Home Depot claims that Taylor's hours were reduced because the hours of part-time associates are normally reduced during the late fall and winter months when the store has lower sales volume.  Meadows Dep. at 153, 155, 158; Russell Dep. at 49-50.  Taylor testified that Russell informed him that full-time employees had first priority for assignment of work hours.  Taylor Dep. at 139.  The parties dispute, however, whether Taylor was a full-time or part-time employee.  Taylor testified that he was "hired in as a full-time associate" but that "[t]hey changed that."  *Id.* at 139.  He testified that as a full-time employee, he worked approximately 35 hours per week in the lot attendant position.  Taylor Aff. ¶¶ 14, 15.

Taylor also testified in his affidavit that for a period of two months in 2003, he was the only daytime lot attendant, but that his hours were not increased and Home Depot required cashiers and other associates to "do the lot attendant's duties."  *Id.* ¶¶ 67, 68.

Lintzenich completed a performance evaluation for Taylor in January 2003. Taylor Dep. at 87, Ex. 27; Russell Aff. ¶ 9.  Lintzenich rated Taylor as a "Performer" overall and stated that Taylor was "a hard worker" but that he

"need[ed] to understand how his job is related to the entire store." Taylor Dep. Ex. 27; Taylor Aff. ¶ 37.  Taylor received a $ 0.25 per hour raise in connection with the evaluation.  Taylor Dep. at 111-12, Ex. 31.

Also in January 2003, Home Depot district human resource manager David Carpenter spoke with Taylor regarding his EEOC complaint.  Taylor testified that Carpenter urged Taylor to call him if he had concerns about retaliation.  During his deposition, Taylor testified that he remembered little about his discussion with Carpenter.  Taylor Dep. at 174-75.  Taylor testified that he complained to Carpenter "a couple of times" after January 2003.  Taylor Aff. ¶ 42.[2]

Russell informed Taylor in early 2003 that Home Depot was opening up a full-time lot position.  Taylor testified in his affidavit that he told Russell that he could work full-time day shifts, but that Russell informed him that he could only

---

[2]In his February 5, 2004 testimony, Taylor claimed to have no memory of what he said to Carpenter during the meeting.  Taylor Dep. at 174-75.  In his January 25, 2005 affidavit, Taylor testified:  "I complained to David Carpenter about the discrimination against me, about the way that Post Road managers talked to black employees, and about the Post Road store cutting my hours, and he said I could call him when I had problems."  Taylor Aff. ¶ 41.  Taylor's affidavit statement is both contradictory and unreliable based on its inconsistency with his deposition testimony.  No reasonable jury could rely upon such a statement, and the statement is therefore disregarded.  See *Unterreiner v. Volkswagen of America, Inc.*, 8 F.3d 1206, 1210 (7th Cir. 1993) (disregarding plaintiff's affidavit submitted in an age discrimination case, stating that a "party cannot claim a lack of general knowledge about a subject and later make a statement which requires detailed knowledge about the same subject"); see also *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998) (affirming district court refusal to consider affidavit testimony specifying facts that the plaintiff claimed not to recall during her deposition testimony in disability discrimination case).

work full-time if he was available during days and nights. Taylor, who had submitted a part-time availability form stating that he was available to work between 9 a.m. and 4 p.m., turned down the position because he did not want to work evening hours. Taylor testified in his affidavit that he worked full-time day shifts for a year before he complained to Home Depot. Taylor Aff. ¶¶ 50-52; Taylor Dep. at 138-39; Russell Aff. ¶ 10.

In February 2003, Home Depot hired John Strawser, who was Caucasian, as a full-time lot attendant. Russell Aff. ¶ 10. Taylor testified that Stawser mostly worked days, and was transferred to the lumber department after approximately one month. Taylor Aff. ¶¶ 53, 54.[3] Taylor argues that he took the position as a lot attendant for the purpose of working daytime hours, and he accuses Russell of coming up with a "scheme to create a new position for a white lot attendant to take hours away from Taylor." Taylor Response Br. at 20.

Taylor was reprimanded for two incidents on March 20, 2003. On that day, Taylor complained to Russell that he was not being assigned to work enough hours. Taylor was preparing to call divisional human resource manager David

---

[3]Taylor also stated in paragraph 54 that he "was still not moved out of the lot attendant position like I had been told when I was first moved to lot attendant." This statement, however, does not appear to be relevant to the claims before the court. Taylor has not asserted a claim that Home Depot discriminated against him by refusing to transfer him to an indoor job. Additionally, Taylor testified that Miller informed him that Miller would try to transfer him into a lawn and garden position, not a position in the lumber department. Accordingly, the court disregards this irrelevant portion of paragraph 54 of Taylor's affidavit under Federal Rules of Evidence 401 & 402.

Carpenter when King approached Taylor and asked him to hang a banner outside. King reported to Home Depot that Taylor refused and used profanity in response to King's request. Taylor testified that he did not use profanity, told King he would hang the banner after he spoke with Carpenter, and asked him how to get an outside line on the telephone. Taylor was calling Carpenter to complain that he was not being scheduled to work a sufficient number of hours, and hung the banner after he spoke with Carpenter. See Taylor Dep. at 141, 151-52, Ex. 37; Russell Aff. Ex. 2; Taylor Aff. ¶¶ 43, 44, 46.

Also on March 20, 2003, head cashier and co-plaintiff Patrice Bamidele-Acquaye reported to Home Depot that she asked Taylor to assist her with a customer and that he ignored her and walked by her while mumbling something under his breath. Taylor Dep. at 146, Ex. 35. Bamidele-Acquaye testified that Lintzenich told her to write a statement regarding Taylor's actions, and that her report to Home Depot accurately reflected the incident with Taylor. Bamidele-Acquaye Dep. at 246. Taylor testified that he did not ignore Bamidele-Acquaye, but simply did not hear her request. He also testified that he did not believe that Bamidele-Acquaye wrote the statement because of his race or because he had filed a charge of discrimination. Taylor Dep. at 146-47; Taylor Aff. ¶ 48.

Meadows and Russell called Taylor to a meeting to discuss these incidents on March 26, 2003, and issued him a "Final Counseling" notice stating that future insubordination would result in immediate dismissal. Taylor Dep. at 146-48, Ex.

36.  Taylor testified in his affidavit that Russell "wrote [him] up for two false allegations for the day when [Taylor] was talking to District Human Resources Manager David Carpenter," and cited the written Final Counseling notice from March 26, 2003.  Taylor Aff. ¶ 49.

Taylor filed his joint complaint in this case on May 27, 2003.

On July 7, 2003 assistant manager Leamon Walton completed a performance review for Taylor, assigning Taylor a rating of "Improvement Required" in every measured category.  *Id.* ¶ 70, Att. 8.  Taylor testified that he had not worked with Walton.  Taylor also testified that Walton informed him that Russell told Walton to give Taylor the review.  Taylor Aff. ¶¶ 71, 72.

On January 7, 2004, Almitra Hensley completed a performance review for Taylor, assigning him a rating of "Improvement Required" in twelve of the fourteen categories.  *Id.* ¶ 73, Att. 9.  Russell also added to the evaluation the following:

> David must demonstrate immediate and sustained improvement in all areas rated as "I."  David is being placed on a 60 day performance improvement plan.  Failure to demonstrate performance at a "P" level or higher in all areas of this review may result in termination.

*Id.* Taylor testified that he believed he was "doing the same work" when he was assigned the "Improvement Required" rating as he was when he was rated as a "Performer."  Taylor and store manager Willie Robertson signed Taylor's

performance improvement plan on February 2, 2004.  Taylor Aff. ¶¶ 75, 76, Att. 10.

Taylor testified in a deposition in this case on February 5, 2004.  During his deposition, Taylor testified that he had quit his previous position at Wal-Mart, and was not terminated.  He testified that he had not seen the document produced by Wal-Mart stating that he had been terminated for the inability to perform his job.  Taylor Aff. ¶¶ 77-79; Taylor Dep. at 29-30, Ex. 5.  Taylor did not sign the form produced by Wal-Mart, and he claims that the person who signed the form as his supervisor, Mary E. Jones, was not his supervisor.  Taylor Aff. ¶¶ 80, 81, Att. 12.

During his deposition, Taylor testified that he had been convicted of operating a vehicle while intoxicated in 1997.  Taylor Dep. at 48, 53-54, Ex. 14.  Taylor's 2002 Home Depot employment application asked the following question about convictions:

> Have you ever been convicted of a felony or misdemeanor within the last 5 years, including guilty and nolo contendere pleas? (Other than traffic violations)

Taylor Aff. Att. 11.  Taylor answered "No" to the question.  *Id.*  He testified in his affidavit that he gave this answer because he believed that his previous conviction was a "traffic violation," and because he "did not think" that the conviction had occurred within the five years prior to completing his Home Depot application.  Taylor Aff. ¶ 86.

Taylor testified in his affidavit that on February 16, 2004 he was called to a meeting with Robertson and Carpenter.  When Carpenter asked Taylor about his previous conviction, Taylor claimed that the conviction had been a traffic violation, and that he did not think that the conviction had occurred within the last five years.  Taylor also claims that he told Carpenter and Robertson that he was not terminated by Wal-Mart.  He testified that they informed him that he was being terminated because of "the Wal-Mart termination."  *Id.* ¶¶ 87-91.  Robertson gave Taylor a discipline notice and an associate action notice, both citing him for falsification of company records.  *Id.* ¶¶ 93, 94, Atts. 14, 15.  The discipline notice, signed by Robertson, stated:

> David Taylor misrepresented and falsified information on his application for employment in regards to his criminal and employment history.  This is a major violation of the Home Depot Code of Conduct. . . . As a result of his actions, David's employment is terminated effective 2/16/2004.

Taylor Aff. Att. 14.  Taylor complains that Home Depot did not give him a chance to explain "[his] side of the facts" before deciding to terminate his employment.  Taylor Aff. ¶ 96.

Robertson testified that Taylor was terminated for falsification of company documents, meaning that he falsified his employment application.  Robertson Dep. at 126.  When first asked to describe the falsification, Robertson testified that Taylor failed to identify Wal-Mart as a previous employer and also testified:  "I believe there was a criminal conviction, but I can't say exactly, if I remember that as accurate."  *Id.*  Robertson then testified as follows:

-17-

Q.      So this unknown criminal conviction was not the reason that you
        terminated David Taylor?

A.      That's correct.  It was for falsification of company documents, namely
        his application.

Q.      Relating to Wal-Mart?

A.      Correct.

Q.      Not relating to any criminal conviction, right?

A.      Correct.

*Id.* at 128.  Robertson testified that he learned from Russell that Taylor had

falsified his application by omitting his employment at Wal-Mart, but that

Robertson never saw any documents relating to the termination and that his only

information concerning this omission came from Russell.  *Id.* at 128-29, 131.

Russell testified that he had attended Taylor's deposition testimony.  He testified

that through the deposition and through documents he received in relation to this

matter, he discovered that Taylor had worked at and been terminated by Wal-

Mart, and that Taylor had been convicted of a crime within five years of

completing his application but had omitted both facts on his Home Depot

employment application.  Russell Dep. at 129-30.  Robertson testified that after

Russell informed him that Taylor had been terminated from Wal-Mart and had

failed to include such information on his application, he looked at Taylor's job

application and contacted Carpenter to discuss the matter.  Robertson Dep. at

131-32.  Robertson testified that Taylor was not terminated because he failed to

include Wal-Mart as a previous employer, but that he was terminated because he

failed to state on his application that he was terminated by Wal-Mart.  *Id.* at 133-

35.  Robertson testified that he and Carpenter met with Taylor and that Carpenter informed Taylor that he was being terminated because his application was missing information.  *Id.* at 135-36.  He testified that the documentation provided to Taylor when he was terminated had been drafted by Russell.  *Id.* at 227; See Taylor Aff. Atts. 14, 15.

During Robertson's testimony, the parties took a break for lunch.  After the parties resumed the deposition following lunch, Robertson testified that he wanted to clear up some of his previous testimony.   He testified that Taylor was terminated both because he failed to disclose that he was terminated from Wal-Mart and because he failed to disclose that he had been convicted of a crime within the five years prior to completing the application.  Robertson Dep. at 218. He testified that he had been uncertain as to exactly why Taylor was terminated during his earlier testimony, and that during the lunch break he called Russell, who informed him that the notices documenting Taylor's termination listed both Taylor's omission of his conviction as well as his omission of his termination from Wal-Mart.  Robertson Dep. at 218-20.[4]

---

[4]Taylor points out that the Indiana Department of Workforce Development ("IDWD") determined that he was not fired for just cause.   If the IDWD determination were preclusive in Indiana courts on the issue of whether Home Depot had cause to terminate Taylor's employment, this court might also be required to accept the determination.   See *University of Tennessee v. Elliot*, 478 U.S. 788 (1986).  This is not the case, however.  Indiana Code § 22-4-17-12(h) states that such findings "shall not be used as evidence . . . in a separate or subsequent action or proceeding between an individual and the individual's . . . prior employer in an action or proceeding brought before . . . a judge of this state or of the United States regardless of whether the prior action was between the

(continued...)

Taylor also believes that Home Depot discriminated against other African American employees as well.  Taylor introduced the testimony of Carl Haslett stating that a few days after complaining to Russell of race discrimination, Russell "ripped" his badge off and reprimanded Haslett for a reason that Haslett believed to be unfair, but did not reprimand Haslett's spotter.  Taylor has also submitted evidence from Haslett describing an additional incident when he was reprimanded for tardiness, but testified that he had been tardy only because Lintzenich had not opened the store on time.  Haslett also testified that he was reprimanded for failing to use "banners" closing off store aisles while moving products, but that banners were not required by Home Depot rules under the circumstances in which he was cited.  Haslett testified that after he received this additional citation, Russell was "grinning from ear to ear" and told him that he would be terminated.  Haslett's employment was later terminated.  Haslett Aff. ¶¶ 49-53, 70-77, 79-88.

Additional facts will be included where relevant below, keeping in mind the standard for summary judgment.

---

[4](...continued)
same or related parties or involved the same facts." While this state statute does not bind a federal court as to the admissibility of evidence, the administrative determination is hearsay if offered to prove that the determination was true. In addition, considering evidence of such IDWD findings, in contravention of the state statutes governing the proceedings, would have the undesired effect of raising the stakes in those administrative proceedings that are intended to proceed quickly.  Accordingly, the court disregards evidence of any IDWD determination regarding Taylor's termination.

*Discussion*

I.   *Evidentiary Considerations*

    A.   *Affidavit Testimony of Maria Baven*

The court must disregard the statements of Maria Baven, cited by Taylor in both his affidavit and his statement of additional facts.  In the cited statements, Baven testified that Meadows talked to her "like someone would talk to a child," and "did not talk to white employees like that."  Baven Aff. ¶ 8.  She testified that Meadows "yelled" at her but "did not yell at white employees."  *Id.* ¶ 9.  She testified that Lintzenich talked to African American employees "in a mean way," but spoke with Caucasian employees "in a friendly way."  *Id.* ¶ 11.  She also testified that Russell "treated black employees differently by talking to them in a scolding manner, frowning and acting mean, but Russell smiled, laughed, joked, and was friendly to the white employees."  *Id.* ¶ 12.[5]

"Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."  *Drake v. Minnesota Mining & Manufacturing Co.*, 134 F.3d 878, 887 (7th Cir.

---

[5]Baven's statement that she experienced stress, cried as a result of Meadows' actions, and told other (unnamed) employees about this, Baven Aff. ¶ 10, is disregarded because it is irrelevant to the issues presented by Home Depot's motion for summary judgment on Taylor's claims.  See Fed. R. Evid. 401 & 402.

1998), citing *Hadley v. Du Page County*, 715 F.2d 1238, 1243 (7th Cir. 1983).  In *Drake*, the Seventh Circuit found no abuse of discretion where a judge excluded portions of an affidavit similar to those at issue.  The court cited one statement typical of those excluded:  "Every time I, or any other African American employee went to Dean Coleman with a problem involving another employee, who was white, Dean Coleman would never conduct an investigation or take any action against that white employee."  *Drake*, 134 F.3d at 887.  Such statements, the court explained, were "exactly the type of conclusory allegations that should be disregarded on summary judgment."  *Id.*  Because Baven's statements are equally as conclusory and fail to demonstrate any facts establishing the truth of the matter asserted within, the court must disregard such statements in deciding Home Depot's motion for summary judgment.[6]

B.    *Taylor's Testimony Regarding Discrimination Against Others*

For the same reasons, evidence of Taylor's beliefs regarding discrimination against other employees must also be disregarded.  Taylor testified that he "had seen" that Home Depot discriminated against African Americans because of race.  He testified that Home Depot twice promoted Caucasian employees and denied

---

[6]Haslett also testified:  "The white employees do not use banners closing off aisles when moving product from one location to another in the store."  Haslett ¶ 78.  Like Baven's disregarded testimony, this testimony by Haslett amounts to the kind of conclusory statement, unsupported by a basis in the affiant's personal knowledge, that fail to conform with the requirements of Rule 56(e).  Accordingly, the court must disregard paragraph 78 of Haslett's statement in considering Home Depot's motion for summary judgment on Taylor's claims.

such promotions to African American co-worker Patrice Bamidele-Acquaye.  He also testified that co-worker Frances Fulmore was not allowed to read her Bible when she was not busy, but that other Caucasian cashiers were permitted to read when they were not busy.  Taylor Aff. ¶ 34.  None of these assertions satisfy Rule 56.  The general claim that African Americans were victims of discrimination is conclusory, and the statements describing specific discrimination against Bamidele-Acquaye and Frances Fulmore fail to demonstrate that Taylor had personal knowledge of such events or that the actions described were taken because of race.  No jury could reasonably rely upon these statements, which provide only Taylor's subjective beliefs regarding the treatment of other employees.

C.   *Affidavit Testimony of Alan Akers*

In support of his theory that Home Depot discriminated against African American employees, he has submitted affidavit testimony from his co-worker and co-plaintiff Alan Akers.  Akers' testimony states that he complained that African American employees were not provided with "spotters" to assist them but that Caucasian employees were provided with such help.  Akers also testified that shortly after he made such a complaint, he was twice cited for safety violations that he did not commit.  See Akers Aff. ¶¶ 51-63.  The court has dealt with this testimony in a separate decision today granting Home Depot's motion for summary judgment on Akers' claims.  For the same reasons provided in that decision, Akers' statements do not present a genuine issue of fact upon which a reasonable jury could rely in deciding Taylor's claims.

D.   *Statements of Kenn King Included in Fulmore and Taylor Affidavits*

Taylor offers evidence of statements made by Kenn King to plaintiff Taylor and plaintiff Carl Fulmore.  Taylor testified in his affidavit that Taylor complained to King that he was "written up" for attendance violations when other Caucasian employees were not issued written citations for committing the same or similar violations.  Taylor claims that, in response to his complaint, King agreed that "it was not right that [Taylor] got written up when the white employees Shawn and John were no-call no-show several times and they were not written up."  Taylor Aff. ¶ 8.  Taylor further claims that King reported that he would complain to Meadows, and that King later reported that Meadows "said that he would look into it, but the white employees kept doing no-calls no shows, leaving us short-handed, and they were not written up."  *Id.* ¶¶ 9, 10.

Taylor has also sought to introduce King's statements included in the affidavit of co-plaintiff Carl Fulmore.  Mr. Fulmore claims that, when he complained to King that African American associates were being treated unfairly by being assigned fewer work hours than Caucasian associates, King told Fulmore the following:  (1) Caucasian associates could "get away with anything," stating as an example of this that Utterback was "constantly late" to work and that when King noted the lateness in the log book, the notation was later either erased or lined through; and (2) King complained to Meadows that Utterback often ate his

lunch "on the clock," but "Home Depot did not do anything about it. C. Fulmore Aff. ¶¶ 70-71.[7]

Home Depot objects to this evidence, arguing that it amounts to inadmissible hearsay. Plaintiff points out that King was a supervisor at the store, apparently arguing that the statements should be attributed to Home Depot as non-hearsay, and therefore are admissible under Federal Rule of Evidence 801(d)(2)(D). This provision requires that the statements, in order to be attributed to the defendant, must concern a matter within the scope of the declarant's (King's) employment. An employee's statements may be attributed to an employer for the purposes of this provision where (1) the employee was authorized by his employer to speak regarding the matter about which he spoke, *Stagman v. Ryan*, 176 F.3d 986, 996 (7th Cir. 1999); or (2) the employee was personally aware of or part of the decision to which the alleged statements pertain. Cf. *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 950-51 (7th Cir. 1998) (statements from plaintiff's co-workers that they too had been discriminated against inadmissible where they were neither authorized to speak about the terms of their employment and were not personally aware of the decision-making about which they spoke); *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999) (plaintiff's supervisor's statements that decision-maker did not like plaintiff because she was a woman were inadmissible where supervisor was not involved

---

[7]The second statement is inadmissible because it is irrelevant. See Fed. R. Evid. 401 & 402.

in any of the adverse actions at issue).  In *Pharmacia*, the Seventh Circuit rejected the idea that a declarant's statement is attributable to the employer under Rule 801(d)(2)(D) only if the declarant was involved in the decision-making process leading to the action at issue, however, noting that the Advisory Committee notes encouraged "generous treatment of this avenue to admissibility."  137 F.3d at 950.

Home Depot's claim that because King did not make hiring, firing, or promotion decisions his statements can never fall within Rule 801(d)(2)(D) is therefore not persuasive.  The statements Taylor attributes to King are alleged to have been stated in response to Taylor's and Mr. Fulmore's claims of racially disparate discipline at Home Depot.  The statements pertain to King's involvement in the process of recording attendance, reporting Taylor's claim of race discrimination to Meadows, and accordingly may be attributed to Home Depot in accordance with Rule 801(d)(2)(D).  Finally, even if such statements did not concern a matter within the scope of King's employment, as is argued by Home Depot, admission of the statements would be harmless, as shown by the analysis below.

E.    *Plaintiff's Rule 37 Objections*

1.    *Evidence of Discipline of Caucasian Employees*

Home Depot has produced evidence that Caucasian employees received associate action notices for failing to call or report to work.  Russell testified that

Caucasian associate Joseph Gross was disciplined for a no call no show violation and subsequently terminated for job abandonment.  He testified that Webb and Utterback were terminated from Home Depot for job abandonment and poor attendance.   See Russell Aff. ¶ 12.   Russell also testified that at least 40 Caucasian employees were terminated by Home Depot in 2002 for failing to call or report to work.  *Id.*  Russell also testified that two Caucasian employees were disciplined or terminated for confrontational conduct similar to Taylor's.  *Id.* ¶ 13, Exs. 4, 5.  Taylor objects to this testimony and the documents supporting it, arguing that Rule 37(c) of the Federal Rules of Civil Procedure prevents Home Depot from relying on such information because it failed to produce the personnel files for any of these associates in discovery as is required by Rule 26(a).  See Taylor Response Br. at 21; Taylor Aff. ¶ 66.

Rule 37(c) provides in relevant part that a party who, without substantial justification, fails to disclose information required by Rule 26(a) is not permitted, unless such a failure is harmless, to use such evidence at trial or on a motion. Rule 26(a)(1)(B) requires a party to provide to another party, with or without a formal discovery request, a copy or description of all documents and data compilations in the party's possession that it may use to support its claims or defenses, unless such information would be used solely for impeachment.  Home Depot's argument that it did not receive a request for such information therefore is beside the point.  Rule 26(a) requires disclosure even without such a request.

Contrary to Home Depot's claim, neither Russell's testimony regarding employee records nor the records themselves are being used for any impeachment. Home Depot states that in its position statement to the EEOC, it produced personnel records of similarly situated Caucasian employees who were disciplined for either no call no show violations or for disrespectful behavior and that "these records were provided to plaintiffs in discovery." Def. Reply Br. at 12 n.8. Home Depot fails to indicate, however, whether the employee personnel records it supplied were those of the individuals referenced in Russell's affidavit. Home Depot does not deny that it failed to disclose these specific records, and it has failed to provide any substantial justification for this omission. Accordingly, the court cannot permit Home Depot to rely on such information on its motion for summary judgment, as this would run afoul of the clear boundaries provided by Rule 37. The only exception to this finding is the statement included in paragraph 12 of Russell's affidavit stating that Webb was eventually terminated for job abandonment. Because Taylor has made essentially the same assertion in paragraph 11 of his affidavit, admission of Russell's assertion is harmless.

2.   *Evidence of Other Associates' Hours Worked*

Taylor also objects, apparently under Rule 37(c), to affidavit testimony from Russell stating that Taylor was assigned to work more hours than several part-time lot attendants in the twenty-one week period following his charge of race discrimination. Although this information appears to have been omitted from Home Depot's discovery submissions to the plaintiffs, the court finds that it may

be relied upon on Home Depot's motion for summary judgment because any such reliance is harmless.  The employees to whom Home Depot compares Taylor are all part-time employees, while Taylor has consistently testified that he was a full-time employee.

F.      *Statements of Slenz and Decker*

In his affidavit, Taylor stated that "Assistant Store Manager Robert Slenz and Department Manager Terry Decker said that they were going to do stuff to make me quit."  Taylor Aff. ¶ 31.  Taylor had also made this claim in his EEOC charge.  In his deposition, Taylor identified the "Robert" from the EEOC report as assistant store manager Robert Slenz.  Taylor Dep. at 158.  Taylor testified that he did not hear Decker and Slenz make such statements, but that co-worker Dawaun Lee reported to him that Lee heard Slenz and Decker make the statements.  Taylor testified that he asked Slenz about the statements, and that Slenz just laughed.  Taylor Dep. at 158-59; Taylor Aff. ¶ 32.  If Taylor had offered evidence from Lee regarding the statements, they might have been considered either non-hearsay admissions of a party-opponent or statements of intent, plan, or motive, admissible under Federal Rules of Evidence 801(d) & 803(3).  These statements, offered as they are here by Taylor to prove the truth of the matter asserted within, that Decker and Slenz were planning or did engage in a campaign against him, amount to only inadmissible hearsay and therefore must be disregarded.  See Fed. R. Evid. 801 & 802.

II.     *Amendment of Plaintiffs' Complaint*

Home Depot argues that the court should preclude Taylor from advancing disparate treatment claims based on his reduction of hours and his termination, and that he should also be foreclosed from asserting a retaliation claim for termination, arguing that doing so would impermissibly allow Taylor to amend his complaint by way of a response to a summary judgment motion.  See *Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004); *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002).  The court disagrees and finds that such a requirement would, under the circumstances of this case, impose on the plaintiff a burden beyond that required under the standard of notice pleading.

The joint complaint in this case states that Taylor began work at Home Depot in January 2002, that he had favorable performance evaluations, and that some Caucasian managers stated that they were going to do things to make Taylor quit his job.  The complaint also stated that he received citations for violations that Caucasian employees committed without receiving citations, that he complained of race discrimination, and that his work hours were reduced after his complaint.  The complaint also broadly states that "the defendant intentionally discriminated against the plaintiffs with respect to their terms, privileges, and conditions of employment because of their race" and that the "defendant intentionally discriminated against plaintiffs because they opposed and complained about race discrimination . . . ."  Docket No. 1 ¶¶ 44-50, 60, 62.

"The civil rules, as both the Supreme Court and this court have emphasized repeatedly, establish a system of notice pleading." *Shah v. Inter-Continental Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002) (citations omitted). A plaintiff need not plead specific facts or legal theories, but must offer only a short and plain statement upon which relief may be granted. *Id.*; Fed. R. Civ. P. 8(a); see also *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002) (holding that a plaintiff need not plead facts sufficient to establish a prima facie case of race and age discrimination in order to survive a motion to dismiss). Under these circumstances, the court finds that foreclosing any claims involving specific facts not pled in the complaint, which is effectively what the defendant advocates, would contravene the notice pleading permitted in federal court. See generally, *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (vacating district court dismissal of plaintiff's claim for race discrimination in employment; stating "a complaint is not required to allege all, or *any*, of the facts logically entailed by the claim"), quoting *American Nurses' Ass'n v. State of Illinois*, 783 F.2d 716, 727 (7th Cir. 1986). Accordingly, the court considers the merits of each of Taylor's claims.

III.   *Disparate Treatment*

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Taylor has also alleged discrimination in violation of

42 U.S.C. § 1981, which prohibits racial discrimination in the creation and enforcement of contracts. The applicable legal standards on liability for race discrimination are the same under Title VII and § 1981. *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004); *Williams v. Waste Management of Illinois*, 361 F.3d 1021, 1028 (7th Cir. 2004). Taylor claims that Home Depot reduced his assigned work hours and ultimately terminated his employment because of his race.

A plaintiff may prove his claim for disparate treatment using either the direct or indirect methods of proof. Taylor has argued his claim of discrimination using the indirect method adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). For Taylor to survive summary judgment on his claim of disparate treatment under the indirect method, he must come forward with evidence sufficient to allow a reasonable jury to find that: (1) he is a member of a protected class; (2) he performed his job in accordance with Home Depot's reasonable expectations; (3) he suffered a materially adverse employment action; and (4) the defendant treated similarly situated employees outside of plaintiff's class more favorably. *Bio v. Federal Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005); *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 861 (7th Cir. 2005). The failure to establish any one of the four elements of the prima facie case defeats a plaintiff's claim of discrimination. *Bio*, 424 F.3d at 596. Taylor has failed to meet his prima facie case of discrimination on any of his claims for the reasons explained below.

A.   *Materially Adverse Employment Action*

For an employment decision to be actionable, it must have resulted in a material harm that alters the "terms, conditions, or privileges of [the plaintiff's] employment." 42 U.S.C. § 2000e-2(a)(1).  Examples of materially adverse actions may include termination, a demotion accompanied by a reduction in pay, a less distinguished title, denial of a promotion, a substantial loss of benefits, or significantly diminished material responsibilities.  Whether or not an employee has experienced an adverse employment action will depend on the facts of each individual situation.  *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002); *Rhodes v. Illinois Dep't of Transportation*, 359 F.3d 498, 504 (7th Cir. 2004) (sex discrimination claim).

Taylor's termination was a materially adverse action.  Taylor has also raised a genuine issue of material fact as to whether he was subjected to a materially adverse employment action when his work hours were reduced.  The Seventh Circuit has observed that a materially adverse action occurs where an employee's compensation, fringe benefits, or other financial terms of employment are reduced, *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004), or where the employer significantly diminishes the employee's material responsibilities. *Crady v. Liberty Nat'l Bank and Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1999).  Applying the reasoning in *O'Neal* and *Crady*, a reduction of an employee's assigned work hours, which in turn brings with it a reduction in the employee's compensation and responsibilities, can amount to a materially adverse action.

Accord, *Albright v. City of Philadelphia*, 399 F. Supp. 2d 575, 587-88 & n.20 (E.D. Pa. 2005) (reduction in plaintiff's assigned overtime hours, where such a reduction amounted to a significant reduction in compensation, could satisfy the third element of the prima facie case of Title VII race and sex discrimination claims); *Gamez v. Country Cottage Care & Rehabilitation*, 377 F. Supp. 2d 1103, 1124-25 (D.N.M. 2005) (finding that "a reduction of hours from twenty-eight to twenty-four per week is an adverse employment action" in age discrimination case). Taylor has come forward with evidence tending to show that his assigned work hours were reduced by approximately one-third after late November 2002 through June 2003.

Taylor's argument is ambiguous with respect to whether he advances any other claims of disparate treatment. See Taylor Response Br. at 26-27. Accordingly, the court contends with additional "adverse actions" referenced by Taylor's complaint and response brief. First, Taylor claims that he was subjected to "discriminatory discipline," apparently referring to the written citations that he received in February and June 2002, and again in March 2003. Neither oral nor written reprimands may be considered materially adverse employment actions unless such statements are shown to lead to job-related consequences. *Whittaker v. Northern Illinois Univ.*, 424 F.3d 640, 648 (7th Cir. 2005); *Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 613 (7th Cir. 2001). Taylor has not shown any consequences of the written reprimands that he received.

Additionally, Taylor refers in his argument to "white managers trying to make him quit," which the court can only interpret as being based on the comments he attributes to Slenz and Decker. See Taylor Response Br. at 26. As was previously discussed, however, such comments cannot be considered. Taylor has presented only inadmissible hearsay on this score.

Finally, Taylor complains of "a white manager yelling at him and putting his finger in Taylor's face," which likely refers to the exchange with Wagner. Taylor Response Br. at 26. This claim also fails to demonstrate a materially adverse employment action. Viewing Wagner's action as a reprimand, the court finds that Taylor has shown no adverse consequences related to the exchange in the break room. *Whittaker*, 424 F.3d at 648; *Oest*, 424 F.3d at 613. Additionally, general hostility, rude comments, and harassment amount to an adverse action only where such behavior is either severe or pervasive. *Griffin*, 356 F.3d at 829-30 (retaliation case); *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 466 (7th Cir. 2002) (retaliation case). Although Taylor was clearly unhappy about Wagner's actions, not everything that makes an employee unhappy amounts to an adverse employment action. *Rhodes*, 359 F.3d at 505. Taylor has failed to show that this single incident either led to any related job consequence or amounted to severe or pervasive abuse.

B.    *Similarly Situated Individuals*

The fourth element of the prima facie case places on Taylor the burden of raising a genuine issue of fact as to whether he was treated less favorably than a similarly situated employee outside the protected class.  *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939-40 (7th Cir. 2003); *Greer v. Board of Education*, 267 F.3d 723, 728 (7th Cir. 2001).  Similarly situated employees need not be completely identical to Taylor, but must be "directly comparable to him in all relevant aspects." *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 300-01 (7th Cir. 2004).  In determining whether two employees are similarly situated, the court must consider all of the relevant factors, which depend on the context of the case. *Id.*, citing *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (applying this rule to a Title VII sex discrimination claim).

Taylor has offered no evidence that he was treated less favorably than any employee outside of his protected class on either his reduction in hours or his termination claims.  Taylor points to evidence that he was treated differently from Caucasian employees Utterback and Webb when he was issued an employee action notice for his no call no show violation.  This is not sufficient to sustain his claims for disparate treatment.  First, Taylor does not claim that his associate action notice for attendance violations amounted to a material adverse employment action, nor could he.  As noted above, such a written warning does not rise to the level of actionable injury.  See *Whittaker*, 424 F.3d at 648; *Oest*, 424 F.3d at 613.  Taylor has also failed to offer any evidence that Utterback and

Webb were similarly situated to him in any aspect relevant to either his reduction in hours or termination claims. Taylor's own evidence demonstrates that Webb was also terminated.

Although Taylor has offered evidence of material adverse employment actions in his reduction of hours and termination claims, such claims cannot survive summary judgment scrutiny because Taylor has failed to raise a genuine issue of material fact as to the fourth element of his prima facie case on such claims. Any additional claims he may be advancing based on disciplinary actions or criticism must also fail because such claims fail both the third and fourth elements of the prima facie case. *Bio*, 424 F.3d at 597-98 (affirming grant of summary judgment for defendant on Title VII race discrimination claim where plaintiff failed to meet fourth element of the prima facie case); *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692-93 (7th Cir. 2005) (same); *Traylor v. Brown*, 295 F.3d 783, 790 (7th Cir. 2002) (affirming summary judgment for defendant on Title VII race discrimination claim where plaintiff failed to demonstrate a materially adverse employment action because plaintiff's "failure to establish one element of her *prima facie case*, even if she has established all of the others, is enough to support a grant of summary judgment in favor of her employer"). Accordingly, the court does not reach the parties' arguments regarding pretext. *Herron*, 388 F.3d at 300 ("The plaintiff must meet each prong of the prima facie case before reaching pretext."); *Peele v. Country Mutual Insurance Co.*, 288 F.3d 319, 326 (7th Cir. 2002) ("A plaintiff does not reach the

pretext stage, however, unless she first establishes a prima facie case of discrimination."); *Jones v. Union Pacific Railway Co.*, 302 F.3d 735, 741 (7th Cir. 2002) (establishing the prima facie case of discrimination is a "condition precedent" to pretext analysis).

IV.   *Retaliation*

Taylor also claims that Home Depot terminated him in retaliation for reporting race discrimination in violation of both Title VII and § 1981.  A plaintiff may prove his claim of retaliation using either the direct or indirect methods of proof.  If he chooses the direct method, he must raise a genuine issue of material fact as to whether he engaged in the protected activity of reporting discrimination and suffered an adverse action as a result.  *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002).  Taylor has not offered direct evidence of retaliation.

He may also prove his claim using the indirect method.  To demonstrate a prima facie case of retaliation under the indirect method, the plaintiff must demonstrate that (1) he engaged in a protected activity; (2) he was performing his job in accordance with his employer's reasonable expectations; (3) he suffered a materially adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in the protected activity. *Beamon*, 411 F.3d at 861-62; see also *Stone*, 281 F.3d at 644.  If the plaintiff establishes this prima facie case, the burden shifts to the defendant to advance

a legitimate non-retaliatory reason for the adverse employment action.  Once the defendant has done so, the burden shifts back to the plaintiff to show that the defendant's given reason is a pretext for retaliation.  *Hilt-Dyson*, 282 F.3d at 465. If the plaintiff fails to raise a genuine issue of fact as to any element of the prima facie case, or as to whether the defendant's reason is pretextual, his retaliation claim cannot survive summary judgment.  *Id.*

Taylor claims both that his hours were reduced and that he was ultimately terminated in retaliation for reporting race discrimination.  The evidence demonstrates that Taylor first reported discrimination to King in spring 2002. Because Taylor has failed to raise a genuine issue of material fact as to whether the was treated less favorably than any other similarly situated employee, however, his claims that Home Depot retaliated against him by reducing his assigned work hours and terminating his employment cannot survive summary judgment.

Taylor devotes most of his argument on the fourth element of his prima facie case of retaliation to claims that the defendant has failed to offer evidence of similarly situated employees.  As a plaintiff trying to show that he has indirect proof of unlawful retaliation, however, Taylor carries the burden of raising a genuine issue of fact as to whether he was treated less favorably than a similarly situated individual who did not engage in a protected activity.  See *Celotex*, 477 U.S. at 322-23 (summary judgment is warranted against a party who fails to

offer evidence sufficient to establish an essential element of the party's case and on which the party will bear the burden at trial); *Stone*, 281 F.3d at 644; see also *Beamon*, 411 F.3d at 861-63 (plaintiff carries burden of demonstrating the prima facie case).

As with claims of discrimination, employees are similarly situated for purposes of a retaliation claim only if they are "directly comparable in all material aspects." *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 561 (7th Cir. 2004), quoting *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 531-32 (7th Cir. 2003); *Rogers v. City of Chicago*, 320 F.3d 748, 755 (7th Cir. 2003). Home Depot has submitted evidence that Taylor worked more hours than several part-time employees from January 6, 2003 through June 1, 2003. However, Taylor has raised a genuine issue of material fact as to whether his status was as a full-time employee at Home Depot. Accordingly, the evidence before the court does not show as a matter of law that Taylor was similarly situated to any of the part-time lot attendants. See *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1155 (7th Cir. 1997)(stating that full-time employees are generally not similarly situated to part-time employees); *Brown v. Super K-Mart*, 1999 WL 417338, *4 (N.D. Ill. June 16, 1999) (holding that a part-time employee was not similarly situated to full-time employee under the fourth element of the prima facie case of race discrimination under Title VII).[8]

---

[8]Taylor has not mentioned Orzechowicz in his argument regarding the fourth element of his prima facie case, and for good reason. Taylor's testimony
(continued...)

Taylor argues that he was treated less favorably than John Strawser. The evidence pertaining to Strawser and his position demonstrates that Russell offered Taylor the opportunity to work full-time hours in spring 2003, but stated that the hours would include some evening shifts. Taylor testified that he declined the position, stating that he could not work during evening hours. Taylor Dep. at 138-39; Taylor Aff. ¶¶ 50, 51. Home Depot hired Strawser on February 22, 2003 to work as a full-time lot attendant. Russell Aff. ¶ 10; Taylor Aff. ¶ 53. Taylor testified in his affidavit that Strawser "worked mostly days" and was moved to a position in the lumber department about a month after he was hired. Taylor Aff. ¶¶ 53, 54.

Taylor has failed to demonstrate that Strawser was a similarly situated individual outside the protected class who was treated more favorably. First, Taylor has presented no evidence as to whether Strawser was an individual "outside the protected class." *Jordan v. City of Gary*, 396 F.3d 825, 833 (7th Cir. 2005) (plaintiff asserting sex and age discrimination claims failed to demonstrate that she was treated less favorably than someone outside of her protected class because the promotion she sought was filled by another woman over age 40).

---

[8](...continued)
that Orzechowicz worked 40 hours per week also fails to raise a genuine issue of material fact on the fourth element of Taylor's retaliation claim. The only information provided by the parties demonstrates that Orzechowicz worked on the lot for only six weeks, and that Home Depot considered him to be a part-time employee while Taylor claims he worked 40 hours per week. Although the parties dispute the number of hours he was assigned to work during this period, Taylor has failed to demonstrate that Orzechowicz was similarly situated to Taylor in any relevant aspect.

Taylor testified that Strawser was Caucasian, but fails to state whether Strawser engaged in any protected activity, the characteristic that defines Taylor's class on a retaliation claim. *Beamon*, 411 F.3d at 861-62; see also *Stone*, 281 F.3d at 644.

Taylor has failed to raise a genuine issue of material fact as to whether Strawser was similarly situated to him. Taylor testified that Strawser worked "mostly days," but he fails to present any information regarding Strawser's availability or any other factor that might have been relevant in scheduling the two workers. The obvious implication from Taylor's statement that Strawser worked "mostly days" is that he worked at least some evenings, which Taylor testified he was unable to do. Taylor Dep. 138-39.

Taylor argues that Strawser was hired as part of a "scheme" by Russell to "create a new position for a white lot attendant to take hours away from Taylor," see Taylor Response Br. at 20, but he offers no evidence in support of this claim. A party must present more than mere speculation or conjecture to defeat a summary judgment motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001).[9]

---

[9]Additionally, Taylor's argument on this element refers to the fact that Strawser was "moved inside," while "they did not move the black lot attendant whom they told they would move inside." See Taylor Response Br. at 30. The court can only presume that Taylor is referring to his disregarded affidavit testimony that Strawser was moved to a position in the lumber department while Taylor remained in a position in the lot. Assuming this is the case, the court fails to understand how this argument is relevant to either Taylor's reduction in hours or his termination claims. Taylor has not alleged a claim that he was retaliated
(continued...)

Taylor has not advanced any argument regarding any other similarly situated individuals with respect to either his hours or his termination claims. Because Taylor has failed to demonstrate a genuine issue of material fact as to whether he was treated less favorably than any similarly situated employee outside of his protected class, as is required for the fourth element of his prima face case of retaliation, his retaliation claims cannot survive Home Depot's motion for summary judgment.  See *Hudson*, 375 F.3d at 560-61 (affirming summary judgment where plaintiff could not show any similarly situated individuals treated differently); *Rogers*, 320 F.3d at 755-56 (same); *Beamon*, 411 F.3d at 863 (same). Accordingly, the court does not reach the parties' arguments regarding pretext. *Hilt-Dyson*, 282 F.3d at 465 ("Absent direct evidence of retaliation, failure to satisfy any element of the prima facie case proves fatal to the employee's retaliation claim.").

*Conclusion*

For the foregoing reasons, the court finds the Home Depot's motion for summary judgment on plaintiff David Taylor's claims, Docket No. 84, must be granted.  No final judgment shall be entered at this time because some claims of co-plaintiffs remain pending.

---

[9](...continued)
against by being denied an "inside" position.  Additionally, while Taylor testified that Miller informed him that he would try to find a position for Taylor in the lawn and garden department, the court fails to see how Strawser's transfer to the lumber department demonstrates any more favorable treatment.

-43-

So ordered.

Date: March 30, 2006

_David F. Hamilton_
_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Richard L. Darst
COHEN GARELICK & GLAZIER
rdarst@fed-law.com

Brian L. McDermott
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
brian.mcdermott@odnss.com

Louis Bennet Eble
VERCRUYSSE MURRAY & CALZONE, P.C.
leble@vmclaw.com

Gregory V. Murray
VERCRUYSSE MURRAY & CALZONE, P.C.
gmurray@vmclaw.com

Kenneth B. Siepman
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
kenneth.siepman@odnss.com